## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-10164-smr |
| ASTRALABS, INC., | § | |
| | § | Chapter 7 |
| Debtor. | § | |

### CHAPTER 7 TRUSTEE'S OBJECTION TO MOTION TO
### RECONSIDER ORDER CONVERTING CASE TO ONE UNDER CHAPTER 7

TO THE HONORABLE SHAD M. ROBINSON, U.S. BANKRUPTCY JUDGE:

Randolph N. Osherow, not individually but in his capacity as the duly appointed chapter 7 trustee (in such capacity, the "Trustee"), for and on behalf of ASTRALABS, Inc. (the "Debtor") and its bankruptcy estate ("Estate"), files this, his *Objection* (this "Objection") to the *Motion to Reconsider Order Converting Case to One Under Chapter 7* [Docket No. 119] (the "Motion"), and in support hereof respectfully states as follows:

### I.      BACKGROUND

1.      On March 17, 2023 (the "Petition Date"), the Debtor commenced this case (the "Bankruptcy Case") by filing a voluntary petition for relief under chapter 11, subchapter V, of the Bankruptcy Code.  The notice parties identified in the voluntary petition include addresses but no email addresses or fax numbers.

2.      No official committee has been appointed in the Bankruptcy Case.

3.      As of the Petition Date, the Debtor characterized its business as operating "two virtual programs – an incubator and an accelerator that provides early-stage founders and companies with the tools and skills to build, scale, and fund their startup; upon completion of the program, ASTRALABS INC connects its founder customer to investors."  *Motion for Authority to Use Cash Collateral* [Docket No. 4] ¶ 2.

4.      On May 30, 2023, the Debtor filed its formal bankruptcy schedules [Docket No. 36] ("Schedules"). Therein, the Debtor disclosed total assets approximating $1,716,816.59, and essentially comprised of cash, deposits and prepayments, accounts receivable, and office furniture, fixtures, and equipment.  Schedule A/B, Part 12.

5.      The Schedules disclose approximately $1,130,000.00 in pre-petition secured claims, no pre-petition creditors holding priority claims, and approximately $4,666,437.00 in pre-petition general unsecured claims held by approximately two-hundred one (201) creditors. Schedule D, No. 3; Schedule E/F, Part 4.  The creditor matrix included therewith include addresses but no email addresses or fax numbers.  *See* Verification of Creditor Matrix, Schedules, p. 93.

6.      On May 10, 2023, the United States Trustee ("UST") filed its *Motion to Convert Case to a Case Under Chapter 7, or, in the Alternative, Dismiss Case* [Docket No. 83] (the "1112 Motion"), together with a *Motion to Expedite Hearing* to consider the 1112 Motion [Docket No. 84] (the "1112 Motion to Expedite").

7.      The stated grounds under the UST's 1112 Motion included that the Debtor allegedly:

> (1) has insufficient cash on hand and current revenue to pay its expenses, including payroll and related expenses, (2) has lost more than sixty of its one hundred employees in the past week, (3) dissolved the board of directors and terminated multiple executives in the past week, (4) incurred and paid postpetition debt without seeking court approval and in violation of the cash collateral order, (5) is attempting to raise additional funding without seeking court authority, and (6) deliberately omitted assets from its schedules.

1112 Motion at p. 1.

8.      Pursuant to the 1112 Motion to Expedite, on May 11, 2023, the Court scheduled a hearing to consider the 1112 Motion for May 11, 2023, at 1:30 p.m. (the "1112 Hearing"), at which date and time a pending Status Hearing had previously been scheduled by the Court.  *See* Docket Nos. 8, 67, 88.

9.      The UST duly provided notice of the 1112 Hearing by filing its Notice thereof [Docket No. 87] on May 11, 2023, though the Court's CM/ECF system, which contemporaneously provided notice of the 1112 Hearing on all persons receiving notice in the Bankruptcy Case through such system and by mailing same on the official mailing matrix provided in the case by the Debtor.

10.     At the 1112 Hearing, the UST participated, along with the Debtor, through Debtor's counsel and its controlling principal and chief executive officer, Andrew Ryan, who appeared on behalf of the Debtor and provided sworn testimony.  Also participating in the 1112 Hearing was Subchapter V Trustee Eric Terry and trade creditor Capitol Vending and Coffee.  *See Transcript of Hearing Held May 11, 2023* [Docket No. 111] ("1112 Hearing Transcript") at 4:22–23, 5:6–7.

11.     During the 1112 Hearing, Debtor's counsel did not raise any due process objection or concern with the expediency of the hearing and, in fact, expressed appreciation for "the speed at which we were able to get this set today."  1112 Hearing Transcript at 9:12–13.

12.     Under express questioning by the Court, Debtor's counsel also did not deny the accuracy of at least some extent of the UST's relevant allegations and, in fact, indicated a potential conflict developing between the Debtor and its counsel:

> It's tough to say.  Some of the allegations have, in fact, occurred. . . .  I think I'm hard-pressed to say, no, it's created honestly internally with me and my client. There's a conflict that, depending on how today goes, is the subject for another matter.

*Id.* at 10:12–18.

13.     Although Mr. Ryan appeared to complain about the sufficiency of his opportunity to prepare for the hearing, he voluntarily requested the opportunity to provide a statement to the Court and submitted to questioning, under oath.  *Id.* at 12:12–13:21.

14.     The Court may also take judicial notice that, perhaps due to the previously scheduled status conference, there were numerous parties in interest present during the 1112 Hearing (including remotely). No such party raised any objection to the 1112 Motion or 1112 Hearing based on due process or inadequate notice or otherwise. Indeed, the transcript of the hearing reflects that such parties' participation was essentially confined to unsolicited outbursts disputing Mr. Ryan's testimony or otherwise directed to Mr. Ryan. *See id.* at 17:15–24, 18:18, 24:13–14.

15.     Mr. Ryan's testimony at the 1112 Hearing confirmed that:

a. The Debtor had been unable to meet payroll obligations for approximately two months and lacks sufficient funds (other than the proceeds of unauthorized post-petition financing) to fund payroll;

b. The Debtor holds approximately five thousand (5,000) warrants that Mr. Ryan also referred to as securities "options" that it has previously sold ("[W]e've only sold a little bit of them . . . We've only been able to come back and get about $250,000 like last year with the others."), as well as stock in a company, and a directors and officers liability insurance policy, none of which were disclosed on the Debtor's schedules;

c. The Debtor had recently experienced a substantial exodus of employees, approximating sixty (60), including but not limited to Mr. Ryan's termination of the Debtor's former chief financial officer, and the exodus primarily occurred only one (1) day after Mr. Ryan's termination of the Debtor's entire board of directors following a dispute as to which the directors (and apparently, the Debtor's officers and employees) believed the company should be liquidated while Mr. Ryan insisted on attempting to raise capital to attempt to maintain the Debtor as a going concern;

d. As a condition of returning, the departing employees had requested that the Debtor appoint a new CEO instead of Mr. Ryan;

e. Mr. Ryan on the Debtor's behalf had—without this Court's authorization—solicited and obtained approximately $200,000.00 in post-petition financing proceeds, as to which he had some indication of potential impropriety but determined "we would just have to ask forgiveness for and after the fact"; and

    f. Mr. Ryan had, without Court authorization, procured outside, corporate counsel for the Debtor.

*See* 1112 Hearing Transcript at 14:11–17:3; 22:7–23:12; 25:3–28:19; 35:21–24; 36:3–38:6; 43:7–18; 44:10–45:2; 46:3–7; 48:15–49:4; 53:15–54:18.

