# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-10164-smr |
| ASTRALABS, INC., | § | |
| | § | Chapter 7 |
| Debtor. | § | |

## TRUSTEE'S MOTION FOR STATUS CONFERENCE

TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Randolph N. Osherow, not individually but in his capacity as the duly appointed chapter 7 trustee (in such capacity, the "Trustee"), for and on behalf of ASTRALABS, Inc. (the "Debtor") and its bankruptcy estate ("Estate") established under the above-captioned chapter 7 case ("Bankruptcy Case"), and files this *Motion for Status Conference* (the "Motion"), respectfully stating as follows:

### I. SUMMARY

1. On July 26, 2023, Ron Satija (counsel for Andrew Ryan a/k/a Ryan Rafols) sent an e-mail (the "Satija Correspondence")[1] to counsel for CFT Clear Finance Technology Corp. ("CFT"), a major unsecured creditor of the Estate.[2] Attached to the Satija Correspondence is a proposed *Personal Guarantee Agreement* of Andrew Ryan, the Debtor's former CEO (the "Proposed Guaranty"), offered to CFT in exchange for CFT's agreement to participate in an

---

[1] A true and correct copy of the Satija Correspondence is attached hereto as **Exhibit "A"** and incorporated herein by reference for all purposes.

[2] *See, e.g.*, Amended Schedule E/F [Docket No. 209] ("Amended Schedules"), No. 3.102.

**TRUSTEE'S MOTION FOR STATUS CONFERENCE** Page 1

election requested in the Bankruptcy Case pursuant to 11 U.S.C. § 702 (the "Trustee Election") and to vote for a particular candidate to replace the Trustee:

> AND WHEREAS, the Guarantor, the former CEO of the Company, in an effort to align the interests of all parties and ensure the best outcome for the Lender in the Chapter 7 liquidation process, is voluntarily providing this personal guarantee for the Company's obligations under the Loan Agreement;
>
> AND WHEREAS, in consideration of the Guarantor's voluntary personal guarantee, the Lender has agreed to vote for candidate Melissa Haselden in the Chapter 7 Trustee election in the Bankruptcy;

*See* Satija Correspondence at pg. 3.

2. The terms of the Proposed Guaranty make clear that Messrs. Ryan and Satija offered the Proposed Guaranty expressly in order to seek and induce CFT's participation the Trustee Election and CFT's vote for their designated candidate:

> 3. Consideration: In consideration for this Guarantee, the Lender hereby agrees to vote for Melissa Haselden in the Chapter 7 Trustee election scheduled in the Bankruptcy. Further the Guarantee will only be effective if the Lender's vote is counted and Ms. Haselden is elected.

*See id.*

3. The Trustee initiated his investigation that uncovered the Proposed Guaranty upon being notified by the United States Trustee (the "UST") of certain irregularities and potential improprieties relating to claims filed in the Bankruptcy Case, the circumstances of which strongly indicated possible improper conduct committed in connection with the Trustee Election.[3] These matters are further addressed below.

4. The Trustee's pending investigation into these matters has revealed—as evidenced by the Satija Correspondence—that the Trustee Election has been orchestrated, organized, and led by Andrew Ryan, the Estate's major shareholder, in an improper and fraudulent attempt to utilize

---

[3] See, e.g., Trustee's Amended Limited Omnibus Objection to Claim No. 164 of Apex Funding Source, LLC and Claim No. 165 of Iruka Capital Group, LLC for Purposes of Disputing Eligibility to Vote in Trustee Election Pursuant to 11 U.S.C. § 702, With Notice Thereof [Docket No. 216] (the "Kaminski Claims Objection"); Amended Objection to Claim No. 166 of Shaila Patel, With Notice Thereof [Docket No. 217] (the "Patel Claim Objection").

section 702 of the Bankruptcy Code in bad faith to advance the interests of shareholders and collaterally attack this Court's conversion of this Bankruptcy Case to chapter 7 by installing Mr. Ryan's chosen designee to act as the Estate's fiduciary.

