**UNITED STATES DEPARTMENT OF JUSTICE**
**OFFICE OF THE UNITED STATES TRUSTEE**
**KEVIN M. EPSTEIN**
**UNITED STATES TRUSTEE**
**GARY WRIGHT**
**ASSISTANT UNITED STATES TRUSTEE**
**SHANE P. TOBIN**
**TRIAL ATTORNEY**
**903 SAN JACINTO BLVD., ROOM 230**
**AUSTIN, TX 78701**
**Telephone: (512) 916-5348**
**Fax: (512) 916-5331**

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ASTRALABS, INC., | § | CASE NO. 23-10164-SMR |
| | § | |
| Debtor(s) | § | CHAPTER 7 |

## UNITED STATES TRUSTEE'S REPORT OF A DISPUTED ELECTION OF TRUSTEE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2003

> **Please Take Notice: Federal Rule of Bankruptcy Procedure 2003(d)(2) states that "[u]nless a motion for the resolution of the dispute is filed no later than 14 days after the United States trustee files a report of a disputed election for trustee, the interim trustee shall serve as trustee in the case."**

TO THE HONORABLE SHAD M. ROBINSON,
UNITED STATES BANKRUPTCY JUDGE:

KEVIN M. EPSTEIN, THE UNITED STATES TRUSTEE for Region 7 (United States

Trustee), files this Report of a Disputed Election of Trustee Pursuant to Federal Rule of Bankruptcy

Procedure 2003 (the Election Report).[1] In support hereof, the United States Trustee respectfully

---

[1] Hereinafter, all references to "FRBP" are to the Federal Rules of Bankruptcy Procedure. All references to "Section" or "§" are to provisions of the Bankruptcy Code, 11 U.S.C. section 101 *et. seq.*, unless otherwise indicated.

1

reports as follows:

## I.    **<u>INTRODUCTION</u>**

The United States Trustee must report to the Court the status of any election of a chapter 7 trustee at a meeting of creditors, whether that election is disputed or not. *See* FRBP 2003(d). At the adjourned meeting of creditors presided over by the United States Trustee on July 28, 2023, an election was requested and held for a chapter 7 trustee in this case.[2] However, as described further herein, that election is disputed in at least the following ways: (1) the request for the election itself is disputed because multiple objections were asserted to proxy voting status and those proxy issues must be resolved if the election is to be confirmed; (2) there are unresolved allegations that one or more creditors' votes in the election may have been improperly solicited through financial promises; and (3) multiple objections have been filed to creditors' claims, which objections bear upon voting eligibility.

The United States Trustee has serious concerns about the integrity of the election process, as further detailed herein, in light of the allegations which have arisen that at least one or more creditors were offered a promise of future financial undertaking in exchange for that creditor's vote for a particular trustee candidate. *See e.g*., Trustee's Motion for Status Conference, *generally*, filed at ECF No. 242. The United States Trustee takes the allegations seriously and intends to seek further information through informal discovery or pursuant to Federal Rule of Bankruptcy Procedure 2004, as necessary or appropriate. As a result, the United States Trustee reserves all

---

[2] The United States Trustee requested a formal transcript of the meeting of creditors and will supplement the record if requested following receipt of such transcript.

rights to supplement this Election Report for the Court's benefit in resolving the disputed election if it must do so and reserves the right to take any further action the United States Trustee deems necessary in the exercise of his statutory responsibilities, including any actions relating to the Trustee's Motion for Status Conference.

Pending the resolution of these disputes, the interim trustee shall continue to serve in this case, and, unless a motion for resolution of this election dispute is made within fourteen (14) days after this report is filed, the interim trustee shall serve as the trustee in the case. *See* FRBP 2003(d).[3]

## II.   FACTUAL BACKGROUND

1.      Astralabs, Inc. (the Debtor), filed a voluntary petition under subchapter V of chapter 11 of the Bankruptcy Code on March 17, 2023. ECF No. 1.[4]

2.      The Court entered an order converting the case to a chapter 7 case on May 12, 2023. ECF No. 89.

3.      Randolph N. Osherow was appointed as the interim trustee under § 701(a)(1) (the Interim Trustee).

4.      A Notice of Chapter 7 Bankruptcy Case was sent to all creditors on May 12, 2023, notifying them a meeting of creditors (the 341 Meeting) would be held on June 16, 2023. ECF No. 90.

---

[3] The United States Trustee is prohibited from resolving election disputes. Rather, to the extent disputes arise in the voting process, the United States Trustee goes forward in holding the election but then reports back to the Court the status of the election and the disputes, if any, which exist with respect to the election. *See* FRBP 2003; *see also* United States Trustee Manual, Vol. 2, Chapter 7 Case Administration, pp. 11-15.

[4] References to "ECF" refer to the Court's Electronic Case Filing system docket entries for this case, unless another case is identified by separate case number.

5.      At the June 16, 2023, 341 Meeting, certain creditors and parties in interest informed the Interim Trustee they were requesting a trustee election under 11 U.S.C. § 702. The Interim Trustee adjourned the 341 Meeting to August 11, 2023, and informed the United States Trustee that creditors requested a trustee election.

