IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| ASTRALABS, INC., | § § | Case No. 23-10164-smr |
| | § | Chapter 7 |
| Debtor. | § § | |

**TRUSTEE'S REPLY TO ANDREW RYAN'S
RESPONSE TO MOTION FOR STATUS CONFERENCE**

TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Randolph N. Osherow, not individually but in his capacity as the duly appointed chapter 7 trustee (in such capacity, the "Trustee"), for and on behalf of ASTRALABS, Inc. (the "Debtor") and its bankruptcy estate ("Estate") established under the above-captioned chapter 7 case ("Bankruptcy Case"), and files this *Reply* to *Andrew Ryan's Response* [Docket No. 273] ("Response")[1] to the *Trustee's Motion for Status Conference* [Docket No. 242] (the "Motion"),[2] respectfully stating as follows:

1. Mr. Ryan's Response authenticates his written, documented attempt and proposed agreement to bribe CFT Clear Finance Technology Corp. ("CFT"). Despite his complaints that CFT should not have reported this plainly fraudulent and improper conduct to the Trustee as fiduciary to the Estate, Mr. Ryan's own documentation and evidence provided with his Response affirms CFT's good faith and the lack of Mr. Ryan's good faith. To wit, when CFT reviewed the proposed guaranty agreement that expressly links the offer of consideration to CFT's required vote for a specific candidate in the Trustee Election, CFT objected and refused to pursue the proposal. In contrast, Mr. Satija, on Mr. Ryan's behalf, states that Mr. Ryan extended the guaranty

---

[1] Docket No. 273.

[2] Capitalized terms used and not otherwise defined herein have the same definitions as are set forth in the Motion.

specifically because he understood that, "When my client informed yours about personal guarantees negotiated with other creditors in their initial loans, Olivier asked for a similar personal guaranty from Andrew, seemingly in return for CFT's support in the forthcoming election." Response, at Exhibit 273-7 (Satija e-mail to Jacob, July 26, 2023).

2. It is obviously not a defense to fraudulent and criminal conduct that the perpetrator understood that someone asked him to do it. *See* Response, ¶ 3.

3. Moreover, this correspondence confirms that CFT had asked for a guaranty similar to *initial* guaranties provided by Mr. Ryan, but Mr. Ryan understood CFT to be asking for a bribe for its participation in the Trustee Election, and promptly, expressly offered it. The correspondence also confirms that Messrs. Ryan and Satija fully understood the impropriety of their conduct, but yet they continued, after CFT's objection, to pursue offering CFT potential consideration expressly in connection with the Trustee Election:

> As you know, I didn't recommend this to my client. In fact, I advised against it, but as we discussed, Clearco and Andrew both benefit from the election of a new trustee. Are you able to have another call to discuss what Clearco is asking for? The election materials were requested by 5 pm CT today [and proceeding to outline election participation procedures]".

*Id*.

4. The allegation that this documented bribery—that is plainly illegal conduct under 18 U.S.C. § 152(6)—is not fraudulent is frivolous. *Cf.* Response, ¶ 22. *See United States v. Brown*, 871 F.3d 352, 355 (5th Cir. 2017) (fraud convictions were proper where the evidence shows that the defendant, *inter alia*, "was subjectively aware of high probability of the existence of illegal conduct"); *In re Primera Energy, LLC*, 579 B.R. 75, 185 (Bankr. W.D. Tex. 2017) (Gargotta, J.) ("The essential elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more

unlawful, overt acts; and (5) damages as a proximate result."); *Ridgway v. Ridgway*, 454 U.S. 46, 60 n.9 (1981) (discussing fraud and illegal means interchangeably).

5. Of course, here, there is no evidence that Messrs. Ryan and Satija intended to publicly disclose to the Estate their efforts to bribe participation in the Trustee Election, and any such allegation should be discounted as self-serving excuses. Although the Response alleges that the undersigned reached out to the United States Trustee to discuss the matter before the Motion was filed, this was plainly *after* the U.S. Trustee disclosed on the record of the 341 meeting that it was already aware of efforts to bribe votes in connection with the Trustee Election. Response, ¶ 18; Transcript of First Meeting of Creditors, July 28, 2023 (8:04 min.):

> Mr. Tobin: Additionally, as a general matter, the United States Trustee has learned that a creditor received a written offer in exchange for voting for a particular trustee candidate, it would receive a personal guarantee of its debt. Such solicitation raises serious concerns about the election process in this or any other case and impacts the integrity of the bankruptcy system. I will be asking each creditor specific questions regarding that.

