### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-10164-smr** |
| **ASTRALABS, INC.,** | § | |
| | § | **Chapter 7** |
| Debtor. | § | |

### TRUSTEE'S MOTION (I) FOR AUTHORITY TO SELL DESIGNATED SECURITIES WARRANTS, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; (II) FOR APPROVAL OF NOTICE, SALE, AND EXECUTORY CONTRACT PROCEDURES; AND (III) TO SET FINAL HEARING TO APPROVE SALE AND GOOD FAITH DESIGNATION TO PREVAILING PURCHASER(S)

Randolph N. Osherow, not individually but in his capacity as the duly appointed chapter 7 trustee (in such capacity, the "Trustee"), for and on behalf of ASTRALABS, Inc., d/b/a "Newchip" (the "Debtor"), under the above-captioned chapter 7 bankruptcy case (the "Bankruptcy Case"), hereby files this *Motion (I) for Authority to Sell Designated Securities Warrants, Free and Clear of All Liens, Claims, and Encumbrances; (II) for Approval of Notice, Sale, and Executory Contract Procedures; and (III) to Set Final Hearing to Approve Sale and Good Faith Designation to Prevailing Purchaser(s)* (this "Motion"), and in support hereof respectfully shows the Court as follows:

### I.        JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the standing Western District of Texas Order of Reference of Bankruptcy Cases and Proceedings.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and a matter that arises exclusively under the provisions of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), and as to which the Court accordingly has the power consistent with the United States Constitution to enter a final order.  The Trustee expressly

consents to such a final disposition by this Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 363 and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure, and Rules 6004 and 9014 of this Court's Local Rules of Bankruptcy Procedure.

## II.      BACKGROUND

3.      On March 17, 2023 (the "Petition Date"), the Debtor commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 11, subchapter V, of the Bankruptcy Code, thereby creating the Debtor's estate (the "Estate").

4.      On May 12, 2023 (the "Conversion Date"), the Court entered its *Order Converting Case to Chapter 7* [Docket No. 89], converting the Bankruptcy Case to chapter 7, discharging the subchapter V trustee, and appointing the Trustee as the interim trustee to oversee the administration, operation, and management of the Debtor's Estate and its business. On August 22, 2023, the United States Trustee filed its *Report of a Disputed Election of Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2003* [Docket No. 265] (the "UST's Report"), and no motion for the resolution of the dispute was filed within 14 days of the report. The Trustee, accordingly, continues to serve as Chapter 7 Trustee. *See* Fed. R. Bankr. P. 2003(d)(2). No official committee has been appointed in the Bankruptcy Case.

5.      Upon his appointment to act as Trustee, the Trustee undertook efforts to identify and transition custody and control over the Estate's assets, interests, and affairs, including, but not limited to, analyzing the portfolio of warrant securities issued to the Debtor generally by former customers (collectively, the "Warrants"), which appear to comprise the Debtor's primary assets. Andrew Ryan—the Debtor's former sole director, majority principal, and chief executive officer—

previously testified that the Warrants may be worth, in the aggregate, as much as $489 million. *See Transcript of Hearing Held May 11, 2023* [Docket No. 111] at 42:3–23. A representative sample Warrant is attached hereto as **Exhibit "A"** and incorporated herein by reference for all purposes. Although the forms of the Warrants evolved over time and therefore are not identical, the Warrants generally expire after certain periods (*e.g.*, twenty-four months after the effective date), subject to certain provisions for periodic disclosure obligations and potential extension.

6.      While the Estate and certain parties-in-interest remained embroiled in disputes relating to the UST's Report—during which the continuing administration of the Estate was delayed as the identity of Estate's (permanent) fiduciary chapter 7 trustee remained uncertain— the Court entered its Order [Docket No. 172] extending the deadline for the Trustee to seek to assume or reject executory contracts as provided in section 365 of the Bankruptcy Code through October 11, 2023 (the "Assumption / Rejection Deadline") and without prejudice to other and further requests.

7.      After the potential UST Report disputes were resolved, the Trustee filed his motion [Docket No. 334] seeking to further extend the Assumption / Rejection Deadline to accommodate the proposed sale schedule contemplated under this Motion, and on October 10, 2023, the Court entered its Order [Docket No. 336] extending the deadline to January 15, 2024.

8.      On September 6, 2023, the Court entered its Order [Docket No. 296] authorizing the Trustee to retain PEAK Technology Partners, LLC (the "Sale Agent")—a licensed, technology-focused investment banker and securities broker specializing in sell-side transactions—to act as the Estate's agent in connection with its marketing and sale of the Warrants.

9.      As of the date of this Motion, the Trustee and the Sale Agent have identified certain Warrants for sale (collectively, the "Sale Assets") pursuant to this Motion (the proposed "Sale"),

which are listed on **Exhibit "1"** attached to the Sale Procedures (as defined below), and incorporated herein by reference for all purposes.[1]

### III.     RELIEF REQUESTED

**A.    Sale Procedures**

10.    <u>Summary</u>. By this Motion, the Trustee respectfully requests this Court's authority, following an initial hearing to consider this Motion (the "<u>Initial Hearing</u>"), to pursue and close the Sale of the Sale Assets pursuant to the procedures requested for approval herein (the "<u>Sale Procedures</u>"). The Trustee contemplates and proposes that these procedures will culminate in a final hearing (the "<u>Final Sale Hearing</u>") scheduled by this Court to consider entry of an order (the "<u>Final Sale Order</u>") authorizing the Trustee to close the Sale with the Successful Bidder or Back Up Bidder (as such terms are defined herein) resolved and determined pursuant to the Sale Procedures.