16.    Mr. Ryan's testimony during the 1112 Hearing also included materially inconsistent statements:

    a. He contended that the Debtor did not schedule its warrants, stock, or other assets on the basis that the undisclosed assets have allegedly negligible value but later contended that he instructed the Debtor's former CFO to disclose all such assets;

    b. He contended that the bases for his termination of Jack Cartwright (the Debtor's former CEO) weeks before the 1112 Hearing included the Debtor's failure to schedule assets in its bankruptcy schedules under Mr. Cartwright's authority, despite also asserting at the 1112 Hearing— as cited above—that such disclosures of assets allegedly having no market value was unnecessary; and

    c. He contended that the warrants were unscheduled because they have no value, despite—as noted above—acknowledging having sold at least one such warrant, later acknowledging that the Debtor could sell the warrants and that he had previously disclosed to certain third parties a prior report and analysis obtained by the Debtor that concludes that the warrants, in the aggregate, are worth hundreds of millions of dollars.

*See* 1112 Hearing Transcript at 26:9–27:12; 32:23–25; 41:3–43:4; 57:5–22.

17.    Following the hearing, the Court announced and detailed its ruling and determination to convert the case to Chapter 7, under which the Court identified multiple factors and considerations constituting cause for conversion, including without limitation, that:

    a. The Debtor lacks sufficient funds to continue satisfying payroll and corresponding, post-petition wage claims;

    b. The Debtor had recently experienced a substantial exodus of approximately sixty (60) employees over the course of the two weeks prior to that hearing;

    c. Mr. Ryan had terminated the Debtor's entire board of directors, including due to their collective position—in opposition to Mr. Ryan—

that the Debtor should be liquidated rather than attempting to continue operating as a going concern, including in connection with dismissal of the case;

d.  The Debtor had failed to comply with orders of this Court, including the Debtor's unauthorized use of cash collateral and "the Debtor operating without disclosure and without Court authority on fundraising and soliciting new investors and borrowing and repaying money and things of that nature";

e.  Based on the foregoing, that the Debtor has engaged in misconduct, and the Court further concluded that, as a result, conversion of this case and appointment of a Chapter 7 Trustee will protect the interest of the creditors; and

f.  The particular circumstances of the Bankruptcy Case and Estate indicate potentially significant assets for the Trustee to administer and liquidate for the benefit of the Estate's creditors, including receivables, intellectual property, the warrants, stock interests, causes of action, the directors and officers liability insurance policy, and other personal property.

*See* 1112 Hearing Transcript at 87:18–96:23.

18.  On May 12, 2023 (the "<u>Conversion Date</u>"), the Court entered its Order [Docket No. 89] converting the Bankruptcy Case to chapter 7, discharging the subchapter V trustee, and appointing the Trustee as the interim trustee to oversee the administration and management of the Debtor's Estate.  The meeting of creditors pursuant to section 341 of the Bankruptcy Code is currently scheduled to be conducted on June 16, 2023.  *See also* 11 U.S.C. § 702.

19.  On May 18, 2023, Thomas Dolezal, Matthew Kelly, and Casey Melcher (collectively, the "<u>Movants</u>") filed their initial *Motion to Reconsider Order Converting Case to One Under Chapter 7* [Docket No. 104] (the "<u>First Motion to Reconsider</u>"), asking the Court, on an expedited basis, to vacate or amend the Conversion Order in favor of the requested alternative of dismissal.  *See* First Motion to Reconsider ¶ 17.  *See also* Docket No. 105 ("<u>Movants' Motion to Expedite</u>").

20.     The sole bases set forth in the First Motion to Reconsider are allegations that: (i) the expedited WebEx hearing conducted on the same day that notice of the hearing was provided was disjointed, chaotic, and "marred by WebEx participants talking over other people who were speaking and the police apparently being called to the location where the Debtor's principal, Andrew Ryan, was located"; (ii) there was only one witness at the hearing, Mr. Ryan, who appeared to be unprepared; (iii) creditors and parties-in-interest were denied the opportunity to participate in the 1112 Hearing; (iv) a majority of creditors prefer dismissal over conversion; and (v) the principal asset of the Estate is the warrants, which may only be marketed by a qualified investment banker.  First Motion to Reconsider ¶¶ 8, 12–16.

21.     The sole basis for expedited consideration sought under the related Movants' Motion to Expedite was that, "If the motion is not heard promptly, the Chapter 7 trustee will begin administering the assets of the estate to the detriment of the creditors."  Movants' Motion to Expedite, ¶ 2.  Despite requesting a prompt hearing on the basis of alleged cause, the Movants' Motion to Expedite also states that, "Movants wish to avoid having a hearing on one day's notice." *Id*. ¶ 3.

22.     On May 19, 2023, the Court granted the Movants' Motion to Expedite, scheduled a hearing to consider the First Motion to Reconsider, on an expedited basis, for May 24, 2023, and pursuant to party discussions amended the hearing date to May 23, 2023.  *See* Docket No. 110.

23.     Despite having sought expedited consideration of the First Motion to Reconsider filed on May 18, 2023, counsel for the Movants stated in response to the Court's proposed May 23, 2023 hearing correspondence that, "I am available but would be uncomfortable with getting ready that soon."[1]

---

[1]     E-mail correspondence from S. Sather to J. Lopez, *et al.*, dated May 19, 2023.

24.    Subsequently, following the UST's objection to the First Motion to Reconsider, the Movants requested the UST's and Trustee's consent to allow them to continue the hearing, and after the UST refused to provide its consent, the Movants—with the UST's and Trustee's consent—withdrew the First Motion to Reconsider, without prejudice.  *See* Movants' Stipulation of Dismissal [Docket No. 115].

25.    Meanwhile, following the Trustee's appointment, he has undertaken and continues to zealously pursue substantial efforts to transition custody of the Estate's assets, records, and corresponding administration, including, without limitation: (i) surrendering the Debtor's pre-petition headquarters premises to the lessor and moving to reject same in addition to a related executory contract with Refreshment Services LLC for its provision of related office services and goods (*see* Docket Nos. 129, 130); (ii) transitioning the Estate's deposit funds to the Trustee's account, obtaining bank account records, and closing the Debtor's prior bank accounts; (iii) investigating, reviewing, and evaluating the Estate's warrants, customer contracts, pre-petition business operations, financial history, and related regulatory matters; (iv) consulting with Mr. Ryan, creditors, former customers, warrant issuers, stockholders, former officers and employees, potential purchasers and sale agents, and with other interested parties; and (v) formulating, negotiating, and pursuing agreements for the retention of consultants, potential service providers, potential sale agents, special litigation counsel on a proposed contingency basis (subject to this Court's authorization) to investigate and pursue potential Estate causes of action against the Debtor's former officers and directors and controlling persons, as well as potential other special counsel.

26.     On May 26, 2023, the Movants and Hasan Ugur Koyluoglu[2] (re-)filed their *Motion to Reconsider Order Converting Case to One Under Chapter 7* [Docket No. 119] (the "Motion")

27.     In the Motion, the Movants allege that the Debtor has over 230 creditors, as to which "almost all of the significant creditors wish to weigh in regarding the appropriateness of dismissal versus conversion."  Motion ¶ 10.  The Motion further alleges that many of these creditors have signed statements supporting dismissal rather than conversion and further that "the Debtor has secured commitments from a majority of its creditors to forebear from collections while the Debtor restarts its business if the case is dismissed" but provides no specific details of any such constituency. *Id*. ¶¶ 10–11.