5. The Trustee Election proceedings, as well as the Trustee's corresponding investigation surrounding the Proposed Guaranty and the Satija Correspondence, remain continuing, as to which the Trustee reserves all of his and the Estate's rights. Notwithstanding, the evidence already uncovered to date indicates that Andrew Ryan's efforts to manipulate the bankruptcy process include a coordinated effort and potential conspiracy involving other parties-in-interest. The objective is perhaps best summarized in a message from Andrew Ryan to shareholders following conversion of the Bankruptcy Case to chapter 7:

> We will get control of our company and worst case, we will get control of the process to ensure maximum returns in a sale for our shareholders, or I will die trying. That's the difference between the other side and me.

6. Mr. Satija is a panel chapter 7 Trustee who, subject to the Court's approval, receives case assignments from the UST to act as fiduciary to and for bankruptcy estates in chapter 7 cases.[4]

7. Neither the Trustee nor his counsel, in their over sixty combined years of bankruptcy practice, have encountered conduct that more fundamentally threatens to destroy public confidence in the legal system.[5]

8. As noted above, the Trustee's investigation is continuing. However, due to the extremely troubling nature of these revelations and the inextricable relationship this matter has to

---

[4] *See Austin Trustees*, United States Bankruptcy Court | Western District of Texas, https://www.txwb.uscourts.gov/austin-trustees (last visited August 8, 2023).

[5] *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991) (affirming 5th Circuit Court of Appeal's sanction of attorney for bad faith conduct and explaining that federal courts have inherent power to investigate and redress fraud occurring before them and to maintain the integrity of the judicial system).

the Trustee Election and the continued administration of the Estate, the Trustee files this Motion in order to promptly inform the Court of these discoveries without delay and to request a status conference before the Court to discuss: (a) the Trustee's contemplated motion for show cause order and sanctions; (b) related discovery, scheduling, and coordination with other pending matters in, and administration of, the Bankruptcy Case; and (c) any other instruction the Court may have to ensure the timely resolution of this matter.

## II. BACKGROUND

9. On March 17, 2023 (the "Petition Date"), the Debtor commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 11, subchapter V, of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"). No official committee has been appointed in the Bankruptcy Case.

### A. The Conversion Order

10. On May 12, 2023, the Court entered its *Order Converting Case to Chapter 7* [Docket No. 89] ("Conversion Order"), converting the Bankruptcy Case to chapter 7, discharging the subchapter V trustee, and appointing the Trustee as the interim trustee to oversee the administration, operation, and management of the Debtor's Estate and its business.

11. Immediately following entry of the Conversion Order, Andrew Ryan posted a message on LinkedIn, promising to challenge the Court's decision:[6]

> We find ourselves in an unprecedented and challenging period for our company, for tech, our nation, and the world. I assure you that our investors and I have and are doing everything within our power to appeal the court's decision.

---

[6] Andrew Ryan, *Newchip Reveal Part I: Our Fight, Chapter 7 Liquidation, and The Long Road Ahead*, LinkedIn (May 12, 2023), https://www.linkedin.com/pulse/update-our-fight-chapter-7-liquidation-road-ahead-andrew-ryan.

12. Andrew Ryan did not "appeal the court's decision." Rather, on May 18, 2023, Thomas Dolezal ("Dolezal"), Matthew Kelly ("Kelly"), and Casey Melcher ("Melcher") filed a *Motion to Reconsider Order Converting Case to One Under Chapter 7* [Docket No. 104] (the "First Motion to Reconsider"). After the UST filed its Objection [Docket No. 114] to the First Motion to Reconsider, the movants withdrew their motion [Docket No. 115].

13. On May 26, 2023, Dolezal, Kelly, Melcher, and Hasan Ugur Koyluoglu, collectively represented by Stephen Sather of Barron & Newburger, P.C. (collectively, the "B&N Clients"), filed a further *Motion to Reconsider Order Converting Case to One Under Chapter 7* [Docket No. 119] (the "Second Motion to Reconsider"). As before, Andrew Ryan did not file any pleadings to "appeal the court's decision." Nevertheless, Andrew Ryan sent a message to shareholders regarding the Second Motion to Reconsider filed by the B&N Clients:

> **1. The re-hearing has been moved:** On May 26th, we filed a more developed motion for a rehearing with a longer timeline for discovery, following our initial rapid May 19th filing to just get it on the books (as we figured it'd take weeks when we filed the initial motion).
>
> Given normal precedent our attorney thought the initial hearing would be booked at least a 7-10 days out, but given our judge is brand new, i.e. we're one of his first cases ever in his career, he had an open schedule, and he scheduled us quicker than would have provided us time to even prepare.