6.      On July 5, 2023, several creditors, after discussions with the Interim Trustee, United States Trustee, and other parties-in-interest, filed a Notice of 341 Meeting Reset to July 28, 2023, for the purpose of conducting a chapter 7 trustee election, and served such document on all parties who had filed a notice of appearance in this case and all creditors on the mailing matrix. ECF No. 152.

7.      On July 28, 2023, the undersigned, representing the United States Trustee, presided over the trustee election at the 341 Meeting and adjourned the meeting to September 1, 2023.

8.      At the trustee election, 72 parties requested an election. ***See* Exhibit 1**. Melissa A. Haselden received 73 out of the 81 votes, totaling $2,188,680.56 of the $2,229,812.54 of the Amended Schedule E/F amount and $6,037,656.94 of the $6,280,788.92 of the filed claims that voted. ***See* Exhibit 2**. However, the vote is subject to a dispute as set forth herein.

### A.      The Debtor's Schedules and Proofs of Claim[5]

9.      The Debtor filed its Amended Schedules and Amended Statement of Financial Affairs on July 27, 2023, which report $24,240,383.63 in total general unsecured claims. ECF No.

---

[5] The United States Trustee requests that the Court take judicial notice of the Debtor's Schedules, Statement of Financial Affairs, and other documents filed therewith, and any amendments thereto which are in the Court's file in this case pursuant to Fed. R. Evid. 201, as made applicable by FRBP 9017. The information contained in these documents, signed under penalty of perjury, are admissions pursuant to Fed. R. Evid. 801(d). The United States Trustee also requests the Court to take judicial notice of the claims register and claims filed in this case.

209, p. 135, line 5b. Of these claims, claims totaling $22,659,825.69 were not listed as contingent, unliquidated, or disputed. *See* ECF No. 209, pp. 15-133. The only claim listed as disputed was Claim 3.102, CFT Clear Finance Technology Corp. in the amount of $1,580,557.94. *Id.* at p. 41.

10.      On July 28, 2023, immediately prior to the voting in the trustee election, the ECF claims register showed 427 proofs of claim (filed claims)[6] with a total of $31,355,634.66 in general unsecured claims.[7] The claims register potentially does not reflect all claims filed as of that date as some may not have been uploaded by the clerk of court until a later date.

11.      The deadline for non-governmental creditors to file claims in the chapter 11 case was May 26, 2023. ECF No. 3. The deadline for governmental units to file claims was September 13, 2023. If the Debtor scheduled a creditor's claim as undisputed, noncontingent, or liquidated, that constituted prima facie evidence of the validity and amount of the claim, and those creditors were not required to file claims in the chapter 11 case. FRBP 3003(b)(1).

12.      In the chapter 7 case, the Court set the claims deadline as August 25, 2023. ECF No. 106. In a chapter 7 case, FRBP 3003(b)(1) does not apply. Therefore, creditors must file claims to be allowed, even if listed as undisputed, noncontingent, or liquidated. Proofs of claim filed in the chapter 11 case are deemed filed in the chapter 7 case. FRBP 1019.

13.      Attached as **Exhibit 3** is a chart listing all the creditors on Amended Schedule E/F and the scheduled amount of unsecured debt for each creditor. **Exhibit 3** also includes the filed claim number and claim amount for each creditor listed on Amended Schedule E/F and for each

---

[6] Hereinafter, references to a proof of claim will be referred to as a filed claim or filed claims.

[7] Although filed on July 28, 2023, claim number 429 was not filed prior to voting in the trustee election and is not included in the calculation of unsecured claims. Additionally, there is no claim 275 on the claims register.

additional creditor that filed a claim but was not listed on Amended Schedule E/F. Accordingly, **Exhibit 3** lists all the creditors that the United States Trustee is aware of that might have been eligible to vote at the trustee election on July 28, 2023.[8] The total amount of filed claims on **Exhibit 3** is $33,040,596.60, however this amount may include claims that are entitled to a priority claim for the entirety or a portion of the filed claim.

## III.    APPLICABLE STATUTES AND RULES

14.    Section 702 governs requests to elect a trustee and states that:

(a) A creditor may vote for a candidate for trustee only if such creditor –

(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under sections 726(a)(2), 726(a)(3), 726(a)(4), 752(a),766(h), or 766(i) of this title;

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

(b) At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held creditors that may vote under subsection (a) of this section.

(c) A candidate for trustee is elected trustee if –

(1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and

(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subjection (a)(1) of this section that are held by creditors that vote for a trustee.

---

[8] Exhibit 3 also indicates whether any party in interest disputed the creditor's eligibility to vote and each exhibit on which the creditor appears due to the dispute.

15.     Creditors may vote only if they 1) hold allowable, undisputed, fixed, liquidated, and unsecured claims; 2) do not have interests materially adverse (other than an unsubstantial equity interest) in relation to the interest of creditors entitled to such a distribution; and 3) are not insiders. 11 U.S.C. § 702(a). FRBP 2003(b)(3) provides additional guidance on who may vote, "[i]n a chapter 7 liquidation case, a creditor is entitled to vote at a meeting if, at or before the meeting, the creditor has filed a proof of claim or a writing setting forth facts evidencing a right to vote pursuant to § 702(a) of the Code unless objection is made to the claim or the proof of claim is insufficient on its face."