6. Therefore, Mr. Satija's effort to contact the U.S. Trustee was not a matter of voluntary disclosure, but rather, a classic effort of "coming clean," after the fact of discovery by the Federal government.

7. The Response consistently, falsely alleges that in investigating the Trustee Election, the Trustee is motivated by a desire to punish all creditors, who allegedly, overwhelmingly prefer an alternate trustee, and that the Trustee's objections raising disputes as to the standing of creditors to participate in the Trustee Election were personally motivated rather than seeking to uphold the interests of creditors. Response, ¶¶ 2, 4, 29.

8. First, as set forth in the Motion, the Trustee's initial involvement in any election matters was minimal until the U.S. Trustee expressly informed the Trustee of apparent improprieties occurring in connection with the Trustee Election. Motion, ¶ 24. At that time, the

U.S. Trustee requested that the Trustee investigate and disclose corresponding documentation to the U.S. Trustee.

9. Moreover, this assertion is specious in light of the concession that the Trustee has standing to participate in the Trustee Election, especially here, where ample evidence of extremely troubling illegal conduct and manufactured claims plainly justifies the Trustee's efforts to ensure the integrity of the procedures utilized to administer the Estate. *See also* 11 U.S.C. § 701(b) (providing that the interim trustee serves as trustee until an election is resolved). *See also* Fed. R. Bankr. P. 2003 ("Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office.").

10. Critically, the Trustee's investigation of the Trustee Election is absolutely justified here, not only due to the shocking evidence of bribery and fraudulently filed claims, which by themselves are (each) sufficient to raise serious concerns regarding the process. It is also plainly justified because it has become clear that this coordinated effort orchestrated by Mr. Ryan, by his own admission, is directed to advancing the interests of shareholders over the true interests of creditors.

11. As documented by the Trustee in his Witness and Exhibit list for the August 30, 2023 hearing, the Trustee has now learned and documented that **ALL BUT ONE** of the putative creditors who requested and voted in the Trustee Election are, in fact, holders of equity interests that are substantial in relation to the creditors' corresponding claim. They are plainly disqualified. *See* Trustee's Witness and Exhibit List [Docket No. 271], Exhibit "P"; *United States Trustee's Report of a Disputed Election of Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2003* [Docket No. 265] ("UST Report"), ¶ 17.

12. The Trustee raises this observation not to pre-litigate the Trustee Election, but the systematic assertion of standing by coordinated shareholders, including though substantial alleged

proxies, to manufacture the Trustee Election plainly also justifies investigation into this coordinated, improper conduct. And, Mr. Ryan's Response provides further evidence that the Trustee Election has been orchestrated and hijacked to advance the interests of shareholders. Response, ¶¶ 16, 17, 24, 25, Exh. 273-1 (Ryan e-mail to Connoy [July 12, 2023]: "Thus I want nothing more than to ensure that everyone gets paid back, including the 1x liquidation payback to our investors."); *see also* Motion, ¶ 5.

13. It is also false to allege that all creditors support the election of a different trustee. Again, only the creditors who are actually pursuing interests as shareholder support his action. *Cf.* UST Report, Exhibit "A" (72 "creditors" requesting and voting in Trustee Election); Amended Conversion Schedule E/F [Docket No. 209] (listing 471 general unsecured claims, none scheduled as C/U/D); (Claims Register: 614 claims filed. 2 secured, 63 including priority elements).

14. Therefore, especially with the amended conversion schedules having just been filed the evening prior to the Trustee Election, and continually incoming claims, the Trustee had no choice but to broadly dispute the Trustee Election due to the corresponding breadth of the apparently coordinated attempts of shareholders to claim standing to participate therein. That effort to defend the Estate has proven to be warranted.