11.    Because the potential UST Report disputes were not resolved until the fall of this year, in consultation with the Sale Agent and Mr. Ryan, the Trustee was urged to delay marketing and bidding for the Sale Assets until 2024. Specifically, the Trustee understands that the market of institutional and strategic potential investors in, and purchasers for, securities assets such as the Sale Assets generally winds down and abates during the holidays, with most of these industry participants managing and conserving resources to prepare for the next year. Accordingly, it would be disadvantageous and inconsistent with efforts to maximize the value of the Estate's Sale Assets to attempt to sell them prior to 2024. As further detailed below, the proposed Sale schedule, accordingly, contemplates bidding for the assets to begin in January 2024.

---

[1]    As further set forth hereinbelow, the Sale Procedures are attached to the Trustee's proposed Notice of Sale and Final Sale Hearing, which is attached hereto as **Exhibit "B"** and incorporated herein by reference for all purposes.

12.    <u>Final Sale Hearing</u>.  The Trustee requests that the Final Sale Hearing be set for a date at the Court's convenience **the week of April 8, 2024, to occur on or about April 12, 2024**. In consultation with the Sale Agent and Mr. Ryan, the Trustee believes that such a schedule will provide an ample marketing period to maximize and ensure the fair market value for the Sale Assets.  The Trustee and Sale Agent have already received multiple indications of interest to purchase the Sale Assets.

13.    <u>Sale Free and Clear</u>.  The Sale is proposed to be free and clear of all liens, claims, and other encumbrances, with any such interests attached to the Sale Assets to transfer to the proceeds of Sale in the same amount, validity, and priority and subject to the same Estate defenses, if any.  To the best of the Trustee's current, actual knowledge, there are no liens or security interests asserted over any Sale Assets by any holders who have not consented to the Sale.  *See, e.g.,* Debtor's Amended "Conversion" Schedules [Docket No. 318], Schedule D; Claim Register Nos. 164, 165.

14.    The sole entity asserting any known encumbrance of the Sale Assets is the U.S. Small Business Administration ("<u>SBA</u>"), which asserts a claim in the amount of $519,401.25, secured by a perfected security interest in, without limitation, all of the Debtor's tangible and intangible personal property, instruments, notes, chattel paper, documents, accounts, and general intangibles.  *See* Claims Register No. 228.

15.    The Trustee has conferred with counsel for the SBA and, pursuant thereto, understands that the SBA consents to the Sale of the Assets, subject to the SBA's lien transferring to the Sale proceeds with the same validity, extent, and priority as existed as of the Petition Date, and with the SBA reserving all rights with respect to such Sale proceeds.  The SBA's counsel, Mr. Steven Bass, Esq., has been served with a copy of this Motion.

16.    <u>Proposed Sale Schedule</u>.  The Sale Procedures encompass a proposed schedule— subject to the Court's authorization and availability for requisite hearings—that contemplates marketing, due diligence, and bidding for the Sale Assets (after resolving related cure obligations, if any) to occur in early 2024, with the closing of the Sale to occur following final Court approval of the Sale, and which includes the following proposed, material Sale milestones and deadlines:

| | |
|---|---|
| Initial Hearing (week of December 18, 2023) | by December 22, 2023 |
| Cure Objection Deadline / Sale Objection Deadline | January 12, 2024 |
| Executory Contract Hearing (week of January 22, 2024) | January 26, 2024 |
| Bid Deadline | March 19, 2024 |
| Notice of Prevailing Bid | March 25, 2024 |
| Final Sale Objection Deadline | April 1, 2024 |
| Final Sale Hearing (week of April 18, 2024) | by April 12, 2024 |

17.    <u>Sale Procedures</u>.  In addition to the foregoing, the proposed Sale Procedures, which are set forth in and incorporated into the Trustee's proposed Notice of Sale and Final Sale Hearing attached hereto as **Exhibit "B"** and incorporated herein by reference for all purposes (the "<u>Sale Notice</u>"), are as follows:

a.    <u>Sale Assets</u>.  All of the Debtor's and its bankruptcy Estate's interests in and to those certain securities Warrants listed on **Exhibit "1"** to the Sale Procedures and incorporated herein by reference for all purposes.

b.    <u>Executory Contracts</u>.  To the extent that any of the Sale Assets constitute executory contracts for purposes of the Bankruptcy Code, the Trustee intends to assume same and assign them to the buyer(s) of the Sale Assets (collectively, the "<u>Purchaser</u>"), to the extent designated by the Purchaser, pursuant to 11 U.S.C. § 365.  **Exhibit "1"** listing the Sale Assets comprises the list of executory contracts that may be assumed by the Estate and assigned to a Purchaser pursuant to the Sale.  Any and all such Warrants listed as Sale Assets shall be available for potential assumption by the Estate and assignment to the Purchaser, at its election, unless the Court sustains an objection thereto, and subject to the payment of any and all required obligations to cure existing defaults.  **There are no other executory contracts or unexpired leases potentially implicated by the Sale**.