28.     Again, the Motion contends that the principal asset of the Estate consists of the warrants and alleges that "it is unclear that the Trustee is able to administer these assets in a way that maximizes value for all stakeholders." *Id*. ¶ 12.

29.     As alleged bases for the relief sought under the Motion, the Movants allege pursuant to Fed. R. Civ. P. 60(b) that: (i) the UST did not provide reasonable notice of the 1112 Hearing, thereby violating principles of due process; (ii) the UST allegedly, insufficiently investigated the bases for the 1112 Motion, only served it by mail, and allegedly acted on information from a recently terminated employee or officer "and from a few disgruntled employees"; and (iii) the Conversion Order should be reconsidered in order to provide the Movants with the opportunity to lodge their untimely objections on the basis of the doctrine of "excusable neglect." *Id.* ¶¶ 14–21.

30.     The Motion also proceeds under Fed. R. Civ. P. 59, under which the Movants assert that the Conversion Order was manifest error for the same reasons as articulated above: that they

---

[2]     Hereinafter, "Movants" expressly includes Hasan Ugur Koyluoglu.

were not afforded a due opportunity to oppose the 1112 Motion.  *Id.* ¶¶ 22–23 ("[T]he Movants were denied the right to prepare for the hearing and because of this believe that creditor and stakeholder value was destroyed by the U.S. Trustee's misguided motion and the Court's hasty hearing.").

## II.     OBJECTIONS AND SUPPORTING AUTHORITIES

### A.     Applicable Law

31.     Subject to certain limitations and exceptions not applicable here, Federal Rule of Civil Procedure 59 applies in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9023, and so too does Federal Rule of Civil Procedure 60 pursuant to Federal Rule of Bankruptcy Procedure 9024.

32.     Under Rule 9023, the Court may grant a new trial or alter or amend a judgment if requested within fourteen (14) days.

33.     Rule 59 / Rule 9023 do not specify any detailed standard to be utilized by the Court in evaluating such a request, but as the Movants concede, it is well-established that granting a Rule 59 motion "is an extraordinary remedy and should be used sparingly."  *In re Pequeño*, 240 Fed. App'x 634, 636 (5th Cir. 2007) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)).

34.     A motion for reconsideration should be limited to the correction of manifest errors of law or fact or situations where there is newly discovered evidence.  *In re Transtexas Gas Corp. v. TransTexas Gas*, 303 F.3d 571, 581 (5th Cir. 2002); *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998) ("[T]he only grounds for a Rule 59(e) motion . . . are newly discovered evidence, an intervening change in the controlling law, and manifest error of law.").  "It is well-known that Rule 59(e) motions 'cannot be used to raise arguments which could, and should, have been made before the judgment was issued.'"  *In re Baribeau*, 603 B.R. 797, 802 (Bankr. W.D. Tex. 2019)

(quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)); *see also Pro Edge L.P. v. Gue*, 377 F. Supp. 2d 694, 698–99 (N.D. Iowa 2005) (citations omitted) ("Rule 59(e) motions 'serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence.' . . .  Importantly, Rule 59(e) motions cannot be used to 'introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment.'").

35.     A party cannot invoke Rule 59 to reargue matters that were available to the party originally or to assert new theories or arguments on the same facts.  *See, e.g.*, *Wallace v. Brown*, 485 F. Supp. 77, 78 (S.D.N.Y. 1979) ("[W]here the moving party had remained silent during the trial about matters it subsequently presented in its motion to amend factual findings, respondents may not seize a second opportunity now to present arguments they neglected to advance during this trial."); *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006)) (holding that Rule 59 motions are limited to either "correcting manifest errors of law or fact or to present newly discovered evidence.").

36.     The time periods available under Rule 59 are more stringent than under Rule 60, but requests for reconsideration of or for relief from a prior order under Rule 60 / Rule 9024 are more narrowly defined.  *Cf.* Fed. R. Civ. P. 59(a)(1) and (e); Fed. R. Civ. P. 60(b), (c). Accordingly, "[i]f a motion for reconsideration is filed within fourteen days of the judgment or order of which the party complains, it is considered to be a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion."  *In re Garrett-Beck Corp.*, No. 09-37774, 2012 WL 3727318, at *3 (Bankr. S.D. Tex. Aug. 27, 2012) (citing *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004)).

37. Under Rule 60, the sole cognizable bases for relief are: (i) mistake, inadvertence, surprise, or excusable neglect; (ii) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (iii) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (iv) the judgment is void; (v) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (vi) any other reason that justifies relief. *See* Fed. R. Civ. P. 60(b).

38. Here, the Motion proceeds solely under subsections (b)(1) and (b)(3) of Rule 60 / Rule 9024. Motion ¶¶ 14–21.

**B. The Motion Should be Denied Because Movants Cannot Establish a Failure of Due Process**

39. Under the Motion, an alleged failure of due process is the sole basis for the Movants' allegation that the Conversion Order constitutes manifest error within the scope of Rule 59, as well as for asserting that "misconduct" has occurred within the contemplation of Rule 60(b)(3). *See* Motion ¶¶ 14–23.

40. However, the Movants have failed to identify in their allegations any procedural rule that the UST, the Court, or any party violated in connection with the 1112 Motion that would even remotely justify relief. There is no such violation. The most that the Movants can allege is that under due process, notice must be reasonably calculated, under the particular circumstances, to afford interested parties the opportunity to present their positions. Motion ¶ 16.

41. From this predicate, the Movants proceed to allege that they did not receive actual notice of the 1112 Hearing until the day after it was conducted. Nowhere do the Movants address what specific action the UST took or omitted that was not reasonably calculated under the particular circumstances other than to falsely allege that the UST served the Motion only by mail.

As this Court well knows and can judicially notice, the 1112 Motion was filed through the Court's CM/ECF system, which contemporaneously transmits electronic notice to all persons receiving notice through such system. The Petition Date was March 17, 2023. Accordingly, almost three (3) full months elapsed in the case during which parties could appear through the CM/ECF system and receive instantaneous notice. Therefore, the UST did serve the 1112 Motion electronically on parties-in-interest.

42.     The Movants do not allege that the UST should have employed any alternate mode of service of the 1112 Motion or violated any procedural rule in submitting that motion and seeking an expedited hearing thereon, nor can they. The UST is limited to what disclosures in the case have been made by the Debtor identifying parties-in-interest and their contact information. The official docket of the Bankruptcy Case does not reflect any disclosure by the Debtor of creditor e-mail addresses or any request to authorize notice by e-mail or any alternate mode of service that the Debtor sought while it was still a debtor-in-possession. Indeed, when the Movants filed and served their First Motion to Reconsider and Movants' Motion to Expedite, they served their motions only on approximately ten to twelve (10–12) parties and did not certify having served their requests on creditors of the Estate generally, despite alleging general creditor support (and forbearance agreements) therein. Such conduct belies the authenticity of the Movants' present complaints.

43.     Moreover, the 1112 Hearing Transcript reveals that issuers of warrants (*i.e.*, former customers of the Debtor) apparently have generally not received formal notice of this case due to the fact that the Debtor did not generally disclose or schedule the warrants and their issuers in the Debtor's bankruptcy schedules or mailing matrix, and the Trustee has since learned that the Debtor has, upon information and belief, thousands of stockholders who also have not received notice of

the Bankruptcy Case, because the Debtor's stock ledger is in such disarray that it cannot presently be relied upon. These service issues cannot be blamed on the UST, but rather, they rest at the feet of the Debtor to whom the Movants seek the return of control over the Debtor's business, assets, and operations. Accordingly, the Movants cannot establish that the UST did not attempt to provide notice that was reasonably calculated to reach parties-in-interest, as the UST employed the notice procedures that were available to it under the particular circumstances.