14. On June 14, 2023, Stephen Sather (counsel for the B&N Clients) delivered to the Trustee's counsel a number of proposals and requests that he indicated might promote the B&N Clients' withdrawal of their serial motion. Copied to that proposal was Ron Satija (counsel for Andrew Ryan). After the Trustee and the UST each filed objections to the Second Motion to Reconsider [Docket Nos. 134 and 135], the B&N Clients again withdrew their motion [Docket No. 141].

B.     **Proofs of Claim Filed on June 16, 2023**

15.     On June 16, 2023, just prior to the scheduled, post-conversion meeting of creditors pursuant to section 341 of the Bankruptcy Code (the "341 Meeting"), three proofs of claim were filed:

- Proof of Claim No. 164, filed by Apex Funding Source, LLC ("Apex") and asserting an *unsecured* claim for $663,000.00 for "Sale of Future Receipts";

- Proof of Claim No. 165, filed by Iruka Capital Group, LLC ("Iruka") and asserting an *unsecured* claim for claim for $715,823.00 for "Future Receivables Sale and Purchase Agreement"; and

- Proof of Claim No. 166, filed by Shaila Patel and asserting an *unsecured* claim for $486,318.88 for "Money Loaned."

Apex and Iruka are represented in this case by the same counsel (S. Kaminski), and the Apex and Iruka Proofs of Claim both indicate that the respective obligations are personally guaranteed by both Andrew Ryan and Nihar Patel, two former principals and insiders of the Debtor. *See* Apex POC, Ex. 1 at pg. 12; Iruka POC, Ex. 1 at pg. 16. Upon information and belief, Shaila Patel is Nihar Patel's mother.

16.     As filed, the Apex, Iruka, and Shaila Patel Proofs of Claim would have represented three of the largest unsecured general unsecured claims against the Estate as of the date of the 341 Meeting. Critically, the Apex and Iruka Proofs of Claim, while asserting *unsecured* claims, were both filed with documentation plainly evidencing grants of security interests, as well as pre-petition U.C.C.-1 financing statements establishing perfection thereof. Additionally, in the Debtor's original bankruptcy schedules [Docket No. 36] (the "Schedules"): (a) Schedule D lists two *secured* creditors, Iruka and Apex (collectively, the "Secured Factoring Creditors"), both of which are marked "Disputed," *see* Schedule D at 2.1–2.2; and (b) Shaila Patel was not listed among the 201 scheduled unsecured creditors. *See generally* Schedule F at pgs. 14–65.

### C. The 341 Meeting

17. On June 16, 2023, the Trustee convened the 341 Meeting, during which a Trustee Election was requested solely by: (a) counsel for the B&N Clients; and (b) counsel for the Secured Factoring Creditors. The Trustee adjourned the 341 Meeting and continued it to July 28, 2023, to allow the UST to conduct the Trustee Election. *See Notice of Continued First Meeting of Creditors* [Docket No. 152].

18. Following the adjournment, Andrew Ryan posted a message regarding the 341 Meeting and the requested Trustee Election:

> During today's creditor hearing, it was evident that our legal rights were overlooked by a trustee who showed a lack of interest in our case.
>
> However, this has only further ignited our resolve to fight for what's right. We have a dedicated team of 3 attorneys representing myself, Nihar, and the investors on the case, and the presence of so many of you at the hearing today is testimony to your unwavering support. Thank you.
>
> This hearing only creditors were allowed so it's not that shareholders were left out, creditors just are the only ones that have any say bankruptcy, they have say over even myself - thankfully most of our major investors are creditors due to debt notes and rev share notes - and the creditors and counsel rightfully moved to elect a new trustee today.