16.     A creditor may not vote in an election under § 702(a) if an objection has been made to that claim or if the filed claim is insufficient on its face. FRBP 2003(b)(3); *see also In re DB Drilling, Inc.*, 73 B.R. 953, 955 (Bankr. N.D. Tex. 1987) (citing *In re Flexible Conveyer Co.*, 156 F. Supp. 164 (N.D. Ohio 1975)). The objection need not be written. Because claims are often not filed or presented until the meeting of creditors, a written objection may not be necessary for the claim to be deemed disputed, provided an oral objection is made to the claim at the meeting prior to voting. *See, e.g.*, *In re Sforza*, 174 B.R. 656, 658 (Bankr. D. Mass. 1994) (holding that debtor's attorney's statement at meeting of creditors that creditor's claim was subject to counterclaim in state court litigation rendered claim disputed for voting purposes).

17.     Creditors holding claims materially adverse to the interests of creditors entitled to such distribution may not vote in an election. 11 U.S.C. § 702(a)(3). Materially adverse interests may include a set off claim or a substantial equity interest. *See In re Lang Cartage Corp.*, 20 B.R. 534, 536 (Bankr. E.D. Wis. 1982) (creditors ineligible after receiving a voidable preferential

transfer); *In re Qmect, Inc.*, No. 04–41044, 2007 WL 219942 *7-8 (Bankr. N.D. Cal. Jan. 25, 2007) (holder of substantial equity interest in relation to holder's creditor interest may not vote).

18.     A proof of claim may be insufficient on its face if it is not in substantial compliance with the Official Bankruptcy Forms. *See* FRBP 3001(a); *In re DB Drilling, Inc.*, 73 B.R. at 955. Instruction 7 for Official Form 10 provides that a creditor filing a proof of claim must provide "redacted copies documenting the existence of the debt and of any lien securing the debt."

19.     The Court may not fix or estimate claims for the purposes of voting. In *In re Centennial Textiles*, that court held that bankruptcy courts no longer have the authority to estimate claims for the purpose of electing a trustee based on the repeal of FRBP 2003(b)(3). 209 B.R. 31, 33 (Bankr. S.D. N.Y. 1997); *see also In re San Diego Symphony Orchestra Assoc.*, 201 B.R. 978, 981 (Bankr. S.D. Ca. 1996) (as to the extent that the prior version of FRBP 2003(b) granted temporary authority to allow claims (as distinct from appearing to do so in derogation of the controlling statute), that authority was withdrawn by amendment).

20.     FRBP 2003(b)(3) further provides, "[i]n the event of an objection to the amount or allowability of a claim for the purpose of voting, unless the court orders otherwise, the United States trustee shall tabulate the votes for each alternative presented by the dispute and, if resolution of such dispute is necessary to determine the result of the election, the tabulations for each alternative shall be reported to the court."

21.     FRBP 2003(d) provides that if an election is disputed:

> [T]he United States trustee shall promptly file a report stating that the election is disputed, informing the court of the nature of the dispute, and listing the name and address of any candidate elected under any alternative presented by the dispute. No later than the date on which the report is filed, the United States trustee shall mail a

copy of the report to any party in interest that has made a request to receive a copy of the report. Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. Unless a motion for the resolution of the dispute is filed no later than 14 days after the United States trustee files a report of a disputed election for trustee, the interim trustee shall serve as trustee in the case.

22.    FRBP 2006 governs proxies, the ability of someone to vote the creditor's claim other than the creditor itself. FRBP 2006(b)(1) defines proxy as a "written power of attorney authorizing any entity to vote the claim or otherwise act as the owner's attorney in fact in connection with the administration of the estate." FRBP 9010(c) provides:

> The authority of any agent, attorney in fact, or proxy to represent a creditor for any purpose other than the execution and filing of a proof of claim or the acceptance or rejection of a plan shall be evidenced by a power of attorney conforming substantially to the appropriate Official Form. The execution of any such power of attorney shall be acknowledged before one of the officers enumerated in 28 U.S.C. § 459, § 953, Rule 9012, or a person authorized to administer oaths under the laws of the state where the oath is administered.

The Official Forms referenced in FRBP 9010 are Official Form 411A or Form 411B.

23.    FRBP 2006 further specifies what constitutes authorized solicitation of a proxy. Specifically, a proxy may be solicited only in writing, and only by a creditor holding an allowable unsecured claim against the estate on the date of the filing of the petition. FRBP 2006(c). Any holder of two or more proxies must file and transmit to the United States Trustee a verified list of the proxies to be voted and a verified statement discussing the facts and circumstances surrounding the execution and delivery of each proxy before the voting commences at the meeting of creditors, or at any other time as the court may direct. FRBP 2006(e).

24.     However, the solicitation rules do not apply to communications between attorneys and a regular client who owns a claim form. FRBP 2006(b)(2). Therefore, attorneys representing their clients at an election need only have a proper proxy and do not need to show the solicitation was authorized. *See id.*

## IV.     THE REPORT OF DISPUTED ELECTION

25.     In this case, the trustee election is disputed for three reasons: (1) eligibility of creditors to request an election is unresolved; (2) allegations of impropriety regarding voting have arisen; and (3) the extent to which certain creditors are eligible to vote is unresolved as a result of claim objections. If requested by a party within fourteen days, the Court must resolve the dispute.