15. Mr. Ryan also conveniently ignores that he systematically objected to the claims of creditors who did not agree to seek a trustee election, including but not limited to one hundred thirty five (135) claims of former customers who assert various claims for breach of contract and nonperformance. UST Report, ¶ 46.

16. The Response alleges that, "The Interim Trustee attacks Ms. Haselden." Response, ¶ 33. This is another falsehood. The **sole** reference in the Trustee's Motion to Ms. Haselden is as follows: "Stephen Sather (counsel for the B&N Clients) nominated Melissa Haselden, the same trustee candidate identified in the Proposed Guaranty, and Matt Kelly, on behalf of each of the

creditors for which the B&N Clients allegedly held proxies, voted in favor of Ms. Haselden." Motion ¶ 33.

17. The Trustee's Motion does not threaten criminal referrals. Rather, it mentions the matter only once, in a footnote, to inform the Court that appropriate criminal referrals were made prior to the filing of the Motion. *See* Response, ¶ 2; Motion, ¶ 31 n.9.

18. Incredibly, Mr. Ryan's documentation includes evidence of his (additional) intentional violations of the automatic stay, in a manner that greatly prejudices the interests of the Estate, including its creditors and shareholders, by knowing and intentional misappropriation of Estate property. Attached to the Response (Exh. 273-1) is an e-mail from Mr. Ryan to B. Connoy, Nihar Patel, and others, in which he specifically addresses documentation of the warrant portfolio that he and all parties in interest have repeatedly acknowledged on the record is the sole source of potential disbursements reaching equity holders, and states: "There is a giant database of these, however, the estate has locked these down to prepare an official diligence package given confidentialities, etc. Here is an anonymized version, attached."

19. This correspondence at once confirms Mr. Ryan's conscious knowledge of the Estate's confidential interests and its "locking down" of this information to prepare for sale of the assets, but then immediately discloses warrant data in order to attempt to curry favor with CFT. Indeed, Ryan begins his e-mail with the passage: "the estate has turned off all emails thus our ability to get internal documents is limited:" as he then proceeds to attach documents.

20. The Court will recall Mr. Ryan's vehement prior objections that any allegedly unnecessary disclosure of proprietary data belonging to the Estate may be severely damaging to the value of the Estate's assets. *See, e.g.*, *A. Ryan's Response With Limited Objections to Motion For E-Mail Notice* [Docket No. 164].

21. Make no mistake, the Trustee takes no pleasure in raising his Motion with the Court but did so as soon as reasonably possible, as admonished by prior authorities, and given the severity of the underlying conduct disclosed therein. In fact, the Trustee considers these matters tremendously disappointing, disillusioning, and extremely unfortunate, but all responsibility for the consequences that flow from these disclosures rests with the perpetrators and not with the Trustee. Nor should the Estate be forced to bear the consequences of this frivolous, bad faith conduct.

RESPECTFULLY SUBMITTED this 29th day of August, 2023.

By: */s/ Jay H. Ong*
Jay H. Ong
Texas Bar No. 24028756
Thanhan Nguyen
Texas Bar No. 24118479
MUNSCH HARDT KOPF & HARR, P.C.
1717 West 6th Street, Suite 250
Austin, Texas 78703
Telephone: (512) 391-6100
Facsimile: (512) 391-6149
Email: jong@munsch.com
anguyen@munsch.com

**Counsel for Randolph N. Osherow, Chapter 7 Trustee**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on August 29, 2023, he personally caused true and correct copies of the foregoing pleading to be served by electronically filing it with the Court using the Court's CM/ECF system, which sent notification to the parties receiving same through such system.

Additionally, as expressly authorized by the Court and by his signature below, the undersigned hereby certifies that, on August 29, 2023, he personally caused to be served a true and correct copy of the foregoing pleading via e-mail transmission upon the parties listed in the sealed matrix on file with the Court.

Additionally, the undersigned hereby certifies that, on August 29, 2023, he personally caused true and correct copies of the foregoing pleading to be served via first class U.S. mail on the following parties:

    Ron Satija
    Hayward PLLC
    7600 Burnet Road, Suite 530
    Austin, TX 78757
    *Counsel for Andrew Ryan*

By: */s/ Thanhan Nguyen*
       Thanhan Nguyen, Esq.