i.    **Exhibit "1"** to the Sale Procedures also lists any known cure amounts, if any, applicable to each such Warrant and will be served upon all non-debtor contract parties thereto promptly following the Court's approval of the Sale Procedures.  For the avoidance of doubt, the Trustee believes and asserts

that there is no cure amount applicable to any Warrant. Any party objecting to the assumption or assignment of a Warrant as an executory contract, other than an objection based solely on the identity of the Purchaser (*i.e.*, the proposed assignee), must file and serve upon the Trustee a written objection stating the bases for its objection and any required cure amount **by no later than 5:00 p.m. (Central Time) on January 12, 2024** (the "Cure Objection Deadline").

ii.  In the event a timely objection is filed to the assumption and/or assignment of a Warrant as an executory contract, other than an objection based solely on the identity of the Purchaser (*i.e.*, the proposed assignee), a hearing shall be held to consider and resolve such objection(s), before the United States Bankruptcy Court, live and **in-person**[2] before the Honorable Shad M. Robinson, United States Bankruptcy Judge, at the United States courthouse located at the **Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Boulevard, Third Floor, Courtroom 1, Austin, Texas 78701, on January [22–26], 2024, at [##:## a.m. / p.m.] (Central Time)** (the "Executory Contract Hearing").

iii.  It shall be entirely the obligation of the Purchaser to pay or otherwise resolve any and all such cure amounts, solely to the extent allowed by the Bankruptcy Court, as a condition of receiving assignment of any such contracts, without any adverse impact on its obligations to close its Successful Bid or Back Up Bid (as such terms are defined herein), as the case may be, without any reduction of the purchase price or any contribution from the Trustee or Estate, and no matter how such requested assumption and assignment is resolved, whatsoever.

iv.  Rights of First Refusal.  To the extent a Warrant included as a Sale Asset incorporates a purported "right of first refusal" held by the issuer, such as but not limited to any asserted right to match and supersede any Successful Bid, Back Up Bid, or Sale to the Purchaser, no such rights of first refusal shall be exercisable or enforceable in connection with these Bid Procedures or the Sale; *provided, however*, that any assignment of any Warrant by the Estate pursuant to the Sale shall expressly be *cum onere*, together with, and including, any and all related provisions, rights, and obligations, including any right of first refusal, but solely to the extent valid and enforceable under applicable law.

c.  Bid Deadline: **5:00 p.m. (Central Time), on March 19, 2024,** except as may otherwise be agreed to by the Trustee, including through his Sale Agent, in the Trustee's sole and exclusive discretion.

---

[2]  Information on attending the hearing remotely by WebEx or telephone can be found on the Court's website: https://www.txwb.uscourts.gov/honorable-shad-m-robinson-us-bankruptcy-judge.

d.  <u>Bidder Qualifications</u>.  By no later than the Bid Deadline, all interested bidders must qualify according to the Sale Procedures ("<u>Qualified Bidders</u>"), through and with the Sale Agent, and as determined by the Trustee, through his Sale Agent, in his sole discretion.  In order to qualify as a Qualified Bidder, the putative bidder must, by no later than the Bid Deadline, provide to the Sale Agent: (1) an executed Non-Disclosure Agreement in the format attached to the Bid Procedures as **<u>Exhibit "2"</u>** and incorporated herein by reference for all purposes, as a condition of receiving due diligence access; and (2) an initial $10,000.00 earnest money deposit ("<u>Deposit</u>") by check or wire, in immediately available cash.  After receiving, reviewing, and evaluating the foregoing from a potential bidder, or upon written request, the Sale Agent will use its commercially reasonable efforts to promptly confirm to the bidder its status as a Qualified Bidder or outstanding items required to be completed or corrected in order for the bidder to qualify as a Qualified Bidder.

e.  <u>Qualified Bids</u>.  Subject to the procedures set forth herein, Qualified Bidders may bid on all Warrants in the aggregate, any Warrant individually, or any combination of Warrants.  Qualified Bidders may make multiple, alternate Qualified Bids.  To be a Qualified Bid, a bid must be in writing, delivered to the Sale Agent by no later than the Bid Deadline, and:

i.  be in the form of the Asset Purchase Agreement approved by the Bankruptcy Court and available upon request from the Sale Agent or Trustee's counsel ("<u>APA</u>"), a true and correct copy of which proposed form of APA is attached to the Bid Procedures as **<u>Exhibit "3"</u>** and incorporated herein by reference for all purposes, and include a redline showing all changes made to the form of APA under the bid;

ii.  expressly identify the Sale Asset Warrant(s) that the Qualified Bidder seeks to purchase and have assigned to the Purchaser;

iii.  be entirely irrevocable and unconditional with respect to financing or any other approval, authorization, or contingency, save for Bankruptcy Court authorization;

iv.  include the Qualified Bidder's commitment and agreement, if approved as Successful Bidder or Back Up Bidder (as such terms are defined herein), to close its approved bid by no later than 5:00 p.m. (Central Time) on the first business date that is thirty (30) days following entry of the Final Sale Order;[3]

---

[3]  A true and correct copy of the proposed Final Sale Order is attached as **<u>Exhibit "4"</u>** to the Sale Procedures and incorporated herein by reference for all purposes.

     v.   increase the Qualified Bidder's Deposit to the amount that is at least 10% of the Qualified Bidder's aggregate bid amount;[4] and

    vi.   provide to the Sale Agent satisfactory written information demonstrating the Qualified Bidder's financial capability to close the transaction proposed under its bid, which satisfactory evidence may be comprised of (a) recent sworn financial statements of the Qualified Bidder and/or its direct or indirect equity interest holder(s), (b) confirmation of available funds on deposit, or (c) such other evidence as may be reasonably satisfactory as determined by the Trustee, including through his Sale Agent, in the Trustee's sole discretion.