44.     Moreover, at the 1112 Hearing, as cited above, the Debtor appeared and argued in favor of dismissal but did not object to or complain about expedited consideration or the timing of the hearing. In fact, the Debtor thanked the Court for convening the hearing as soon as possible. The UST's 1112 Motion to Expedite includes a certificate of conference under which the UST recites the Debtor's and the Subchapter V Trustee's *consent* to expedited consideration. 1112 Motion to Expedite ¶ 3.

45.     Given these considerations, contrary to the Movants' assertions, the determination to conduct the 1112 hearing on May 11, 2023, was not based on any intention to limit notice or participation, but rather, was intended to promote the maximum possible extent of creditor participation by proceeding at the same time as a general status conference had been set in the case on normal notice, when the Court, Estate, and parties knew the major parties-in-interest were available and had the best chance of creditors and other parties-in-interest being present. *See* 1112 Motion to Expedite, ¶ 6 (referencing all parties' availability for May 11, 2023, at 1:30 p.m.—the same setting as the pre-existing status conference).

46.     Therefore, the Movants cannot identify any valid basis to challenge the procedures and proceedings utilized by the UST and Court which led to the expedited 1112 Hearing. Unable to provide notice to creditors other than by mail or through the CM/ECF system, the UST conferred

with what parties it could, including the debtor-in-possession as fiduciary to the Estate, obtained the Debtor's consent, and sought and procured an appropriate hearing setting from the Court that was clearly intended to maximize participation.

## C.  The Motion Fails to Dispute Any of the Bases Identified by the Court as Cause to Convert

47.      Here, the sole argument mounted by the Movants is that there was no genuine emergency justifying expedited consideration, but this baseless argument is belied by established facts that the Movants do not bother addressing in their Motion at all.  They do not address the undisputed fact that at the time of conversion the Debtor had woefully insufficient funds—other than the proceeds of unauthorized financing efforts—to make payroll that exceeded $220,000.00 every two weeks at the time of conversion.  They do not address the admitted fact that the Debtor could not sustain its directors and officer liability policy, as evidenced by the fact that the Debtor's pre-petition premium financing lender, AFCO Credit Corporation ("AFCO"), has moved for relief from the automatic stay in order to cancel its premium financing agreement and its underlying policy collateral.  *See* Docket No. 127.  They do not address the fact that the Debtor defaulted on paying its May 2023 rent owed to its headquarters lessor, in excess of $50,000.

48.      Taken together, the Debtor and the Estate's obvious, established inability to sustain administrative expenses required for their continued stay in chapter 11 plainly gave rise to an exigent circumstance justifying the Court's expedited consideration in order to protect employees and other post-petition creditors of the Estate (which in turn is necessary to protect the interests of pre-petition creditors generally).  A debtor's business that cannot pay its administrative expenses cannot remain in Chapter 11.  *See, e.g.*, *In re Fleetstar LLC*, 614 B.R. 767, 781 (Bankr. E.D. La. 2020) (quoting *In re BH S & B Holdings, LLC*, 439 B.R. 342, 349 (Bankr. S.D.N.Y. 2010))

---

("Although section 1112(b)(4) does not list administrative insolvency as a cause to convert or dismiss a chapter 11 case, a court may still consider this factor.").

49.     Even were the foregoing not compelling, there are numerous additional aspects of the Court's ruling, findings and conclusions justifying conversion that the Movants and Motion do not address at all.   These include findings regarding the Debtor's knowing violations of the Bankruptcy Code in seeking (and procuring) unauthorized post-petition financing, violation of the Court's cash collateral order, and the extremely troubling exodus of substantial employees and the recent termination of the entirety of the Debtor's board of directors by Mr. Ryan due to their disagreements over the continued viability of the Debtor's business.  "One ground . . . is sufficient, standing alone, to establish cause under the statute."  *In re M & C P'ship, LLC*, No. 19-11529, 2021 WL 1679058, at *9 (Bankr. E.D. La. Apr. 28, 2021) (quoting *In re Colon Martinez* (B.A.P. 1st Cir. 2012)).

50.     Perhaps understanding that these overwhelmingly compelling considerations indisputably justify relief, the Movants do not contend that the Court should not have granted the UST's 1112 Motion, but rather, that the Court should reconsider that relief and order dismissal in the best interests of creditors and based on the general allegation that creditors support dismissal rather than conversion.

51.     However, these same findings, conclusions, and rulings are materially incompatible with any proposal to return control of the Debtor and its assets and business to Mr. Ryan, who the Court has already found is generally responsible for substantial of the circumstances leading to the entry of the Conversion Order.   "When parties disagree on conversion or dismissal, as they do here, the court evaluates the alternatives, and chooses the alternative that would be most advantageous to the estate as a whole."  *In re Fleetstar LLC*, 614 B.R. at 782 (quoting *In re*

*Hampton Hotel Invs., L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001)). It is simply daft to assert that it is in the best interests of creditors and the Estate as a whole to return custody of the business and assets to the same individual who is responsible for violations of Court orders and federal law, including but not limited to nondisclosure of significant assets, and for the extremely troubling, recent wave of employees, executive, and director departures and terminations.

**D.     The Allegation that the Estate's Constituencies Support Dismissal is Wholly Unsupported and Must be Proven**

52.     Based on the foregoing, the Movants cannot establish any mistake, manifest error in law or fact, fraud, or misconduct implicated by the Conversion Order, nor can they establish that the Order has been satisfied or is void for a failure of due process, or otherwise. Therefore, the Movants' sole argument is to allege overwhelming support from the Estate's creditors for dismissal, because this additional, arguably "newly discovered evidence" is the sole cognizable basis for relief articulated under the Motion. However, the Motion nevertheless fails because it does not identify any actual "newly discovered evidence"; only a wholly unsupported allegation.

53.     The Movants allegation of widespread creditor support is not accompanied by any documentation or support whatsoever. It seems obvious that the Debtor cannot pay all claims in the Estate in the reasonably near future, and this fact is further supported by the allegation in the Motion that the Movants have procured forbearance agreements from a majority of creditors for the Debtor's benefit. No party has appealed the Court's Conversion Order and the time to appeal has since expired. Since the Motion was filed, no additional creditors have joined in it or filed any other support, nor is there any documentation of the supposed forbearance agreements. In any event, "the test for what is in the 'best interests of creditors and the estate' is not one of majority rule.'" *In re Fleetstar LLC*, 614 B.R. at 781 (citing *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994)). Even if all creditors supported dismissal, the Movants cannot overcome

the Court's prior finding that conversion better serves the interests of creditors and the Estate. Of course, all creditors do not support dismissal, as evidenced by AFCO seeking to cancel its premium financing agreement and the Debtor's insurance coverage.