This correspondence evidences Mr. Ryan's own admission that the Trustee Election has in fact been requested in order to advance the interests of shareholders.[7]

---

[7] Andrew Ryan does not have a proof of claim on file. Rather, the Debtor's Amended Schedules list Mr. Ryan as holding a 40.39% equity interest and as receiving over $280,000 in transfers from the Debtor within the year preceding the Petition Date (basis unspecified). *See* Amended Statement of Financial Affairs [Docket No. 209], Nos. 28, 30.1.

**TRUSTEE'S MOTION FOR STATUS CONFERENCE**　　　　　　　　　　　　　　　　　　Page 7

D. **The B&N Objection to the Gamma Consulting Application**

19. As evidenced above and further below, the B&N Clients have plainly coordinated their efforts and objectives in this case with Andrew Ryan. When the B&N Clients have requested to meet with the Trustee (including, but not limited to, requests and meetings to discuss marketing and liquidation of assets, their motion(s) for reconsideration, and requests for the Trustee's consent to ad hoc committees), they have consistently made such requests and attended such meetings with Mr. Ryan and his counsel.

20. On July 7, 2023, the Trustee filed his *Application to Employ Gamma Consulting, LLC to Provide Transition Consulting Services to and for the Estate* [Docket No. 159] (the "Hadzik Application"), pursuant to which the Trustee seeks to retain Gamma Consulting, LLC—whose principal is Kerstin Hadzik, the Debtor's former interim chief financial officer—to provide transition consulting services for the Estate.

21. On July 21, 2023, the B&N Clients filed their *Objection* [Docket No. 189] to the Hadzik Application (the "B&N Objection"), which is supported by several allegations regarding internal employee matters (none of the B&N Clients was an employee of the Debtor), but which are all made solely "on information and belief." Tellingly, the B&N Clients acknowledge that their "information and belief is based on statements made by Andrew Ryan," *see* B&N Objection at pg. 2 n.1, including a supporting exhibit comprised of an e-mail from Andrew Ryan to Ron Satija and Stephen Sather, *see* B&N Objection, Ex. B.

22. As further discussed below, this coordination and collusion also materially includes the Trustee Election.

E. **The Proposed Guaranty Agreement**

23. On May 25, 2023, CFT filed its proof of claim, assigned No. 110 in the Court's official claims register maintained for the Bankruptcy Case, asserting a general unsecured claim

for $1,580,557.94 ("CFT's Claim"). CFT's Claim is the largest general unsecured claim asserted against the Estate.

24. On the morning of July 24, 2023, counsel for the UST contacted the Trustee's counsel raising certain concerns identified in the UST's analysis of certain filed claims in connection with the requested Trustee Election.

25. During a discussion with CFT later that day, CFT informed the Trustee's counsel that it had been contacted by Messrs. Ryan and Satija regarding the upcoming Trustee Election. CFT requested a copy of the Debtor's original Schedules and the May 11, 2023 hearing transcript that resulted in the Conversion Order, and the Trustee provided the requested documents.

26. On July 26, 2023, CFT contacted the Trustee's counsel and informed the Trustee that it had recently received a proposed guaranty offer from Ron Satija (counsel for Andrew Ryan) in exchange for CFT's participation in the Trustee Election. The Trustee's counsel, accordingly, requested a copy of the communication from counsel for CFT, immediately informed the UST, and followed up with CFT to deliver the Trustee's written request and demand for same.

27. On July 27, 2023, CFT provided the Trustee's counsel with a redacted copy of the Satija Correspondence, including two attachments: (a) materials related to voting in the Trustee Election and (b) the Proposed Guaranty.[8]

28. In the Satija Correspondence, on July 26, 2023, Mr. Satija inquires whether the recipient "had a chance to look at the voting materials and the guarantee agreement (attached again for your convenience)" and expresses an interest in making sure that "Andrew gets paid!" *See* Satija Correspondence at pg. 2. The voting materials referenced in the e-mail are attached and

---

[8] The Trustee originally agreed to CFT's request to redact its name from the Satija Correspondence due to Andrew Ryan's apparent tendencies to attempt to intimidate witnesses, but pursuant to further discussions, CFT has now agreed to disclose the Satija Correspondence and Proposed Guaranty to the Trustee, without redaction, and with CFT's express authentication thereof. CFT is in the process of preparing these disclosures.