26.     Section 702 provides the statutory basis for the election of a trustee in a chapter 7 case. An election consists of two parts. First, an election must be requested by creditors eligible to vote that hold at least 20% in amount of the claims of all those creditors that are eligible to vote. 11 U.S.C. § 702(c). Second, if at least 20% of those eligible to vote do vote, then the candidate receiving most votes is elected trustee. *Id.*

27.     Because there are votes by proxy that appear improper and because the amount of allowable, undisputed, fixed, liquidated, unsecured claims is in dispute and, thus, it is unclear whether 20% of eligible creditors requested an election and voted, the United States Trustee files this Election Report.

28.     The eligibility of those casting the votes, the validity of the proxy solicitation, and the integrity of the election process are in question for a number of reasons, including, but not limited to, documents indicating Andrew Ryan (Ryan), the Debtor's former Chief Executive Officer and primary stakeholder, either directly or through a third party, offered personal

guarantees and to repay funds contributed to a legal fund by creditors that voted for the candidate chosen by Ryan. The Court, not the United States Trustee, determines whether the tests within § 702(b)(1) and (2) are met if requested to settle a disputed election.

### A.    Attendance at the Meeting

29.    On Friday, July 28, 2023, the United States Trustee conducted the trustee election pursuant to § 702 and FRBP 2003(b)(3).

30.    The undersigned, a trial attorney for the United States Trustee, presided over the meeting. Gary Wright, the Assistant United States Trustee for the Austin, Texas office of the United States Trustee, was also present.

31.    The Interim Trustee was personally present for the beginning of the meeting. Jay Ong and Thanhan Nguyen of Munsch Hardt Kopf & Harr, P.C., attorneys for the Interim Trustee, appeared and participated in the meeting.

32.    The following parties, creditors, or their representative appeared and participated in the meeting:

a.    Nihar Patel appeared as the debtor representative.

b.    Attorney Stephanie Vera appeared as counsel for Debtor.

c.    Attorney Ron Satija appeared on behalf of his clients Nihar Patel and Ryan.

d.    Ryan also appeared and participated in the meeting.

e.    Attorney Stephen Sather appeared on behalf of clients Thomas Dolezal, Matthew Kelly, Hasan Ugur Koyluoglu, and Casey Melcher (Proxy Creditors). Although noting that he was attorney for these creditors, Mr. Sather also provided a power of attorney to vote on his client's behalf.

33.     In addition to the parties listed in paragraph 24, the creditors listed on **Exhibit 2** appeared and participated in the meeting, either on behalf of themselves or through a proxy.

**B.      The Proxy Agreements**

34.     Prior to the 341 Meeting, the United States Trustee received 49 special powers of attorney on behalf of creditors authorizing Thomas Dolezal, Matt Kelly, Casey Melcher, Hasan Ugur Koyluoglu, and Jason Frick to attend the 341 Meeting and vote on creditors' behalf. The United States Trustee also received a statement under FRBP 2006(e) from Casey Melcher (Melcher Declaration). The Melcher Declaration and 49 special powers of attorney are attached as **Exhibit 4**.

35.     The United States Trustee notes the following potential issues with the proxies, the Melcher Declaration, and the solicitation process:

a.   The Interim Trustee objected to the power of attorneys authorizing multiple entities to vote on the creditors' behalf. Mr. Sather, on behalf of the Proxy Creditors, objected to the Interim Trustee's standing to dispute or object to creditors' eligibility to vote under § 702 at the 341 Meeting.

b.   The Interim Trustee objected to Matthew Kelly serving as proxy because his original claim at claim # 45 indicated he was a secured creditor and therefore could not properly solicit a proxy under FRBP 2006. The Interim Trustee noted that Kelly amended his claim prior to the 341 Meeting to indicate he was an unsecured creditor. The Interim Trustee reserved his rights to object to the proxy if Kelly is in fact a secured creditor.

c.   The Interim Trustee disputed the eligibility of the unsecured claims of Thomas Dolezal, Matt Kelly, Casey Melcher, Hasan Ugur Koyluoglu, and Jason Frick to vote under § 702(a) for multiple reasons, including that each received a preferential payment voidable under § 547 and their prepetition contracts provide them with a priority right over general unsecured creditors. To the extent the Court sustains the Interim Trustee's objections, these creditors may not be eligible to solicit proxies under FRBP 2006.

d.  The Melcher Declaration does not comply with the requirements of FRBP 2006(e). The rule requires that the holder of two or more proxies file and transmit a verified list and verified statement to the United States Trustee. The Melcher Declaration was never filed, and parties in interest, other than the United States Trustee, were not provided notice of the proxies prior to the 341 Meeting as contemplated by the rule. Only Melcher, one of the five entities authorized to attend the 341 Meeting and vote on the creditors' behalf in the trustee election, submitted the statement and list required by FRBP 2006(e). The entity that ultimately voted on the creditors' behalf, Matthew Kelly, did not submit the statement and list. If the Court finds that the Melcher Declaration does not comply with the rules, or the proposed proxy entities did not properly submit the required statement or list, then the proxy is invalid, and the votes made via proxy are not proper under the applicable rules and should not be counted.