    f.   <u>Due Diligence; "as is / where is"</u>. Due to the particular circumstances of this Estate, the Sale shall be "as is / where is" with the Purchaser taking all Sale Assets subject to any and all existing defenses, faults, and defects, ***other than*** asserted cure amounts required under 11 U.S.C. § 365, and without: (1) any representation or warranty from the Trustee or Estate (which is, and shall be, expressly disclaimed by the Trustee and Estate in the APA) as to (A) the validity, effectiveness, or legal enforceability of any Warrant, (B) the remaining exercise period (if any) and/or exercise price under any Warrant, (C) the current or potential future value of any Warrant or of any underlying securities of the issuer of any Warrant for which such Warrant is exercisable, (D) the condition of any Warrant, or (E) the current or future potential financial condition and/or business prospects of any issuer of any Warrant; or (2) any right to redress or reduction whether on account of any exceptions or matters discovered in the course of due diligence or otherwise. The Trustee and Sale Agent shall reasonably cooperate in providing to Qualified Bidders available due diligence disclosures of information in the Trustee's and Estate's actual possession, including but not limited to data room access; *provided, however*, that the Trustee makes no assurance of the availability or accuracy of any particular due diligence disclosures nor shall any interested bidder shall be entitled to any such assurance.

In particular, as provided in the required form of APA: (1) the Purchaser will be required to make customary and standard securities laws representations and warranties, including without limitation that (A) it is a sophisticated and knowledgeable investor, (B) it is an "accredited investor" (as that term is defined in Regulation D promulgated by the Securities and Exchange Commission), (C) it is able to bear the economic risk of an investment in the Warrant(s) being acquired by it, and (D) it is acquiring Warrant(s) (and any underlying securities) for its own account for investment and not with the view toward resale or redistribution; and (2) the Trustee is and shall be under no obligation to make disclosures regarding any Warrant(s) or any Warrant issuer(s) under applicable non-bankruptcy law,

---

[4]   Where the Qualified Bidder's original Deposit already equals or exceeds 10% of its bid, no increase shall be required in order to render its bid a Qualified Bid, but nor shall any downward adjustment be permitted (other than potential refunding as provided in these Sale Procedures).

including, without limitation, under any applicable state and/or federal securities laws, but rather, each and every Qualified Bidder, and the Purchaser, is required to rely exclusively on its own consultants, advisors, counsel, employees, agents, principals, and/or information, studies, investigations, and/or inspections with respect to any Warrant, its condition, value, and potential.

g. <u>Determination of Highest and Best Qualified Bid(s)</u>. In consultation with the Sale Agent, the Trustee has determined in his reasonable business judgment that a public auction procedure is neither practicable nor likely to lead to the highest and best aggregate, net Sale results for the Estate. Accordingly, **no auction shall be conducted following the expiration of the Bid Deadline**. Rather, bidders are encouraged to submit their highest and best Qualified Bids as soon as reasonably possible, which will maximize the Sale Agent's opportunity to review and evaluate bids and inform Qualified Bidders of bid defects to the extent practicable and as provided above. Bidders should also submit their highest and best Qualified Bids as soon as reasonably possible in order to maximize the Sale Agent's opportunities to confer with the Qualified Bidder, in the Sale Agent's discretion, as to the Qualified Bidder's Qualified Bid and the Sale Agent's current prognosis as to the Qualified Bid's likelihood of being selected as, or as among, the highest and best Qualified Bid(s) received by the Estate. Notwithstanding the foregoing, the Trustee, including through his Sale Agent, makes no assurance or commitment that the Sale Agent will confer with or provide any particular information to a Qualified Bidder as to the Qualified Bid's likelihood of being selected as, or as among, the highest and best Qualified Bid(s) received by the Estate, and *provided, however,* that the Trustee and Sale Agent shall not unduly discriminate against any particular bidder.

Following the Bid Deadline, the Trustee shall, in consultation with the Sale Agent and in the Trustee's sole discretion, determine: (i) the Qualified Bid or combination of Qualified Bids that constitutes the highest and best Qualified Bid(s) received (collectively, the "<u>Successful Bid</u>"); and (ii) the Qualified Bid or combination of Qualified Bids that constitutes the next highest and best Qualified Bid(s) received (collectively, the "<u>Back Up Bid</u>").

By no later than March 25, 2024, the Trustee shall notify the Qualified Bidder(s) who made the Successful Bid (collectively, the "<u>Successful Bidder</u>") as well as the Qualified Bidder(s) making the Back Up Bid (collectively, the "<u>Back Up Bidder</u>"), and file notice of same for the Court's approval at the Final Sale Hearing.

Any objection to the Sale or to the assignment of a Warrant based on the identity of the purchaser must be filed and served upon the Trustee **by no later than 5:00 p.m. (Central Time) on April 1, 2024**.

h. <u>Final Sale Hearing</u>. A hearing to finally approve and authorize the Sale with the Successful Bidder and/or Back Up Bidder, as applicable, shall be held before the

United States Bankruptcy Court, live and **in-person**[5] before the Honorable Shad M. Robinson, United States Bankruptcy Judge, at the United States courthouse located at the **Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Boulevard, Third Floor, Courtroom 1, Austin, Texas 78701, on April [8–12], 2024, at [\_\_\_\_ a.m. / p.m.] (Central Time)**.

i. <u>Closing</u>. If any Successful Bidder does not close the Sale **by no later than 5:00 p.m. (Central Time) on the first business date that is thirty (30) days following entry of the Final Sale Order**, the Trustee shall retain such Successful Bidder's Deposit, entirely and as damages for the benefit of the Estate and for all purposes, and the Trustee may, in his sole discretion, notify the Back Up Bidder and proceed to close the Back Up Bid with the Back Up Bidder, as Purchaser.