54.     Moreover, under the particular circumstances of this case, it appears that the Estate may, in fact, prove solvent, due to the potential, collective value of the warrants and the total universe of claims scheduled by the Debtor. Accordingly, the Estate includes stockholders as well. *See, e.g.*, *Franchise Servs. of N. Am. v. United States Trs. (In re Franchise Servs. of N. Am.)*, 891 F.3d 198, 208 n.7 (5th Cir. 2018) ("Shareholders are the residual claimants of the estate, *see* 11 U.S.C. § 726(a)(6), entitled only to whatever remains after payment of the various secured and unsecured creditors."); *Boyer v. Crown Stock Distrib.*, 587 F.3d 787, 797 (7th Cir. 2009) (explaining that, under § 726(a)(7), "the debtor" refers to the debtor's right to any estate surplus while the estate remains open but that, upon closing of the estate, "should all the unsecured creditors of [the debtor] be paid in full the only other potential claimants to any surplus money in its estate will be the original shareholders."); *Renco Grp., Inc. v. Wilmington Trust, N. A. (In re Magnesium Corp. of Am.)*, 583 B.R. 637, 650 (Bankr. S.D.N.Y. 2018) (holding that equity interest holders have standing with interests in a bankruptcy case once a surplus is established and stating that "an equity holder . . . —which under Bankruptcy Code section 726(a)(6) falls at the bottom of the priority distribution scheme—lacks standing to object to claims against the estate unless there is a reasonable possibility of a surplus."). Here, especially with the Movants contending that proceeds from the liquidation of the warrants outside of bankruptcy are likely to be sufficient to pay all claims in full and reach equity holders, dismissal of the case is also inappropriate unless the Movants can demonstrate the overwhelming support of the Debtor's minority stockholders as well.

55.     Considering the particular facts and circumstances of this case, the ability of the Movants to prove that all creditors either will be reliably paid in full in connection with dismissal of the case, or otherwise consent to dismissal (including shareholder consent in the case of a potentially solvent estate), is critical.  This is because the requested relief would return the Estate's assets and the Debtor's business back to the Debtor under Mr. Ryan's authority; the same Debtor and controlling person whose conduct established the unreliability that led to the Conversion Order in the first instance.  "Considering that dismissal would give an insider and competing creditor the reins on the assets of the estate, including avoidance actions, at this point, creditors' best hope for recovery is through conversion." *In re Fleetstar LLC*, 614 B.R. at 789.  "For obvious reasons, the interests of the creditor body as a whole are likely better served by the bankruptcy process, where claims are entitled to prima facie validity and the resolution of disputed claims is overseen by a disinterested chapter 7 trustee and the court." *In re Biolitec, Inc.*, 528 B.R. 261, 271 (Bankr. D.N.J. 2014).

56.     Indeed, the Conversion Order expressly provides that "Debtor shall within 14 days after the effective date of conversion, comply with the requirements of Bankruptcy Rule 1019(5)(A)(i), and, within 30 days, file the final report and account required by Bankruptcy Rule 1019(5)(A)(ii)."  Conversion Order, p. 2. *See also* Fed. R. Bankr. P. 1019.  Despite this, following entry of the Conversion Order, Debtor's counsel has informed the Trustee that Mr. Ryan declines to assist the Debtor in performing these duties or presenting a witness at the upcoming section 341 meeting of creditors.  This brazen disregard of the Debtor's duties and refusal to assist the Debtor in complying with the Court's Order is yet further indication that dismissing the case and returning control over the Debtor and its assets and business to Mr. Ryan would not be in the best interests of the Estate and its creditors (and/or other constituencies).  *See, e.g.*, *In re Capra*,

614 B.R. 291, 299 (Bankr. N.D. Ill. 2020) ("[P]rotecting the best interests of the estate includes protecting the bankruptcy process under which the estate is administered. . . . If the Court were to permit a debtor who has systematically abused the bankruptcy process to walk away from all consequences of that misconduct, the Court should expect that other debtors will take note and conclude that filing false schedules and [acting] without court authorization is a risk-free alternative to obeying the rules.").

### III.   CONCLUSION

WHEREFORE, the Trustee respectfully requests this Court's entry of an Order denying the Motion, with prejudice, and granting such other and further relief as the Court may deem just and proper.

Dated: June 15, 2023

Respectfully submitted,

By: _/s/ Jay H. Ong_
    Jay H. Ong
    Texas Bar No. 24028756
    Thanhan Nguyen
    Texas Bar No. 24118479
    MUNSCH HARDT KOPF & HARR, P.C.
    1717 West 6th Street, Suite 250
    Austin, Texas 78703
    Telephone: (512) 391-6100
    Facsimile: (512) 391-6149
    Email:    jong@munsch.com
            anguyen@munsch.com

**Proposed Counsel For Randolph N. Osherow, Chapter 7 Trustee**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on the 15th day of June 2023, he personally caused true and correct copies of the foregoing pleading to be served by electronically filing it with the Court using the Court's CM/ECF system, which sent notification to the parties receiving same through such system.  A true and correct copy of the pleading was specifically served on the following party via electronic mail, and on the parties shown on the attached service list, via first class U.S. Mail:

Stephen W. Sather
Barron & Newburger, P.C.
7320 N. MoPac Expwy, Suite 400
Austin, TX 78731
ssather@bn-lawyers.com

*Counsel for Movants*

By: */s/ Thanhan Nguyen*
Thanhan Nguyen, Esq.

Label Matrix for local noticing
0542-1
Case 23-10164-smr
Western District of Texas
Austin
Thu Jun 15 11:15:07 CDT 2023

ASTRALABS Inc
979 Springdale Road Suite #123
Austin, TX 78702-3764

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701-2450

3423 Holdings, LLC
4811 E 7th Street
Austin, TX 78702-5018

3423 Holdings, LLC
c/o: Lisa C. Fancher
Fritz Byrne, PLLC
221 W Sixth St #960
Austin TX 78701-3444

Adam Yorke
1541 Ford Avenue
Redondo Beach, CA 90278-2801

Adwait Muthal
7 Wainwright Rd Unit 80
Winchester, MA 01890-2381

AiDLT Global Limited
30 Dredge Court
Milton, Ontario, Canada
L9T8T1

Albert Balady
208 Ackerman Ave
Ho Ho Kus, NJ 07423-1006

Aldo de Jong
299 Glenlake Ave #2301
Toronto ON M6P4A6
Canada

Alexander Clarence McIntosh
1047 East Spazier Ave.  Apt. # L
Burbank, CA 91502-2652

Alexander Monsell
4489 E Florida Ave
Denver, CO 80222-3617

Alexander Seery
925 Rolfe Place
Alexandria, VA 22314-1383

Alexandra Cherwa aka Jonathan Cherwa
15907 91st Ave Ct E
Puyallup, WA 98375-8941

Alexandre Sylvestre
609 Tower Dr.
Edgewater, NJ 07020-2202

Alladin Ammouri
2445 Avis Street, Mesquite, Texas
Mesquite, TX 75149-6513

Andrew Ryan
979 Springdale Rd. Suite #123
Austin, TX 78702-3764

Andrew Ryan
c/o Ron Satija
Hayward PLLC
7600 Burnet Rd, Ste.530
Austin, TX 78757-1269

Anthony Runnels
12024 Rock Creek Ct.
Hawthorne, CA 90250-1668

Anthony Veloso
730 Mason Road
Jefferson, MA 01522-1346

Antonello Loddo
205 Ridge Ave
Gettysburg, PA 17325-2429

Anu Santhanagopal
12 Brittany Way
Kendall Park, NJ 08824-1465

Anuj Jain aka Anmol Jain
620 W 42n ST  Apt S06G
New York, NY 10036-2019

Apex Funding Source LLC
c/o Kaminski Law PLLC
PO Box 247
Grass Lake MI 49240-0247