**TRUSTEE'S MOTION FOR STATUS CONFERENCE**     Page 9

include a Trustee Election Questionnaire and a Trustee Election Ballot disseminated by the UST, together with instructions on completing the documents in order to vote in the Trustee Election.

29. Under the terms of the *Personal Guarantee Agreement*, Andrew Ryan would personally guarantee "payment of all present and future indebtedness, obligations and liabilities of the [Debtor] to the [creditor]," expressly in exchange for CFT's vote in the Trustee Election for the specific candidate designated by Ryan:

> 3. <u>Consideration</u>: In consideration for this Guarantee, the Lender hereby agrees to vote for Melissa Haselden in the Chapter 7 Trustee election scheduled in the Bankruptcy. Further the Guarantee will only be effective if the Lender's vote is counted and Ms. Haselden is elected.

*See* Satija Correspondence at pg. 3.

30. It is not yet clear the extent to which any other creditors were offered the same personal guarantee by Andrew Ryan in exchange for their vote in the Trustee Election, but the placeholders in the *Personal Guarantee Agreement* for the creditor's "[Complete Address]" and "[Loan Agreement Date]" indicate that the agreement was prepared in a manner that promotes its convenient tailoring to and for other potential counterparties.

31. Counsel for the Trustee immediately provided the disclosures to the matter to the UST.[9]

---

[9] At this time, the Trustee also made corresponding referrals to the UST. *See* 18 U.S.C. § 152(6).

### F. The Trustee Election

32. At the continued 341 Meeting held on July 28, 2023, among those in attendance in-person at the meeting were counsel for the Trustee, Ron Satija (counsel for Andrew Ryan), and Andrew Ryan.[10]

33. In the first phase of the 341 Meeting, the UST went through each of the unsecured creditors listed on the Debtor's Amended Schedules, filed just the day before, to verify attendance and any related request to hold a Trustee Election. The B&N Clients, and in particular, Matt Kelly, declared that they held proxies for and from certain putative creditors and that they, on behalf of their putative proxy creditors, wished to request a trustee election.

34. For each of the unsecured creditors, the UST also asked if any parties had any objections to the eligibility of the creditor to participate in the election. With respect to the vast majority of the creditors who were not participating in the Trustee Election (or who did not agree to vote for Andrew Ryan's designee candidate), Mr. Ryan (despite the presence of his counsel) lodged all objections to the creditors' claims.

35. Prior to the Trustee Election voting phase, the UST allowed the Trustee's counsel to review a copy of a verified statement from the putative proxyholder group, which included a copy of a declaration from Casey Melcher (one of the B&N Clients) (the "Melcher Declaration"), and two mass e-mails sent to certain creditors and/or shareholders (the "Solicitation Communications"). A true and correct copy of the Melcher Declaration, including the Solicitation

---

[10] Notably, after the Trustee filed objections and limited objections to the claims filed by Iruka, Apex, and Shaila Patel, including for purposes of preventing them from falsely advancing unsecured claims for the purposes of requesting or participating in the Trustee Election, *see* Kaminski Claims Objection, Patel Claim Objection, despite having requested the election at the prior 341 Meeting and/or submitted documentation seeking to vote in the Trustee, none of these creditors appeared at or participated in the election.

**TRUSTEE'S MOTION FOR STATUS CONFERENCE**     Page 11

Communications, is attached hereto as **Exhibit "B"** and incorporated herein by reference for all purposes.