e.  The Melcher Declaration does not completely and accurately state the pertinent facts and circumstances in connection with the execution and delivery of each proxy as required under FRBP 2006(e). FRBP 2006(e)(3)-(6) requires every holder of two or more proxies to include in the verified statement that no consideration has been paid or promised for the proxy. In the Melcher Declaration, Melcher declares that no consideration has been paid or promised by the proxyholders to the proxies. Melcher Declaration, ¶ 6. Mr. Melcher also declares that there is not any agreement between the proxyholders and any other entity for the payment of any consideration in connection with voting the proxy. Melcher Declaration, ¶ 7. However, on Exhibit B attached to the Melcher Declaration, Melcher had emailed the following to creditors to solicit their proxy:

> In addition, our legal fund is nearly empty, and we need ~$10,000 of additional funds to get across the finish line for the upcoming election. If you want to contribute you can do so using any of the 4 below methods. Tom keeps detailed notes and documentation of who contributed and what was paid to our attorneys. Andrew has also offered to cover any legal contributions with anything he receives from the case (Tom can provide you with the document to sign with Andrew). Your contribution will be greatly appreciated and help us get a fair outcome.

f.  While Melcher's language does not specifically state that Andrew (upon information and belief, Ryan), will repay the legal contributions if the creditors provide the proxy, the language regarding Ryan's offer to cover contributions out of funds he receives from the case could be interpreted as an offer of consideration and it could be implied that Ryan will only be paid if the trustee election "gets across the finish line" and the creditors' proposed trustee is elected. It is not known what document(s) the creditors may have executed with Ryan or in connection with the proxy solicitation, or whether these creditors have other contracts with Ryan for previously contributing to the legal fund. To the extent the Court finds that the Melcher Declaration does not comply with FRBP 2006(e), the Court may reject any proxy for cause, vacate any order entered in consequence of the voting of any proxy

13

which should have been rejected, or take any other appropriate action. FRBP 2006(f).

**C.     Ryan's Personal Guaranty Offer**

36.     The United States Trustee received information from the Interim Trustee on July 26, 2023, that counsel for Ryan provided at least one creditor, CFT Clear Finance Technology Corp., with a proposed guaranty of payment of their claim(s) in full by Ryan in exchange for CFT Clear Finance Technology Corp. voting for Ms. Haselden in the Chapter 7 trustee election and provided Ms. Haselden was elected. A copy of the email and the proposed guaranty agreement is attached as **Exhibit 5**.[9] Upon information and belief, CFT Clear Finance Technology Corp. never executed the personal guaranty. The Debtor listed CFT Clear Finance Technology Corp.'s claim as disputed on the Amended Schedule E/F filed July 27, 2023. CFT Clear Finance Technology Corp. did not appear at the 341 Meeting, did not return the Trustee Questionnaire or Ballot to the United States Trustee, and did not attempt to vote. At the 341 Meeting, for each creditor that appeared, including those who appeared via a proposed proxy, counsel for the United States Trustee asked whether any party had made them any offer in return for supporting their candidate for trustee. All answers received were in the negative, however the United States Trustee notes that the proposed proxy responded on behalf of the creditors for which he was serving as proxy, and not the creditors themselves, most of whom were not in attendance at the 341 Meeting.

**D.     Request to Have an Election**

37.     If requested to resolve this controversy, the Court must first resolve the issue as to

---

[9] The creditor redacted the document prior to providing it to the Interim Trustee's counsel. According to the Interim Trustee, he sent a request for documents under FRBP 2004. The creditor indicated to the United States Trustee that it will provide an unredacted copy and authenticate it soon, but the United States Trustee has not received a copy prior to filing this report.

whether the election was properly requested under § 702(b). To determine whether the election was properly requested, the Court must determine: (a) whether the creditors who requested the election were eligible to do so under § 702(a)(2); and (b) whether those creditors who are eligible to request an election hold at least 20% of the amount of claims held by creditors who are eligible to vote under § 702(a)(2). If the court determines that the election was not properly requested, the analysis ends there. However, should the court determine that the election was properly requested, it then must next resolve whether the creditors voting in the election were eligible to vote and if the claims voted are at least 20% of all claims held by creditors eligible to vote. In calculating the universe of claims eligible to vote in a trustee election and the 20% threshold, the Court must determine the eligibility of creditors not only requesting the election, but also those creditors who either merely voted or did not participate at all. Thus, the disputes arising from this election overlap.

38.    The 72 parties listed on **Exhibit 1** requested an election. Forty-two (42) of the 72 appeared on behalf of themselves, the other 30 were represented by Matthew Kelly as their proxy.[10] *See* **Exhibit 1**. The filed claims of the 72 creditors requesting an election total $6,037,656.94. The scheduled amount of the 72 creditors requesting an election on Amended Schedule E/F total $2,181,180.56. The Court must determine whether these 72 creditors are eligible to request an election. The Court must then determine whether the eligible creditors that requested an election hold at least 20% of the amount of claims held by creditors who are eligible to vote under § 702(a).