> i. In such event, if any Back Up Bidder does not close the Sale **by no later than 5:00 p.m. (Central Time) on the first business date that is fifteen (15) days following the Trustee's notice to the Back Up Bidder**, the Trustee shall retain such Back Up Bidder's Deposit, entirely and as damages, for the benefit of the Estate and for all purposes.

> ii. In the event there are multiple Qualified Bidders / proposed Purchasers whose Qualified Bids have been aggregated or combined under, and as, the Successful Bid or the Back Up Bid, and fewer than all of the Qualified Bidders / proposed Purchasers under such Successful Bid or Back Up Bid, as applicable, fail to close the Sale as required under these Sale Procedures, the Trustee, in his sole discretion, may nevertheless determine to proceed with closing the Sale, or the remainder of the Sale, with the remaining, non-defaulting Successful Bidders or Back Up Bidder(s), in the Trustee's sole discretion.

j. <u>Deposits</u>. The Deposit amount applicable to a prevailing bid shall be credited towards the applicable purchase price obligations of the Successful Bidder (or Back Up Bidder, as applicable) at closing. The Deposit of each Qualified Bidder that is not selected as a Successful Bidder or Back Up Bidder shall be refunded by the Trustee within three (3) business days following the completion of the Final Sale Hearing; *provided, however*, that the Deposit of the Back Up Bidder shall be returned within three (3) business days following the closing of the Sale to the Successful Bidder. Notwithstanding the foregoing, in the event that any Successful Bidder or Back Up Bidder fails to timely close the Sale as required under these Sale Procedures, other than for a reason determined by the Court to be entirely beyond the bidder's control, then such Successful Bidder or Back Up Bidder's Deposit, as applicable, shall automatically be entirely forfeited and retained by the Trustee for the benefit of the Estate, as damages.

---

[5] Information on attending the hearing remotely by WebEx or telephone can be found on the Court's website: https://www.txwb.uscourts.gov/honorable-shad-m-robinson-us-bankruptcy-judge.

    i.   In the event there are multiple Qualified Bidders / proposed Purchasers whose bids have been aggregated or combined under the Successful Bid or Back Up Bid, only the defaulting Successful Bidder(s) or Back Up Bidder(s), as applicable, shall forfeit its (or their) Deposit(s).

    ii.   Any Successful Bidder or Back Up Bidder who is not afforded the opportunity to close the Sale due to the default of another Successful Bidder or Back Up Bidder, as applicable, shall receive a refund of its Deposit where the Court determines that the failure to close was entirely beyond its reasonable control. In the event a Successful Bidder or Back Up Bidder defaults on its obligations to timely close the Sale as required under these Bid Procedures, any Deposit of a non-defaulting Successful Bidder and/or Back Up Bidder shall be refunded within three (3) business days of the earlier of: (i) the closing of the Sale, if agreed by the Trustee; and (ii) the Court's determination that the failure to close was entirely beyond the bidder's reasonable control.

k.   <u>Modifications to the Bid Procedures</u>. The Trustee reserves all rights to modify these procedures in his reasonable business judgment in any manner that will best promote the goals of the bidding process and maximize the net value of the Sale Assets, including but not limited to, imposing additional customary terms and conditions on the Sale of the Sale Assets, including, without limitation: (1) adjourning, amending, or extending these Bid Procedures and/or the Sale schedule, any deadline, setting, or time period set forth in these procedures, or by adjourning and continuing the Final Sale Hearing in open court without further notice; (2) reopening the Bid Deadline to consider additional bidding; and (3) terminating the Sale process and/or rejecting any or all bids.

18.   <u>Sale Notice / Sale Objections</u>. Following the Initial Hearing and the Court's approval of the Sale Procedures, the Trustee proposes to file and serve upon all creditors, parties-in-interest, Warrant counterparties (issuers), the United States Trustee, and known interested bidders, his Sale Notice informing parties of the Sale Procedures, the Sale, and Final Sale Hearing in the form attached hereto, and/or as otherwise directed by the Court.

a.   The Trustee requests that any and all objections to the Sale that are not based solely on the identity of the Purchaser, including but not limited to objections based on a purported "right of first refusal" held by the issuer, must be filed and served upon the Trustee **by no later than 5:00 p.m. (Central Time) on January 12, 2024** (the "<u>Sale Objection Deadline</u>"), which is the same deadline proposed under the Sale Procedures for the Cure Objection Deadline. In the event that any such objections are timely filed and served, the Trustee requests (as provided in the proposed Bid Procedures) that such objections be heard at the same setting

proposed for the Executory Contract Hearing so that the Estate and interested parties may have clarity as to such matters substantially prior to the Bid Deadline.

b.  The Trustee further requests that following the Trustee's filing of his notice of the Successful and Bid and Back Up Bid, as provided in the Sale Procedures, that any objection to the Sale, or to the assignment of a Warrant, that is based on the identity of the purchaser must be filed and served upon the Trustee **by no later than 5:00 p.m. (Central Time) on April 1, 2024**.