Apex Funding Source, LLC
3050 Biscayne Blvd #502
Miami, FL 33137-4153

Archilyse AG
c/o Matthias Standfest
Flelastrasse 31B
8047 Zurich, Switzerland

Athletes to Athletes
C/O The Lott Firm, PLLC
501 Congress Avenue, Suite 150
Austin, TX 78701-3575

Avinash Reddy Desireddy
16304 FM 1325  APT 7315
Austin, TX 78728-1239

Baiping Guo
8 Mooney Street
Lane Cove North NSW 2066
Australia

Billy Jack Linsley
16 Bodine Street
Wellsboro, PA 16901-8206

Bonne et Filou Inc
1178 Broadway
3rd Floor #1390
New York, NY 10001-5404

Bootstrap Servicing Inc.
510 Townsend Street
San Francisco, CA 94103-4918

Bradford Chan
2540 Wexford Ave.
South San Francisco, CA 94080-5517

Bradley G Kessler / Kessler Realty Holdings
1621 Northland Ave
Lakewood, OH 44107-3723

Bradley Robertson
550 Oak Grove Ave. Unit 122
Menlo Park, CA 94025-3282

CFT Clear Finance Technology Corp.
1200-33 Yonge Street,
Toronto, Ontario,
M5E 1G4, Canada

CMT Scanner
1/19 Virginia Street
Geebung
QLD 4034, Australia

Cameron Resnick
870 North 28th Street 101
Philadelphia, PA 19130-1728

Capitol Vending and Coffee Company
c/o Cleveland R. Burke
Holland & Knight LLP
100 Congress Ave #1800
Austin TX 78701-4042

Carl Lumma
367 Los Gatos Blvd
Los Gatos, CA 95032-5458

Carl Russo
707 Willow Ave. Unit #2
Hoboken, NJ 07030-4281

Casey Melcher
1635 N Water St. Apt 602
Milwaukee, WI 53202-3663

Cassidee Collier
3 Stuyvesant Oval
Apt 10H
New York, NY 10009-2130

Celtic Bank
268 South State Street Suite 300
Salt Lake City, UT 84111-5314

Chad Doyle
3450 Crestmoor Dr.
San Bruno, CA 94066-3923

Chaisson-Browne LLC
35 Fiddlehead Rd
Oxford, CT 06478-2708

Chang Ting Zou
48 Woodview Dr.
Brewster, MA 02631-2902

Christina Hong
12407 Bexley
Houston, TX 77099-1308

Christopher Fast
45 Meriam Street
Wakefield, MA 01880-3633

Christopher Fontaine
7814 Bradenton Drive
Charlotte, NC 28210-7216

Christopher Seabolt
3404 Tree Summit Parkway
Duluth, GA 30096-7939

Clearco
Pavilion House,
31 Fitzwilliam Square,
Dublin 2, Ireland

Constantine Trikas
840 Fulton Street Apt. 704
Brooklyn, NY 11238-6756

Cordtz Tuatoo
417 Swift Fox Run
Crestview, FL 32536-5450

Coventry Capital Partners, LLC
306 Landing Lane
Chestertown, MD 21620-4726

Cristian I Crisan
15408 Fisher Island Dr.
Austin, TX 78717-3832

Crystle A. Rauch
6701 Lakewood Rd
Stanwood, WA 98292-6923

Curt Bromm
5785 Open Fields Drive
Whitestown, IN 46075-9719

DAWn Audio LLC
3035 St Ann St
Apt A
New Orleans, LA 70119-4029

Dan Smith
8021 N Padova Pl.
Tucson, AZ 85741-1231

Daryl W Campbell
3353 River Valley Dr.
Richland, WA 99354-2105

David Fisher
832 Kristin Ln
Williamstown, NJ 08094-3534

David Huie
842 Harbor island Drive
Newport Beach, CA 92660-7228

David Hule
842 Harbor Island Dr.
Newport Beach, CA 92660-7228

Diego Mauro Cogno
65b Cromford Road
SW18 1PA,
London, UK

Domunus
655 East 14th Street, Apt. 9A
New York, NY 10009-3145

Ebonee Miller
7176 W Oromia Way
West valley city, UT 84128-4020

Eli M Blatt
18117 Biscayne Blvd PMB 61473
Miami, FL 33160-2535

Emilija Dimitrovski
Lange Zeile 12,
90419 Nuremberg
Germany

Eric Lee
6620 Wickliff Trail
Plano, TX 75023-3233

ErleaDx Pte Ltd
BLK 856 TAMPINES ST 82
#09-269
Singapore 520856

Ethan Brandt
301 E 4th St
Huxley, IA 50124-9333

Evan Johnson and Ejohnson RD LLC
3 Revere Drive
Ridgefield, CT 06877-3642

Fernando Moreno Cortina
2401 Aldrich St Apt 367
Austin, TX 78723-2105

Filipe Peerally
8820 Theriot Rd
Peyton, CO 80831-6777

Franshesca Castoria
2 Hearthwood Court
Manahawkin, NJ 08050-7807

Frederic W. Corwin III
26 Boswell Rd.
Reading, MA 01867-1801

GDS Group LLC
50 Merrick Road STE 203
Rockville Centre, NY, NY 11570-4726

Gary L DeVries
2204 Ashwood Drive
Aberdeen, SD 57401-1681

GeoNadir Pty Ltd
70 Moresby St, Trinity Beach
Cairns, 4879
Queensland, Australia

George Andrew Simons CDP
15b Acacia Lane,
Cambridge Road,
Sandys MA 02 Bermuda

Girish Amin
1419 Sierra Glen Circle
Apex, NC 27502-7421

Glenn Hunter
80 Forest Drive
East Northport, NY 11731-1529

Green Future Investments LLC
333 Turn Pike Dr.
Folsom, CA 95630-8091

Gregory Baker
224 Furman Farm Pl.
Charleston, SC 29492-7304

Gregory Wilson
15 W 110th St. Apt. 22
New York, NY 10026-4307

Griffin Hermes
2450 4th Street
apt B
Santa Monica, CA 90405-3607

Harold Bishop
3009 S John Redditt Ste E #398
Lufkin, TX 75904-5710

Harrison Lee
1090 Lambton Drive
Oakville, Ontario
L6J 7P3

Hasan Ugur Koyluoglu
1064 Great Road
Princeton, NJ 08540-1247

Henry Shao
1955 Junewood Ave.
San Jose, CA 95132-1627

Holistic Health Collaborative
128 Pleasant Street
Marblehead, MA 01945-2340

Inbal Tubi
Calle 74C #7-52 Apt #305
Bogata Colombia 00000

Into The Multiverse Inc.
816 California Ave.
Venice, CA 90291-3412

Iruka Capital
162 Elmora Ave #211
Elizabeth, NJ 07202-1148

Iryna Zhuravel
8929 Lombard Place
Apt. 123
San Diego, CA 92122-1532

Ivanna Mariel Guerrero Ulloa
8010 Little Deer Xing
Austin, TX 78736-1837

J333 Ventures LLC
1706 Elliot Ranch Rd
Buda, TX 78610-3033

Jack Atkin
16 Hamlin Road
Edison, NJ 08817-2906

Jack Colletti
2630 Quail Hill Drive
Pittsburgh, PA 15241-2963

Jack P. Hopper
2116 Fordham Ln.
Austin, TX 78723-1332

James Steele
510 Coffin Alley, PO Box 382
Portland, PA 18351-0382

Jan Kvita
Ke Krci 1002/24
Prague
Czech Republic

Jaron ('Robert') Glasgow
6960 10th St N Apt. 207
Oakdale, MN 55128-7537

Jaron Glasgow
7550 80th St. St
Unit 415
Cottage Grove, MN 55016

Jason Croft
28A Parkway Village
Cranford, NJ 07016-2545

Jason D Arnold
1140 Bonanza Drive
Okemos, MI 48864-4068

Jason Jacobsohn
285 Danbury Drive
Vernon Hills, IL 60061-2951

Jason Kahle
347 White Fox Run
Fallbrook, CA 92028-2669

Jeff Meyer
33970 Rebecca Rd
Kingston, IL 60145-8123

Jeffrey Wells
18550 Hatteras St. #2
Tarzana, CA 91356-1923

Jeremy Greiner
1709 Crestwood Drive
Alexandria, VA 22302-2307

Jeremy Phillips
211 W Verdugo Ave. #201
Burbank, CA 91502-2821

Joao Carlos Dos Santos Branquinho,
3530 Mystic Pointe Dr. Apt. 2012
Aventura, FL 33180-4531