36. Notwithstanding the various issues of non-compliance present in the Melcher Declaration and underlying alleged grants of proxies,[11] the Solicitation Communications once again evidence that the Trustee Election has been orchestrated, led, and hijacked by Mr. Ryan in order to improperly advance the interests of shareholders over those of true creditors of the Estate and further evidence the systematic extent of Ryan's attempts to influence every aspect of the Bankruptcy Case by cajoling putative creditor and shareholder pawns into doing his bidding:

> Lastly, the estate keeps filing motions which require responses. This is burning through our legal fund which is essential. . . .
>
> In addition, our legal fund is nearly empty, and we need ~$10,000 of additional funds to get across the finish line for the upcoming election. If you want to contribute you can do so using any of the 4 below methods. Tom keeps detailed notes and documentation of who contributed and what was paid to our attorneys. Andrew has also offered to cover any legal contributions with anything he receives from the case (Tom can provide you with the document to sign with Andrew). Your contribution will be greatly appreciated and help us get a fair outcome.

*See* Ex. B at pg. 3.

37. During the final phase of the Trustee Election, the UST opened the floor for nominations and took votes. Stephen Sather (counsel for the B&N Clients) nominated Melissa Haselden, the same trustee candidate identified in the Proposed Guaranty, and Matt Kelly, on behalf of each of the creditors for which the B&N Clients allegedly held proxies, voted in favor of Ms. Haselden.

38. The UST has not yet filed his report of the disputed Trustee Election.

---

[11] The Trustee expressly reserves any and all objections with respect to Trustee Election, including the Solicitation Communications.

**TRUSTEE'S MOTION FOR STATUS CONFERENCE**  Page 12

### III. RELIEF REQUESTED

39. As set forth above, the Trustee's corresponding investigations into these matters remains continuing and is anticipated to involve substantial discovery requests and to ultimately lead to one or more requests by the Trustee for sanctions to compensate and provide redress to and for the Estate and its constituencies for the substantial damage and havoc wrought upon the Estate by Messrs. Ryan and Satija and any co-conspirators. Their systematic, fraudulent efforts to subvert and attempt to undo the practical effects of the Court's Conversion Order, to seize and usurp control of the Estate, and to interfere with and oppose the Trustee's administration by misusing and perverting the provisions of the Bankruptcy Code and disseminating misrepresentations and frivolous objections to stoke fear and confusion among the Estate's constituencies has resulted in great expense and delay, which damages the Trustee intends to assert and recover for the benefit of the Estate's constituencies.

40. Accordingly, in addition to providing to the Court and the Estate's constituencies notice of these matters without delay,[12] the Trustee believes that the Estate's corresponding investigation should be prosecuted and concluded as soon as reasonably possible and that this Court has the inherent authority to order whatever scheduling of its Docket the Court determines is appropriate under the particular circumstances.[13] Notwithstanding, the Trustee does not currently have a basis to request expedited consideration of this Motion.

---

[12] *See, e.g., Transcript of Hearing Held June 23, 2021, In re J.C. Penney Company, Inc.*, Case No. 20-20182-11 (Bankr. S.D. Tex.), pp. 17:15–19, 31:10–13 (THE COURT: "It bothers me that I didn't know about conversations going on with the U.S. Trustee. It bothers me that there wasn't perhaps more guidance . . . . I am bothered by . . . the lack of disclosure to me because, at the end of the day, I'm responsible. And I not only deserve to know, I am entitled to know.").

[13] *See, e.g., In re Hall*, 368 B.R. 595, 602 (Bankr. W.D. Tex. 2007) (recognizing "the Court's authority under 11 U.S.C. § 105 and its inherent power to control its own docket and sanction those whose actions inherently and consistently constitute an abuse of the bankruptcy court and the bankruptcy laws."); *see also* Order to Show Cause, *In re Ironside, LLC*, No. 20-34222 (Bankr. S.D. Tex. Feb. 8, 2022), ECF No. 155 (at status conference set five days after *Motion for Status Conference* was filed, entering show cause order against debtors).