---

[10] Matthew Kelly requested an election on behalf of the 30 creditors listed on Exhibit 1. Two of the 30 parties represented by Matthew Kelly as their proxy, Nicholas J. Hickox and Jason Kahle, voted for Melissa A. Haselden on behalf of themselves during the election.

39.    In determining whether 20% of the eligible creditors requested an election, the Court must determine 1) the amount of claims held by eligible creditors requesting an election (the numerator); and 2) the amount of total claims eligible to vote (the denominator). The facts relevant to determining creditor eligibility are summarized as follows:

40.    **The Numerator:** The first step is determining the amount of claims held by eligible creditors requesting an election. This number is the amount of claims of eligible creditors who appeared at the 341 Meeting and requested an election. The issues regarding the numerator are summarized as follows:[11]

a.  Parties in interest objected to the six creditors listed on **Exhibit 6** as potential insiders. Insiders are not eligible to vote. 11 U.S.C. § 702(a). The filed claims of these creditors total $3,965,756.20. The scheduled amount of these six claims on Amended Schedule E/F total $114,492.10.

b.  Parties in interest objected to the five creditors' claims listed on **Exhibit 7** on the basis that their filed claims lack supporting documentation and, therefore, are not in substantial compliance with the Official Bankruptcy Forms. If the filed claims are not in compliance with the Official Forms, then the claims are insufficient, and these creditors were not eligible to vote. The filed claims of these five creditors total $79,803.84. The scheduled amount of these five creditors' claims on Amended Schedule E/F total $79,803.84.

c.  The Interim Trustee objected to the 47 claims listed on **Exhibit 8** on the grounds that the creditors were the recipients of a voidable preferential transfer and therefore hold claims that are materially adverse to the interests of creditors and may not vote in an election. The filed claims for these 47 creditors total $1,557,389.38. The scheduled amount of these 47 creditors on Amended Schedule E/F total $1,564,477.10.

---

[11] Parties in interest objected to creditors' eligibility to vote on multiple grounds. Many creditors are included on several exhibits and the amounts listed below will add up to more than the total claimed amount for the 72 creditors. Additionally, the issues listed in this report regarding both the numerator and denominator are objections raised by parties prior to or at the 341 Meeting. The United States Trustee notes that some of the proofs of claim may also have issues such as postpetition interest, are claims for unauthorized postpetition financing, or include the same objectionable issues other parties noted for other claims but failed to object to all similar claims.

d.  The Interim Trustee objected to the 50 creditors listed on **Exhibit 9** on the grounds that the creditors' contract provided them with a priority over the general unsecured creditors and therefore may hold claims that are materially adverse to the interests of creditors and may not vote. The filed claims of these 50 creditors total $1,743,932.13. The scheduled amount of these 50 creditors on Amended Schedule E/F total $1,751,019.85.

e.  The Interim Trustee and/or Mr. Sather on behalf of the Proxy Creditors objected to the claims of the 14 creditors listed on **Exhibit 10** on the grounds that the claims were for postpetition services or agreements and, therefore, have either an administrative expense or an invalid claim and may not vote in the election. The filed claims of these 14 creditors total $4,212,425.98. The scheduled amount of these 14 creditors on Amended Schedule E/F total $361,161.88.

f.  The Interim Trustee objected to the six creditors listed on **Exhibit 11** on the grounds that the creditors have a revenue sharing agreement and therefore may hold claims that are materially adverse to the interests of creditors and may not vote. The filed claims of these six creditors total $66,691.88. The scheduled amount of these six creditors on Amended Schedule E/F total $66,691.88.

g.  The Interim Trustee objected to the two creditors listed on **Exhibit 12** on the grounds that the filed claims are duplicative of another claim and therefore should not be counted twice if determined to be eligible to vote. The filed claims of these two creditors total $31,126.92. The scheduled amount of these two creditors on Amended Schedule E/F total $31,126.92.

h.  The 30 creditors listed on **Exhibit 13** were represented by a proxy, Matthew Kelly, who voted on their behalf. For the reasons stated above, it may still be the case that their votes do not count because they did not vote themselves and their proxy had no proper proxy to vote for them. The filed claims of these 30 creditors total $1,098,795.52. The scheduled amount of these 30 creditors on Amended Schedule E/F total $1,098,795.52.

i.  The Interim Trustee objected to the eligibility of Matthew and Xin Geng Kelly because their proof of claim filed at 45 indicated that the Kellys were a secured creditor. The Kellys amended the claim at claim # 45-2 to indicate they are an unsecured creditor. To the extent the Kellys hold a secured claim, they would not be eligible to vote. The Kellys' amended claim amount is $103,832.09. The Kellys' scheduled amount on Amended Schedule E/F is $103,832.09.

41. The three creditors listed on **Exhibit 14** were not objected to or disputed by any party before or during the election. The filed claims of these three creditors total $46,050. The scheduled amount of these three creditors' claims on Amended Schedule E/F total $41,250.

42. **The Denominator:** To determine the amount of total claims eligible to vote, the Court must determine the total amount of claims of all creditors eligible to vote out of the 501 potential claims between Amended Schedule E/F and the filed proofs of claim. The United States Trustee notes that in determining the denominator, courts have looked to three different approaches. One approach is to look at the schedules, another is to look at the proofs of claim, and a third is to look at the proofs of claim supplemented by the schedules. *See In re Barkany*, 542 B.R. 662 (Bankr. E.D.N.Y. 2015) (compiling cases).