19.    The Trustee submits that the foregoing proposed notice and schedule are reasonably calculated to provide timely and adequate notice of the Sale Procedures, the Sale, the Cure Objection Deadline, the Sale Objection Deadline, the Executory Contract Hearing, the Final Sale Hearing, and any and all other dates and deadlines incorporated in the Sale Procedures. The Trustee further submits that the proposed Sale Procedures are reasonable and customary under the particular circumstances, are intended in good faith to reasonably and appropriately maximize the value of the Sale Assets and the Estate's interests therein, are in the best interests of the Estate and its creditors and constituencies, and should be approved.

**B.    Applicable Law**

i.    <u>This Court should authorize the Sale of the Sale Assets pursuant to section 363(b)(1) of the Bankruptcy Code.</u>

20.    The sale of the assets of an estate other than in the ordinary course of business may be approved when: (a) there is a sound business reason for the sale; (b) accurate and reasonable notice is provided to interested parties; (c) the price is fair, reasonable, and adequate; and (d) the sale is made to the purchaser in good faith. *See, e.g.*, *Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (In re VCR I, L.L.C.)*, 922 F.3d 323, 326–27 (5th Cir. 2019) (citing *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010)); *In re Stroud Ford, Inc.,* 163 B.R. 730, 732 (Bankr. M.D. Pa. 1993).

21.     The Trustee is entitled to use his business judgment in determining whether to sell assets outside of the ordinary course of business. *See Institutional Creditors of Cont'l Air Lines Inc. v. Cont'l Air Lines Inc.* (*In re Cont'l Air Lines Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986); *In re JL Building, LLC*, 452 B.R. 854, 859 (Bankr. D. Utah 2011).  Accordingly, the proposed Sale should be authorized pursuant to section 363 if a sound business purposes exists. *See ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re WBQ P'ship,* 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).

22.     The paramount goal in any proposed sale of property of the Estate is to maximize the proceeds received by the Estate. *See, e.g.*, *In re Moore*, 608 F.3d at 263 (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353 (1985)) ("A trustee has the duty to maximize the value of the estate."); *Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (noting that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the Debtor's duty with respect to such sales is to obtain the highest price or overall greatest benefit possible for the estate.").

23.     Here, the Bankruptcy Case has been converted.  The Warrants must be sold as soon as possible if the Estate is to preserve what is currently anticipated to be substantial equity in the (continually expiring) Warrants.  Conversely, if this Motion is not approved, then the risk to the Estate of a total loss of its Sale Assets becomes exponentially greater due to the potential expiration of the Estate's Warrants.

24.     Moreover, the customary Sale Procedures are designed to promote competition among good faith bidders and the applicable market and to maximize the value of the Sale Assets in the time available to the Estate.  Indeed, the Trustee and the Sale Agent have already received inquiries of interest from what appear to be good faith, arm's-length potential buyers.

25.     The proposed Sale is within the Trustee's reasonable business judgment, and the Sale Procedures should be authorized.

    ii.     <u>The Court should authorize the assumption and assignment of the Warrants.</u>

26.     The Trustee is also entitled to use his business judgment in determining whether to assume executory contracts.  A trustee, "subject to the court's approval, may assume or reject any executory contract . . . of the debtor."  11 U.S.C. § 365(a).   A trustee's decision to assume an executory contract should be approved by the Court if that decision is supported by a sound business reason, with due deference to the trustee's business judgment.  *See Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) (citing *NLRB v. Bildisco*, 465 U.S. 513, 523 (1984)) (providing that the business judgment standard is traditionally applied by courts when deciding if a debtor-in-possession may assume or reject pursuant to section 365(a)); *In re Chesapeake Energy Corp.*, 622 B.R. 274, 280 (Bankr. S.D. Tex. 2020); *Orion Pictures Corp. v. Showtime Networks Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).  A trustee's decision to assume should be accepted, "except upon a finding of bad faith or gross abuse of the trustee's business discretion."  *In re TM Vill., Ltd.*, 598 B.R. 851, 859 (Bankr. N.D. Tex. 2019) (citing *Lubrizol Enters. Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985)).

27.     The majority of courts, including in the Fifth Circuit, hold that option contracts, such as the Warrants, are executory contracts.  *See, e.g.*, *Matter of Jackson Brewing Co.*, 567 F.2d

618, 620 (5th Cir. 1978) (discussing and affirming bankruptcy court's approval of rejection of option as burdensome executory contract); *Wootton v. Young Family Tr. (In re Dixon)*, 1993 WL 117806, at *1 (5th Cir. Mar. 25, 1993) (*citing Jackson Brewing*, 567 F.2d 618) (observing that "an unexercised stock option is an 'executory' contract within the meaning of § 365(a)"). *See also In re Spoverlook, LLC*, 551 B.R. 481, 486 (Bankr. D.N.M. 2016) (citing 4 Collier on Bankruptcy, ¶ 507.06[5] (16th ed. 2010) ("Most courts have nevertheless construed the option as an executory obligation for purposes of § 365."); *In re RoomStore, Inc*., 473 B.R. 107, 112–13 (Bankr. E.D. Va. 2012) (quoting *Lubrizol Enters.*, 756 F.2d at 1046) ("[A] contingent obligation, even though not yet triggered on a debtor's petition date, is nevertheless executory until expiration of the contingency because '[u]ntil the time has expired during which an event triggering a contingent duty may occur, the contingent obligation represents a continuing duty to stand ready to perform if the contingency occurs.'"); *In re Elkowni*, 318 B.R. 605, 608 (Bankr. M.D. Fla. 2004); *In re Riodizio, Inc*., 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("Here, the Warrant is executory; each party must perform under the Warrant in order to obtain the benefits under the contingent bilateral contract of sale.").[6]