Joao Carlos Santos Branquinho
3300 NE 191st ST
Apt 1207
Aventura, FL 33180-2445

John W Polomny
1116 Palm Valley Drive E
Harlingen, TX 78552-9047

Johnny F Evans
234 Bay St. N.W.
Fort Walton Beach, FL 32548-3806

Jon A. Sims
25558 Fitzgerald Ave
Stevenson Ranch, CA 91381-1278

Jonathan Adams
1535 Crooked Stick
San Antonio, TX 78260-2630

Jonathan Boyarsky
130 Dartmouth Street
Apt. 305
Boston, MA 02116-5133

Jong Yul Kim
11048 SE 31st St.
Bellevue, WA 98004-7540

Jordan Case
302 Pinecrest Pl
Andover, KS 67002-9253

Jordan Lund
5452 Aldrich Ave S
Minneapolis, MN 55419-1732

Jose Ceniceros
19621 6th Ave S
Des Moines, WA 98148-2425

Jose Fabian Kabigumila
9 Myrna Dr.
Marlborough, CT 06447-1132

Joseph Carothers
1813 Honey Hill Rd.
Hardeeville, KS 66027

Juan Jackson
1804 Barksdale Drive
Lexington, KY 40511-1504

Juan Jose Simon Ocejo
300 E Riverside Dr, Apt 446
Austin, TX. 78704
Austin, TX 78704-0182

Kanari Holdings Inc
c/o One Business Center
One JLT, 06-150, Jumeirah Lakes Towers
PO Box 338553, Dubai, UAE

Kevin Mease
300 S Lamar #207
Austin TX 78704-1089

Kishore Anjaneyulu
1204 Yarrow Rd
Matthews, NC 28104-5434

Kleiner Device Labs
999 Driver Way
Incline Village, NV 89451-9019

LOOFT Inc.
260 N Lord St #228
Brookfield, WI 53045-3326

Laurie Cercone
604 Eagle
Austin, TX 78734-5009

Lawrence D. Hutchison and Marcia Hutchison
306 Landing Lane
Chestertown, MD 21620-4726

Leonel Andres Barragan Rodriguez
Carrera 111D Bis # 78b 19
Bogota, Colombia

Leonid Mordkovich
1974 Devonshire Ave
Avon, IN 46123-0003

Lets Join In Pty Ltd
12 sky lane Ashburton
Melbourne, Victoria, Australia, MA 3147

Locoal Charcoal Company
1201 Citation Circle
Del Valle, TX 78617

Loglens Insights Private Limited
766 The Executive Zone, Anna Salai
Chennai, TN 60000

Lonch, Inc.
60 Feldspar Rdg.
Glastonbury, CT 06033-3355

Loopi, Inc.
3802 38th Ave South
Seattle, WA 98118-1106

Makara Insights
80 SW 8th Street
Suite 2013
Miami, FL 33130-3003

Mallory Frick and JM FRICK LLC
328 Ledge Stone drive
Austin, TX 78737-1910

Manoj Sonje
16303 Chelsea Place Apt. 236
Selma, TX 78154-1883

Marc Russell
471 East 4300 North
Provo, UT 84604-5115

Marco Frabotta
2222 Detroit Ave 1013
Cleveland, OH 44113-2461

Mark Beauharnois
6867 Amanda Lane
Lockport, NY 14094-9659

Mark and Candice Gimbel Family Living Trust
13258 N. 79th St.
Scottsdale, AZ 85260-4016

Martha A. Barrero
2121 Lohman's Crossing Road 504-426
Austin, TX 78734-5217

Martin Duenaz
30280 Prospect Rd
Nettleton, MS 38858-8326

Massachusetts Department of Revenue
PO Box 7090
Boston, MA 02204-7090

Matthew Hendershot
1841 W Wisteria Dr
Chandler, AZ 85248-2183

Matthew Peter Kelly and Xin Geng Kelly
13190 Burke Rd
Los Altos, CA 94022-3441

Max Mahan
4479 Vrain St.
Denver, CO 80212-2440

Melane Rella and Angelo Rella
628 Burno Mountain Road
Cotopaxi, CO 81223-9480

Melissa Hector
1080 Cypress Parkway  Suite 1187
Kissimmee, FL 34759-3328

Michael Brown
56 Blackberry Ln
Yarmouth, ME 04096-5966

Michael Harrison Jr
136 Cowper St
Palo Alto, CA 94301-1201

Michael Michael
333 Turn Pike Dr.
Folsom, CA 95630-8091

Michael Miracle
14 Chardonnay Drive
Holmdel, NJ 07733-2803

Michael W. Brown
56 Blackberry Ln
Yarmouth, ME 04096-5966

Morana Enterprises, LLC
131 Huffman Avenue
Dayton, OH 45403-1915

Nageswara Kondraganti
12365 Willowgate Dr.
Frisco, TX 75035-0919

Nainesh Patel
23 Nancy St.
Kendall Park, NJ 08824-1653

Naishadh Saraiya
1501 Anglebluff Lane
Plano, TX 75093-4826

Naishadh Saraiya
5025 Hudson Drive
Plano, TX 75093-5080

Neil A. Goro
Goro Law, PLLC
2011 N. Collins #711
Richardson, TX 75080-2689

Nemanja Milosevic
Lange Zeile 12,
90419 Nuremberg
Germany

NeuroTech Group AI Ltd
5a Bear Lane
London SE1 0UH
UNited Kingdom

Neurologik – FZE
Za Obchody 846
Neratovice
27711
Czech Republic

New Growth Brands, Inc.
Attn: Alastair James
3305 Bellaire Park Ct
Fort Worth, CA 76109-2636

Nic Hickox
4301 W. William Cannon Dr. STE B-150 ï¿½
Austin, TX 78749-1487

Nicholas J. Hickox
4301 W William Cannon Dr.
Suite B-150 #107
Austin, TX 78749-1487

Nihar Patel
979 Springdale Rd.
Suite #123
979 Springdale Rd. Suite #123
Austin, TX 78702-3764

Nirmalbhai C Patel
52 Meadow Brook Rd.
Edison, NJ 08837-2012

Novogiene Inc
226 Mira Vista
Santa Cruz, CA 95060-3336

Nvzn Augmented Reality Corp.
2549 Waukegan Rd
PMB 10024
Bannockburn, IL 60015-1569