---

41. As discussed above, the Trustee's continuing investigation inextricably relates to the fraudulently manufactured Trustee Election, while the continuation of that potential disputed election proceeding, if any, would fundamentally impede and impair the ongoing administration of the Estate. Currently, the UST's report of the disputed Trustee Election has not yet been filed, and under the established procedures implicated by section 702, no further Trustee Election proceedings would be implicated unless a motion seeking this Court's intervention is filed within fourteen (14) days following the UST's filing of its report. *See* Fed. R. Bankr. P. 2003(d). The Trustee does not know whether any party will seek to validate the Trustee Election given the obvious fraud pervading it.[14]

42. If no timely request for this Court's resolution of a disputed Trustee Election is made, then no such election proceedings would continue to interfere with the ongoing administration of the Estate.[15]

43. Accordingly, the Trustee requests to confer with the Court (and parties, on the record) regarding the extent to which the Court may determine that expedited discovery parameters and/or other procedures are warranted under the particular circumstances. Given the unusual and extraordinary nature of the matters raised in this Motion, the Trustee contemplates that the Court

---

[14] *Cf. In re Lupo*, No. 09-21945-JNF, 2011 WL 477856, at *3 (Bankr. D. Mass. Feb. 3, 2011) (holding that party was ineligible to be elected trustee where "she has 1) impugned the integrity of the bankruptcy process; 2) impugned the integrity and competence of the bankruptcy professionals involved in the case; 3) demonstrated a disregard for the orderly administration of the case by filing numerous duplicative and frivolous pleadings, which establish ignorance of the law and the practicalities inherent in the administration of a Chapter 7 bankruptcy case; 4) caused unnecessary expense to the estate; and 5) caused needless delay because of the necessity of parties in interest to respond to her numerous filings.").

[15] For the avoidance of doubt, due to the material damage already incurred by the Estate as a result of the extremely pernicious conduct committed by Messrs. Ryan and Satija and any co-conspirators, the Trustee intends to zealously prosecute the Estate's corresponding investigation and rights to corresponding relief irrespective of whether any request is timely filed to resolve the disputed Trustee Election (unless this Court expressly orders otherwise).

may have particular admonitions as to the completion of this investigation and potential related procedures.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court enter an order: (a) granting this Motion; (b) setting a status conference to address (i) potential motions for show cause orders and/or sanctions, and (ii) discovery and/or scheduling orders, and any other matters addressed by the Court; and (c) granting him such other and further relief to which he may be justly entitled.

RESPECTFULLY SUBMITTED this 8th day of August, 2023.

By: */s/ Jay H. Ong*
    Jay H. Ong
    Texas Bar No. 24028756
    Thanhan Nguyen
    Texas Bar No. 24118479
    MUNSCH HARDT KOPF & HARR, P.C.
    1717 West 6th Street, Suite 250
    Austin, Texas 78703
    Telephone: (512) 391-6100
    Facsimile: (512) 391-6149
    Email: jong@munsch.com
           anguyen@munsch.com

***Counsel for Randolph N. Osherow, Chapter 7 Trustee***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on August 8, 2023, he personally caused true and correct copies of the foregoing pleading, together with all exhibits thereto, to be served by electronically filing it with the Court using the Court's CM/ECF system, which sent notification to the parties receiving same through such system.

Additionally, as expressly authorized by the Court and by his signature below, the undersigned hereby certifies that, on August 8, 2023, he personally caused to be served a true and correct copy of the foregoing pleading, together with all exhibits thereto, via e-mail transmission upon the parties listed in the sealed matrix on file with the Court.

Additionally, the undersigned hereby certifies that, on August 8, 2023, he personally caused true and correct copies of the foregoing pleading, together with all exhibits thereto, to be served via first class U.S. mail on the following parties:

| | |
|---|---|
| Ron Satija<br>Hayward PLLC<br>7600 Burnet Road, Suite 530<br>Austin, TX 78757<br><br>*Counsel for Andrew Ryan* | Stephen W. Sather<br>Barron & Newburger, PC<br>7320 N MoPac Expy, Suite 400<br>Austin, TX 78731<br><br>*Counsel for Thomas Dolezal, Matthew Kelly, Casey Melcher, and Hasan Ugur Koyluoglu* |
| Stacy Dasaro<br>Goodwin Procter LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br><br>*Counsel for CFT Clear Finance Technology Corp.* | Melissa A. Haselden<br>Haselden Farrow PLLC<br>700 Milam St Ste 1300<br>Houston, TX 77002-2736 |

By: */s/ Thanhan Nguyen*
Thanhan Nguyen, Esq.