43. The Debtor asserts in its Amended Schedules that it has $22,659,825.69 in allowable, undisputed, fixed, liquidated, unsecured claims. Mr. Patel, Debtor's representative at the 341 Meeting, testified that he believed the Amended Schedules required additional amendments, primarily regarding the creditors listed on Amended Schedule E/F.

44. Prior to the vote at the trustee election, creditors filed proofs of claim asserting unsecured claims totaling $31,355,634.66, although the claims that are liquidated, fixed, and undisputed is not determined.

45. Of the 501 claims filed and/or scheduled on the Amended Schedules as of the vote in the trustee election, parties objected to or disputed the eligibility to vote of 389 of the claims. *See* **Exhibit 15.** Of those 389 creditors, 386 creditors filed proofs of claim that total $32,093,036.52. *Id.* Of the 389 creditors, 380 creditors had scheduled claims on Amended Schedule E/F totaling $23,270,125.94. *Id.*

46.     Parties did not object to or dispute the eligibility to vote either prior to or at the 341 Meeting of 112 of the filed claims. *See* **Exhibit 16.** The filed claims of these 112 creditors total $947,560.08. *Id.* The scheduled amount of the 112 creditors on Amended Schedule E/F total $970,257.69. *Id.*

47.     The issues regarding the denominator are summarized as follows:[12]

a.  Parties in interest objected to the 67 creditors' claims listed on **Exhibit 17** on the grounds that the failed to file a proof of claim prior to the trustee election vote and therefore were ineligible to vote and should not be counted. The scheduled amount of the 67 creditors on Amended Schedule E/F total $521,889.46.

b.  Parties in interest objected to the 44 creditors' claims listed on **Exhibit 18** by a written objection prior to the 341 Meeting. The filed claims of these 44 creditors total $25,706,193.89. The scheduled amount of these 44 creditors on Amended Schedule E/F total $17,424,110.32.

c.  Parties in interest objected to the 14 creditors' claims listed on **Exhibit 19** on the grounds that the creditors filed duplicative claims and therefore should not be counted twice if determined to be eligible to vote. The filed claims of these 14 creditors total $5,907,458.59. The scheduled amount of the 14 creditors on Amended Schedule E/F total $5,695,501.92.

d.  Parties in interest objected to the six creditors' claims listed on **Exhibit 20** on the grounds that the creditors have a revenue sharing agreement and therefore may hold claims that are materially adverse to the interests of creditors and may not vote. The filed claims of these six creditors total $66,691.88. The scheduled amount of these six creditors on Amended Schedule E/F total $66,691.88.

e.  The Interim Trustee and/or Mr. Sather on behalf of the Proxy Creditors objected to the 16 creditors listed on **Exhibit 21** on the grounds that the claims were for postpetition services or agreements and therefore have either an administrative expense or an invalid claim and may not vote in the election. The filed claims of these 16 creditors total $4,412,425.98. The scheduled amount of these 16 creditors on Amended Schedule E/F total $361,161.88.

---

[12] Parties in interest objected to creditors' eligibility to vote on multiple grounds. Many creditors are included on several exhibits and the amounts listed below add up to more than the total claimed amount for the 389 creditors.

f.   The Interim Trustee objected to the 50 creditors listed on **Exhibit 22** on the grounds that the creditors' contract provided them with a priority over the general unsecured creditors and therefore may hold claims that are materially adverse to the interests of creditors and may not vote. The filed claims of these 50 creditors total $1,743,932.13. The scheduled amount of these 50 creditors on Amended Schedule E/F total $1,751,019.85.

g.   The Interim Trustee objected to the 47 creditors listed on **Exhibit 23** on the grounds that they were the recipients of a voidable preferential transfer and therefore may hold claims that are materially adverse to the interests of creditors and may not vote in an election. The filed claims of these 47 creditors total $1,557,389.38. The scheduled amount of these 47 creditors on Amended Schedule E/F total $1,564,477.10.

h.   Parties in interest objected to the 135 creditors listed on **Exhibit 24** on the grounds that they are claimants entitled to a refund and not actually creditors of the estate and therefore may not vote. The filed claims of these 135 creditors total $1,205,350.81. The scheduled amount of these 135 creditors on Amended Schedule E/F total $1,167,950.81.

i.   Parties in interest objected to the 76 creditors listed on **Exhibit 25** on the grounds that their filed claims lack supporting documentation and therefore are not in substantial compliance with the Official Bankruptcy Forms. If the filed claims are not in compliance with the Official Bankruptcy Forms, then the claims are insufficient, and these creditors were not eligible to vote. The filed claims of these 76 creditors total $688,001.92. The scheduled amount of these 76 creditors on Amended Schedule E/F total $654,675.64.

j.   Parties in interest objected to the 11 creditors listed on **Exhibit 26** on the grounds that they are potential insiders. If the creditors are insiders, they are not eligible to vote under § 702(a). The filed claims of these 11 creditors total $4,168,366.20. The scheduled amount of these 11 creditors on Amended Schedule E/F total $115,102.10.

k.   Parties in interest objected to the 27 creditors listed on **Exhibit 27** on the grounds that they potentially holding an equity interest in Debtor. If the creditors are equity holders, they are not eligible to vote. The filed claims of these 27 creditors total $103,623.57. The scheduled amount of these 27 creditors on Amended Schedule E/F total $88,457.01.

l.   Parties in interest objected to the seven creditors listed on **Exhibit 28** on the grounds that they hold a claim for wages or funds due under a severance package.