28.      Due to the specific nature and express terms of the Warrants comprising the Sale Assets, the Trustee does not anticipate the allowance of any cure amounts.  The Sale Asset Warrants, as options held by the Debtor to purchase certain securities of the issuing companies

---

[6]      The minority of courts that have found otherwise rely primarily on a 1998 opinion from the Ninth Circuit, which held that contingent obligations at the time of filing did not satisfy the "Countryman" definition for executory contracts. *See In re Robert L. Helms Constr. & Dev. Co., Inc.*, 139 F.3d 702, 705 (9th Cir. 1998).  More recently, however, even the Ninth Circuit has expressed a willingness to move away from the "Countryman" test to the more flexible approach adopted by other courts. *See, e.g.*, *In re Eutsler*, 585 B.R. 231, 236 (B.A.P. 9th Cir. 2017) (citing Jay Lawrence Westbrook & Kelsi Stayart White, *The Demystification of Contracts in Bankruptcy*, 91 Am. Bankr. L.J. 481 (2017)) (observing that there is " powerful argument in favor of a 'modern contract approach' to executory contracts" because "the Countryman definition turns on factors that have little if anything to do with the underlying policies of bankruptcy law and produce anomalous results in some cases").

according to specified pricing, give rise to no affirmative payment or maintenance obligations on the part of the Debtor unless and until exercised. The Sale Asset Warrants are expressly independent of, and expressly survive, any termination or voiding of the issuer's customer or "member" agreement with the Debtor (unless terminated at the inception of the customer's participation in the Debtor's accelerator program). Accordingly, all of the Sale Asset Warrants listed under **Exhibit "1"** attached to the Sale Procedures are listed with "$0.00" proposed cure amounts.

        iii.    <u>The Trustee may assume and assign a Warrant, notwithstanding any purported rights of first refusal.</u>

29.    Section 365(f) of the Bankruptcy Code permits the Trustee to override any Warrant provisions that chill or discourage assignment. *See* 11 U.S.C. § 365(f). To the extent that any of the Warrants listed as Sale Assets incorporates a purported right of first refusal potentially entitling the issuer to match any proposed Sale of the Warrant, such a right would absolutely operate as a restriction on the assignability of the contract by the Estate. The majority of courts agree that such purported rights of first refusal impose and constitute unenforceable restrictions on assignability of contracts under section 365(f) of the Bankruptcy Code. *See In re Off. Prods. of Am., Inc.*, 136 B.R. 992, 997 (Bankr. W.D. Tex. 1992) (citing *In re Mr. Grocer, Inc.*, 77 B.R. 349, 355 (Bankr. D.N.H. 1987)) ("Cases construing § 365(f) confirm that lease provisions designed to impede a tenant's ability to assign an executory contract or unexpired lease by requiring consent or imposing economic impediments to assignment will not be given effect to bar or discourage assignment when the tenant is the trustee in bankruptcy."). *See also Mr. Grocer*, 77 B.R. at 352 ("It is hard to imagine any restriction or condition upon assignment of a lease more clearly within the legislative language than a lease provision which not only directly refers to assignment of the lease, but also further provides that any assignment is conditioned upon the landlord first having a right of first

17

refusal to take the leasehold interest away from the prospective assignee.").  As stated by the

Bankruptcy Court in *In re Adelphia Communications Corporation*:

> Among the types of provisions that have been held to be unenforceable under
> section 365(f) are rights of first refusal, and for good reason.  They always 'restrict'
> assignment—one of the three types of scenarios that result in invalidation under
> section 365(f).  And in many (though not all) circumstances, rights of first refusal
> will do so in a fashion that materially impairs the estate's ability to maximize value
> for its creditors when it markets its assets, which often consist of (partly or entirely)
> executory contracts.

359 B.R. 65, 86 (Bankr. S.D.N.Y. 2007) (*citing Mr. Grocer,* 77 B.R. at 355).  Indeed, the Trustee

has not managed to formulate any potential sale procedures that would permit the exercise of such

purported rights in a practically feasible manner, and certainly not without unduly restricting and

limiting the Estate's ability to sell the assets.

30.     First is the very real concern that bidding interest in any Warrant is likely to be

chilled where bidders are faced with the reality that any prevailing bid may be matched and

overridden by the issuer of the Warrant and would therefore be less inclined to expend and invest

time and resources to conduct due diligence and otherwise explore the potential transaction.

31.     Even leaving this issue aside, allowing multiple issuers of warrants to exercise

purported rights of first refusal would destroy the Estate's flexibility and ability to maximize the

Sale results by marketing the Sale Assets in flexible lots and to potentially aggregate multiple bids

for different Sale Assets (*i.e.*, bids that are not exclusive of each other) into a single Successful

Bid (or Back Up Bid).  For example, if, following the Bid Deadline, the Trustee were to identify a

Successful Bid that includes a proposal to acquire multiple Warrants, allowing the exercise of

corresponding rights of first refusal would be practically impossible.  If each underlying Warrant

issuer is afforded the opportunity to match only the portion of the Successful Bid that is allocable

to the issuer's specific Warrant, this creates the risk and likelihood that an aggregate, very

beneficial Successful Bid would be defeated by only one Warrant issuer exercising a purported right of first refusal and agreeing to match only a portion of the bid that corresponds to its specific Warrant; and that is not even possible without allocating the Successful Bid among the individual Warrants to be purchased. Conversely, if rights of first refusal instead require the issuer to match the aggregate structure of the Successful Bid to acquire multiple Warrants, the unanswerable question then becomes: which right of first refusal prevails? Put another way, where there are multiple holders asserting a right to match the Successful Bid permitting their exercise would simply produce multiple equivalent, "matching" bids that the Estate has no ability to distinguish. It would be impossible to distinguish the matching issuers without reopening competitive bidding, which would then place the Estate in a perpetual loop (with each issuer asserting the right to match any offer accepted by the Trustee, and so on and so forth).