ORDEREZ PTE LTD
12020 Shamrock Plz Ste 200 PMB 93169
Omaha, NE 68154-3537

Ok Away Pty Ltd
Level 21
55 Collins Street
Melbourne Victoria AUSTRALIA

Olivia Kim
2748 Bayberry Way
fullerton, CA 92833-1402

Optifold
5900 Yonge Street, suite 807
North York, Ontario, M2M 3T8
Canada

Paul Wilcox
380 Columbus Avenue
Unit 1
Boston, MA 02116-6075

Paul and Mary Wilcox
380 Columbus Ave. #1
Boston, MA 02116-6075

Pebble Labs Inc.
c/o Steve Ofstehage
100 Entrada Dr.
Los Alamos, NM 87544-3353

Petr Zaytsev
3632 Carlisle Dr
Durham, NC 27707-5062

Pneumeric, Inc.
Attn: Johnathon Aho
823 4th St SW
Rochester, MN 55902-2975

Prismatext Inc
800 W 10th Ave
Anchorage, AK 99501-3402

Proc12 Inc.
9601 Ridge Walk Court
Davie, FL 33328-7141

Raise a Hood, Inc
Michael Petersen
19275 Walden Trail
Deephaven, MN 55391-3546

Rajamani Ganesh
13895 Clatsop Way
San Diego, CA 92129-4423

Richard Ditter
9449 Poplar Ave
Germantown, TN 38138-8003

Richard Litzky
5158 Forest Brook Pkwy
Marietta, GA 30068-2828

Richard Nilsson
Gran Via 577, BX2
BARCELONA 08011
SPAIN

Richard Pottin
312 - 6380 Buswell Street
Richmond, BC
V6Y 2G2

Richard S Mackin Jr
1639 Glasgo Rd.
Griswold, CT 06351-3510

Robert Bruce
7077 N Mason Ave.
Chicago, IL 60646-1224

Roosevelt Scott
802 Hawk View Court
Fairview Heights, IL 62208-2967

Ross Wigle
168 Charterhouse Cres.
Ancaster, ON
Canada L9G 4M5

Rushi Ukani
8 Koster Blvd. Apt. 6A
Edison, NJ 08837-4216

Ruth Griffith and Anthony Griffith
96 Puunoa Pl.
Lahaina, HI 96761-1658

Ryan Burt
18115 59th Ave N.
Minneapolis, MN 55446-3936

Ryan Hall
6053 Big Pond Trl
Grovetown, GA 30813-4543

Ryan Stewart
2 Mill Falls Road
Pembroke, NH 03275-1233

Saifon Chang
5822 E. Wildrose Dr.
Orange, CA 92867-3355

Salvatore Pepe
1011 Schindler Dr.
Silver Spring, MD 20903-1030

Sam Simonovich
128 Prince St #35
Tappahannock VA 22560-5032

Samuel Esau Goldman
2129 Grand Oaks Ave.
Altadena, CA 91001-3501

Sanjay Pinnock
7275 Leonard Street
Philadelphia, PA 19149-1315

Sanjay V Patel
17199 Carrotwood Dr.
Riverside, CA 92503-7920

Sedjin Alka
203 West Sealy Ave.
Alvin, TX 77511

Shaila Patel
1110 Windsor Park Ct
Englewood, NJ 07631-4924

Shankar Narayanan Shankar Ganpathy
6820 Preston Road Apt. 225
Plano, TX 75024-2500

Sleep Easy Technology Inc
1400 E Angela Blvd Unit 236 PO box 160
South Bend, IN 46617-1364

SoftDsk LLC
PO Box 5963
Plant City, FL 33563-0052

Spencer Diner
4261 South Pearl Street
Englewood, CO 80113-4741

Stephen Berger
150 Lodge Street
Manchester, NH 03104-3776

Stephen Berger
64 Northland Rd
Windham, NH 03087-1275

Stripe Capital
185 Berry St. #550
San Francisco, CA 94107-9105

Style Konsult Inc.
31 W. 34th St. 7Fl
New York, NV 10001-3009

TX Comptroller of Public Accts
c/o John M Stern Atty General's Off
Bankruptcy & Collections Division
PO Box 12548
Austin TX 78711-2548

Talent Dube
8/100 Wittenoom Rd.
High Wycombe, WA 6057
Perth, Australia

Tammy Hong
12407 Bexley Dr.
Houston, TX 77099-1308

Target Mobility GmbH
Eiderstedter Weg 5B
Berlin (Germany), TX 14129

The Hochman Family Trust
6104 Sierra Arbor Ct.
Austin, TX 78759-5176

The Lane Law Firm
6200 Savoy Dr Ste 1150
Houston, TX 77036-3369

Thomas Dolezal
1166 Pitkin Ave.
Akron, OH 44310-1121

Thomas E. Canty
7592 Mona Ln.
San Diego, CA 92130-5618

Thomas Mueller
9571 Crestwood Lane
Anaheim, CA 92804-6370

Timothy C. Taylor, Sr
P.O. Box 5371
Austin, TX 78763-5371

U.S. Small Business Administration
1545 Hawkins Blvd #202
El Paso, TX 79925-2654

United States Trustee – AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

Vaidehi Tembhekar
6012 Tallow Ln
Frisco, TX 75036-8835

Verbato Inc.
1116 Chelsea Avenue
Unit 6
Santa Monica, CA 90403-4625

Victoria Lerner, Trustee, Lerner Living Trus
11758 Crescenda Street
Los Angeles, CA 90049-2927

Vincent Goveas
1251 Weathersfield Way
San Jose, CA 95118-3553

Vincent Mach
950 Windsong Court
Diamond Bar, CA 91765-2376

Virgilio Yabut
A & F Guaranteed Service, LLC
2 Meadow Lark Lane
Franklin Park, NJ 08823-1809

WMW Partners Inc dba Metapyxl
1720 Dekalb Ave
Brooklyn, NY 11237-4004

WeConcile Inc
PO Box 507
Olga, WA 98279-0507

Wesley Kotcher
39 S Main St.
Rosedale, IN 47874-6000

Wilfrid Jean-Francois
2144 Oakwood Place
Elmont, NY 11003-4022

William Adams
11732 Reva Dr.
Garden Grove, CA 92840-2420

William P Daly III
907 Lakewood Ct S
Maplewood, MN 55119-5859

Yatinkumar Dodia
1539 Streams Way
Allen, TX 75002-0911

Yeshaya A Koblick
11 Garden Street
Sharon, MA 02067-2620

Yindjin Genggam Bersama
Kota Kasablanca Office 88 Tebet, Jakarta
Indonesia

York Gin USA, Inc.
Jeff Hamilton-Gahart CEO
779 Oak Lane
Sonoma, CA 95476-7148

Zabel M. Miracle and Micheal J Miracle
14 Chardonnay Drive
Holmdel, NJ 07733-2803

Zachary Fuchs
41 Glenbrook Rd.
Monsey, NY 10952-1309

Zachary Potvin
1016 Enchantment Rd.
Rapid City, SD 57701-9239

b-science.net GmbH
Traenkebachstrasse 38
8712 Staefa, Canton Zurich, Switzerland

fashion constellate
pobox 6
lake junaluska, NC 28745-0006

myidfi LLC
141 Sioux Drive
Hailey, ID 83333-8485

Randolph N Osherow
342 W Woodlawn, Suite 100
San Antonio, TX 78212-3314

Robert Chamless Lane
The Lane Law Firm, PLLC
6200 Savoy Dr, Suite 1150
Houston, TX 77036-3369