20

The filed claims of these seven creditors total $88,653.62. The scheduled amount of these seven creditors on Amended Schedule E/F total $70,496.29.

m.  Parties in interest objected to the 15 creditors listed on **Exhibit 29** on the grounds that claims were insufficient on their face and failed to properly state the creditor's name. The filed claims of these 15 creditors total $10,094,953.96. The scheduled amount of these 15 creditors on Amended Schedule E/F total $10,094,953.96.

n.  Mr. Sather, on behalf of the Proxy Creditors, objected to the claim of the U.S. Small Business Administration (SBA) because it is a secured creditor and therefore not eligible to vote under § 702(a). The SBA filed claim number 228 for $519,401.25 and was listed on Amended Schedule E/F as claim number 3.443 with a claim for $500,000.

o.  Mr. Satija, on behalf of Ryan, objected to the claims of Marc Bertrand because there are no records of any agreements with this alleged creditor or services provided by this alleged creditor, and he believes the documentation attached to the claims was fabricated. Bertrand filed claims numbered 265 and 285, asserting an unsecured claim in the amount of $97,265 on both proofs of claim. Bertrand was listed on Amended Schedule E/F as claim numbers 3.287 and 3.288 with claims of $97,265 on both.

p.  Mr. Satija, on behalf of Ryan, objected to the claim of Keagan Wernicke because it is an unliquidated claim. Wernicke filed claim number 371, asserting an unsecured claim in the amount of $31,449.25. Wernicke was listed on Amended Schedule E/F as claim number 3.257 with a claim of $31,449.25.

48.  **The Results:** If an election has been requested by eligible creditors holding more than 20% in amount of the claims specified in § 702(a)(1), then a candidate is elected if (a) more than 20% of the amount of claims specified in § 702(a)(1) voted and (b) that person received the votes of eligible creditors holding a majority in amount of the claims that voted. 11 U.S.C. § 702(c).

49.  The issues present in this trustee election are how much 20% of the eligible voting pool is, whether 20% of the eligible amount of claims requested an election, and whether 20% of eligible claims voted in the election. Depending on the answers to the questions, different results

are possible. If more than 20% of eligible creditors requested an election and more than 20% of eligible creditors voted in the election, then Melissa A. Haselden was elected having received 73 out of the 81 votes, totaling $2,188,680.56 of the $2,229,812.54 of the Amended Schedule E/F amount and $6,037,656.94 of the $6,280,788.92 of the filed claims that voted. **Exhibit 2**. If 20% of the eligible creditor pool did not request an election or 20% of the eligible creditors did not vote in the election, then no election was held, and Mr. Osherow remains the trustee in the case.

50.     The two potential permanent trustees are:

| | |
|---|---|
| Randolph N. Osherow<br>342 W Woodlawn, Suite 100<br>San Antonio, TX 78212<br>(210) 738-3001<br>rosherow@hotmail.com | Melissa A. Haselden<br>Haselden Farrow PLLC<br>Pennzoil Place, 700 Milam, Suite 1300<br>Houston, TX 77002<br>(832) 819-1149<br>mhaselden@haseldenfarrow.com |

51.     The United States Trustee reports each of the potential permanent trustees appear to be eligible to serve and qualified under §§ 321 and 322. Mr. Osherow is currently appointed as a panel trustee in the Western District of Texas. He is appropriately bonded. Ms. Haselden, if appointed, will need to obtain an appropriate bond.

52.     Pending the Court's determination of the trustee election, if requested to resolve such dispute, Mr. Osherow, as the interim trustee, continues in that office.

53.     The United States Trustee submits this Election Report pursuant to FRBP 2003(d)(2). The United States Trustee does not take a position in the Election Report as to the objections made prior to and at the 341 Meeting but reserves the right to respond to any motion for resolution of disputes. Parties are reminded that "[u]nless a motion for the resolution of the dispute is filed no later than 14 days after the United States Trustee files a report of a disputed election for trustee, the interim trustee shall serve as trustee in the case." FRBP 2003(d)(2).

Dated: August 22, 2023

KEVIN M. EPSTEIN
United States Trustee Region 7
Southern and Western Districts of Texas

By:     */s/ Shane P. Tobin*
     Shane P. Tobin
     Trial Attorney
     CA State Bar No. 317282
     903 San Jacinto Blvd., Room 230
     Austin, Texas 78701
     Telephone: (512) 916-5328
     Fax: (512) 916-5331
     Shane.P.Tobin@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2023, a true and correct copy of the foregoing document was served upon all parties receiving electronic notifications in this case through the CM/ECF system.

By: <u>*/s/ Shane P. Tobin*</u>
Shane P. Tobin
Trial Attorney