32.     The only manner in which rights of first refusal can conceivably be practically administered under these circumstances is to preserve them for subsequent exercise, to the extent valid, which the proposed Sale Procedures already do, or to require the Estate to sell each Warrant individually and under a single lot. This latter approach, however, is plainly tantamount to a severe and impractical restriction on assignability of the Estate's assets, where the Estate would be forced, for no other reason, to incur the enormous and insurmountable delay and expense of conducting as many as **3,000–5,000 individual sales** (the approximate number of Warrants in the Debtor's portfolio), and subject all potential bidders to the risk of preemptive matching, in order to liquidate its assets.

## C.     Good Faith Purchaser

33.     The proposed Sale Procedures under this Motion are designed to ensure a fair, publicly available process for the Sale. Due to pre-existing expressions of interest indicating the

potential for substantial market competition, there is no proposed stalking horse bidder. Accordingly, the Trustee will request at the Final Sale Hearing that the Successful / Back Up Bidder be afforded the protections under section 363(m) of the Bankruptcy Code as a good faith purchaser.

**D.     No Stay of Order**

34.     Due to the Estate's interests in liquidating its property as soon as reasonably possible, the Trustee further requests, pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, that this Court waive the fourteen (14) day automatic stay of any Order granting this Motion and approving the Sale Procedures as well the requested Final Sale Order and provide that all relief granted therein be immediately available upon the entry of such orders.

## IV.     <u>CONCLUSION</u>

WHEREFORE, the Trustee respectfully requests this Court's entry of an order, substantially in the form attached hereto as **<u>Exhibit "C"</u>**: (i) granting this Motion; (ii) approving the Sale Procedures; and (iii) scheduling the Final Sale Hearing to consider entry of the Final Sale Order authorizing the Trustee to close the Sale with the Successful Bidder / Back Up Bidder in the form attached as **<u>Exhibit "4"</u>** to the Sale Procedures, and granting such other and further relief as the Court may deem just and proper.

Dated: November 20, 2023

Respectfully submitted,

By: */s/ Jay H. Ong*
    Jay H. Ong
    Texas Bar No. 24028756
    Thanhan Nguyen
    Texas Bar No. 24118479
    MUNSCH HARDT KOPF & HARR, P.C.
    1717 West 6th Street, Suite 250
    Austin, Texas 78703
    Telephone: (512) 391-6100
    Facsimile: (512) 391-6149
    Email:    jong@munsch.com
              anguyen@munsch.com

**Counsel For Randolph N. Osherow, Chapter 7 Trustee**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 20th day of November 2023, he personally caused true and correct copies of the foregoing pleading, together with all exhibits thereto, to be served by electronically filing it with the Court using the Court's CM/ECF system, which sent notification to the parties listed on the attached matrix.

By: */s/ Thanhan Nguyen*
    Thanhan Nguyen, Esq.

| Category | Party | via CM/ECF |
|---|---|---|
| Debtor | ASTRALABS, Inc. | chip.lane@lanelaw.com |
| Chapter 7 Trustee | Randolph N. Osherow | rosherow@hotmail.com; jong@munsch.com; anguyen@munsch.com |
| U.S. Trustee | United States Trustee | shane.p.tobin@usdoj.gov |
| Notice of Appearance | 3423 Holdings, LLC | lfancher@fritzbyrne.law |
| Notice of Appearance | AFCO Credit Corporation | dmondragon@reedsmith.com |
| Notice of Appearance | Andrew Ryan | rsatija@haywardfirm.com |
| Notice of Appearance | Apex Funding Source, LLC | skaminski@kaminskilawpllc.com |
| Notice of Appearance | Athletes to Athletes | thelottfirm@gmail.com |
| Notice of Appearance | Capitol Vending and Coffee Company | cleveland.burke@hklaw.com |
| Notice of Appearance | Casey Melcher | ssather@bn-lawyers.com; gsiemankowski@bn-lawyers.com |
| | Hasan Ugur Koyluoglu | |
| | Matthew Kelly | |
| | Thomas Dolezal | |
| Notice of Appearance | Chad Owen | gsiemankowski@bn-lawyers.com |
| | Chaisson-Browne LLC | |
| | Daniel Smith | |
| | David Fisher | |
| | Eric Lee | |
| | Glenn Hunter | |
| | J333 Ventures LLC | |
| | Jeremy Phillips | |
| | Marc Russell | |
| | Marco Frabotta | |
| | Nihar Patel | |
| | Shaila Patel | |
| Notice of Appearance | Elizabeth Bradford | nathan@rosslawgroup.com |
| | Sara Wadud | |
| Notice of Appearance | TX Comptroller of Public Accounts | bk-jstern@oag.texas.gov |