## ACCELERATOR WARRANT

THIS WARRANT AND THE SECURITIES ISSUABLE UPON EXERCISE OF THIS WARRANT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY APPLICABLE STATE SECURITIES LAWS AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS THERE IS AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS COVERING ANY SUCH TRANSACTION OR UNLESS THE CORPORATION SHALL HAVE RECEIVED AN OPINION OF ITS COUNSEL THAT REGISTRATION OF SUCH SECURITIES UNDER THE SECURITIES ACT AND UNDER THE PROVISIONS OF APPLICABLE STATE SECURITIES LAWS IS NOT REQUIRED.

This Warrant (the "**Warrant**"), dated as of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ is by and between Newchip LLC, ("**Accelerator**" also referred to as "**Holder**"), and Member Company that has applied and is receiving Membership to a "Accelerator Program" per the terms of Accelerator Membership Agreement (the "**Membership Agreement**") and shall initially expire 24 months (the "**Warrant Period**") from the Effective Date of Membership Agreement. In consideration for admission into the Accelerator Program, the parties hereto agree as follows:

**1.    Investment Rights.**  Holder shall have the right to invest up to $250,000 USD in aggregate warrants in the Company in exchange for securities of the Company pursuant to either:

Option 1.  If the Company has an open Qualified Financing with Signature Commitments of AT LEAST 25% of the Maximum Offering Amount as of date of this Warrant, Holder may at its option invest in the current or any future Qualified Financings during the Warrant Period, at the same terms and rights (including any rights and privileges granted to the lead investor(s) in the form of a side letter agreement in connection with the open Qualified Financing, as applicable) offered under the Qualified Financing, open as of the date of this Warrant; or

Option 2.  If the Company has an open Qualified Financing but DOES NOT have Signature Commitments of at least 25% of the Maximum Offering Amount as of the date of this Warrant, Holder may at its option invest in the open Qualified Financing under the same terms and rights (including any rights and privileges granted to the lead investor(s) in the form of a side letter agreement in connection with the open Qualified Financing, as applicable) offered in the latest Tier 2 Qualified Financing that has closed within 90 days prior to the date of this Warrant; however, if no such Tier 2 Qualified Financing occurred within the above timeframe, the investment rights revert back to those in Option 1 (i.e. if you recently closed a round of >$499K USD or more within 90 days and have started a new round, we have the right to invest at the previous round terms until you have reached over 25% in commitments in the new round – for example if you only have closed a Friends and Family or Angel Round of <$500K USD within 90 days prior, we would not receive those terms and Option 2 is not an option); additionally Option 2 is only applicable until you raise at least 25% in commitments, then Option 1 supersedes; or

Option 3. If the Member DOES NOT qualify for Option 1 or Option 2 as of the date of this Warrant, the valuation shall be determined by the next Qualified Financing subject to the following:

> (a) In the case of a priced equity Qualified Financing, the valuation shall be the greater of either (i) a twenty percent (20%) Discount Price of the price per share or (ii) one and a half times (1.5X) the highest discount offered to investors in respective Qualified Financing; or (b) in case of convertible security Qualified Financing at the greater of either (i) a twenty percent (20%) discount or (ii) one and a half times (1.5X) the highest discount offered to investors in respective Qualified Financing.

2. **Information Rights.**  During the Warrant Period, the Member shall deliver to Holder (a) such information the Member furnishes to prospective investors in connection with any Qualified Financing during the Warrant Period, (b) within one hundred eighty (180) days after the end of each fiscal year of the Member, the annual (to the extent audited, if available) financial statements of the Member, (c) within forty-five (45) days after the end of each of the first three quarters of each fiscal year, the Member's quarterly, unaudited financial statements, as applicable, and (d) any such information relating to the financial condition, business or corporate affairs of the Member as Holder may from time to time reasonably request; *however*, the Member will not be obligated to provide information (i) that it deems in good faith to be a trade secret or similar confidential information or (ii) the disclosure of which would adversely affect the attorney-client privilege between the Member and its counsel. Any breach, non-compliance or non-performance of this Section 2 by the Member, shall result in an automatic extension of the Warrant Period to 10 years, commencing from the initial date of this Warrant.

3. **Follow-On Investment.**  Any time after Holder has made an (initial) investment in the Member in accordance with Section 1 herein, Holder shall have the right, during the Warrant Period, to make a follow-on investment in any subsequent Qualified Financing of the Member at the same terms and conditions offered in such Qualified Financing (a "**Follow-On Investment**"). The Follow-On Investment amount shall not exceed two (2) times the (initial) investment amount made under Section 1 herein. This Follow-On Investment right shall not negatively affect or diminish any other pro-rata (participation) rights granted to Holder under any other agreements.

4. **Change of Control & Automatic Exercise.**  In the event of a Change of Control, Holder shall be deemed to have made an automatic net exercise investment, without remittance of payment, in the Member in accordance with Section 1 herein for the total remaining investment amount under this Warrant, immediately prior to the consummation of such Change of Control transaction, unless the automatic net exercise investment would result in an actual cost basis greater than the net proceeds that would be received by Holder. For the avoidance of any doubt, if the actual cost basis would exceed the net proceeds under such an automatic net exercise investment, Holder shall not be deemed to have made an automatic next exercise investment in the Member. To the extent exclusively stock is issued as a form of consideration in connection with a Change of Control transaction, Holder shall be deemed to have elected shares of common stock as a form of consideration in connection with the Change of Control transaction, to the extent possible. In case of an option to elect between cash and stock consideration in connection with a Change of Control transaction, Holder shall be deemed to have elected cash consideration, to the extent possible. If any automatic net exercise investment occurs pursuant to this Section 4, Member shall notify Holder as soon as reasonably practicable, but in any event immediately after the consummation of such Change of Control transaction. Additionally, Member will notify Holder of any and all proposed change of control events in relation to Holder's rights under Section 2.

5. **Covenants of the Member.**

   a. **Covenants as to Conversion of Member.**  If the Member is organized as a Limited Liability Company, or other entity other than a C Corporation, as of the date of this Warrant, the Member covenants and agrees to convert into a C corporation within the Warrant Period.**b. Covenants as to Notices.**  The Member covenants and agrees to inform Holder regarding every Qualified Financing the Member conducts during the Warrant Period, but in any event immediately prior to the commencement of any such Qualified Financing.

   c. **Covenants as to Course Completion.**  The Member covenants and agrees to complete all Graduation Requirements for the Accelerator as defined in the Membership Agreement.

   d. **Violation of Covenants.**  Any breach, non-compliance or non-performance of the covenants

and agreements contained by the Member, shall result in an automatic extension of the Warrant to a total Warrant Period of 10 years, commencing from the initial date of this Warrant.

**6.     Representations and Warranties.**

    **a.     Representations by the Member.**  The Member represents and certifies that this Warrant has been duly authorized, is validly issued, and constitutes a valid and binding obligation of the Member.

    **b.     Representations by Holder.**  Holder represents that it is acquiring the Warrant for its own account for investment purposes and not with the view to any immediate resale or distribution, that Holder will not offer, sell or otherwise dispose of the Warrant except under circumstances that will not result in a violation of applicable securities laws. Holder understands that the Warrant has not been registered under the Securities Act of 1933 (the "**Securities Act**") or any state securities law, by reason of their issuance in a transaction exempt from registration requirements of the Securities Act and such laws, that the Warrant must be held indefinitely unless it is subsequently registered under the Securities Act and such laws or a subsequent disposition thereof is exempt from registration, and that the Warrant and shall bear a legend to such effect.

**7.     Transfer**.  Subject to compliance with applicable federal and state securities laws and any other contractual restrictions between the Member and Holder contained in this Warrant, this Warrant and any securities issued upon (automatic) exercise of this Warrant are freely transferable in whole or in part by Holder to any person or entity, including, but not limited to affiliates. The Warrant Holder upon transfer of the Warrant shall deliver to the Member a duly executed Assignment Form in the form attached hereto as Exhibit B to Warrant, and upon surrender of this Warrant to the Member, the Member shall execute and deliver a new Warrant, which shall have all of the rights of the initial Holder hereunder, with appropriate changes to reflect such assignment, in the name or names of the assignee or assignees specified in the Assignment Form or other instrument of assignment and shall record the transfer on its books. Upon the Member's execution and delivery of such new Warrant, this Warrant shall promptly be canceled. Before any securities held by Holder may be sold or otherwise transferred (including by operation of law), the Holder must provide the Member with a right of first refusal to purchase the securities. If the Member elects not to purchase the securities back, then Holder shall be allowed to continue with the transfer transaction. All transactions in this Section 7 are subject to a Right of First Refusal by Member. The right of first refusal does not apply to a transfer by Holder to a wholly-owned subsidiary or other affiliated entity.

**8.     Successors and Assigns.**  The terms and provisions of this Warrant shall inure to the benefit of, and be binding upon, the Member and the Holders hereof and their respective successors and assigns.

**9.     Warrant Termination**.  Within the first six (6) months as of the date of this Warrant, the Member may terminate this Warrant by paying the full amount of 5x the Resource Fee. The Member, *however*, may not terminate this Warrant during a period in which the Member (i) solicits, initiates, or encourages the submission of any proposal or offer from any person relating to any transaction deemed a Change of Control or (ii) participates in any discussions or negotiations regarding, furnishes any information with respect to, assists or participates in, or facilitates in any other manner any effort or attempt by any person to effectuate a transaction being deemed a Change of Control. For clarity, the Member shall regain its right to terminate the Warrant, if the Member ceases any conduct as set forth in (i) and (ii) of the preceding sentence so long as the termination occurs within the first six (6) months as of the date of this Warrant.

**10.     No Fractional Shares**.  No fractional shares, in any form, shall be issued upon the exercise of this Warrant, and any calculation resulting in fractional shares shall be rounded down to the nearest whole number.

**11.     Governing Law**.  This Warrant shall be governed by and construed under the laws of the State of Delaware without regard to conflict of laws rules, and in regards to international law; the laws and regulations of the United States of America as applicable.

**12.     Titles and Subtitles**.  The titles and subtitles used in this Warrant are used for convenience only and are not to be considered in construing or interpreting this Warrant.

**13.     Notices**.  All notices and other communications given or made pursuant hereto shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail, and if not so confirmed, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to the respective parties at the following addresses (or at such other addresses as shall be specified by notice given in accordance with this Section 13):

   **If to the Member:**

   **If to Holder:** Newchip Accelerator, 1401 Lavaca St. PMB 40433, Austin, TX 78701, E-mail: investing@newchip.com

**14.     Amendments and Waivers**.  This Warrant and any term hereof may be amended, changed, waived, discharged or terminated only by an instrument in writing signed by the party against which enforcement of such amendment, change, waiver, discharge or termination is sought.

**15.     Severability.**  If any term or provision of this Warrant is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Warrant or invalidate or render unenforceable such term or provision in any other jurisdiction.

**16.     Loss, Theft, Destruction or Mutilation of Warrant.**  Upon receipt of evidence reasonably satisfactory to the Member of the loss, theft, destruction or mutilation of this Warrant and, in the case of loss, theft or destruction, delivery of an indemnity agreement reasonably satisfactory in form and substance to the Member or, in the case of mutilation, on surrender and cancellation of this Warrant, the Member shall execute and deliver, in lieu of this Warrant, a new Warrant executed in the same manner and with the same terms and conditions as this Warrant.

**17.     Definitions.**

   **a.     Change of Control**" shall mean the occurrence of any of the following events: (i) the acquisition of the Member by another entity by means of any transaction or series of related transactions (including, without limitation, any reorganization, merger or consolidation or stock transfer, but excluding any such transaction effected primarily for the purpose of changing the domicile of the Member), unless the Member's stockholders of record immediately prior to such transaction or series of related transactions hold, immediately after such transaction or series of related transactions, at least fifty percent (50%) of the voting power of the surviving or acquiring entity (provided that the sale by the Member of its securities for the purposes of raising additional funds shall not constitute a Change of Control hereunder), and (ii) a sale, assignment, exclusive license, lease or other disposition or transfer of all or substantially all of the assets of the Member.

   **b.     **"Discount Price**" shall mean the product of (i) the lowest price per share of capital stock sold in a Qualified Financing and (ii) 80% (a 20% discount).

   **c.     **"Maximum Offering Amount**" shall mean the amount of funds equal to the maximum dollar

amount that is initially set by the Member in a Qualified Financing.

**d.** "**Qualified Financing**" shall mean any round of equity financing (including any convertible debt, convertible preferred stock or other equity-linked derivative security financing) in a single or series of related transactions, from which the Company receives gross proceeds of at least $100,000 USD cash or cash equivalent in the aggregate.

**e.** "**Signature Commitments**" shall mean the amount of committed investor dollars via executed securities/share purchase agreements relating to an offering of securities.

**f.** **Tier 2 Qualified Financing**" shall mean any round of equity financing (including any convertible debt, convertible preferred stock or other equity-linked derivative security financing) in a single or series of related transactions, from which the Member receives gross proceeds of at least $500,000 USD cash or cash equivalent in the aggregate.

[*Signature page follows*]

**IN WITNESS WHEREOF**, the parties have executed this Warrant as of the date first written above.

| **MEMBER COMPANY** |
| --- |
| ▉▉▉▉▉▉▉▉▉▉▉▉▉ |
| /s/ |
| **MEMBER REPRESENTATIVE** |
| ▉▉▉▉▉▉▉▉▉▉▉▉▉ |

**ACKNOWLEDGED AND AGREED**:

**HOLDER**

NEWCHIP ACCELERATOR

| ANDREW RYAN |
| --- |
| *[signature]* |
| CHIEF EXECUTIVE OFFICER |

**EXHIBIT A TO WARRANT**

**WARRANT NOTICE OF EXERCISE**
*(FOR HOLDER USE)*

Company Name: _____

Attention Representative: _____

The undersigned hereby elects to purchase, pursuant to the provisions of the Accelerator Warrant (the "**Warrant**"), as follows:

_____ shares, or other security, of the Member pursuant to the terms of the attached Warrant, and tenders herewith $_____ USD payment in cash pursuant to Option ___ of Section 1 of the Warrant, together with all applicable transfer taxes, if any.

The undersigned hereby represents and warrants that the shares are being acquired for the account of the undersigned for investment and not with a view to, or for resale, in connection with the distribution thereof, and that the undersigned has no present intention of distributing or reselling such shares and all representations and warranties of the undersigned set forth in the Warrant are true and correct as of the date hereof.

|  |  |  |
|---|---|---|
|  | HOLDER:_____ |  |
| Date: _____ | By: | _____ |

|  |  |  |
|---|---|---|
|  | Address: | _____ |
|  |  | _____ |
|  |  | _____ |

|  |
|---|
| Name in which Shares should be registered: _____ |
| Name in which new Warrant for the unexercised portion of the Warrant should be registered, if applicable: _____ |

## EXHIBIT B TO WARRANT

## WARRANT ASSIGNMENT FORM
### *(FOR HOLDER USE)*

**FOR VALUE RECEIVED**, the foregoing Warrant and all rights evidenced thereby are hereby assigned to:

| Name: | | _____ |
|---|---|---|
| | | |

| Address: | | _____ |
|---|---|---|
| | | _____ |

Dated: _____

Holder's Signature: _____

Holder's Address: _____

**NOTE**:  The signature to this Assignment Form must correspond with the name as it appears on the face of the Warrant.

## EXHIBIT C TO WARRANT

### ACTION BY UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS
### *(SEE SECTION (I) - PARAGRAPH (12) - CLAUSE (d) FOR INSTRUCTIONS)*

Pursuant to Section 141(f) of the Delaware General Corporation Law and the bylaws of _____ , a Delaware corporation (the "**Company**"), the undersigned, constituting all the members of the board of directors of the Company (the "Board"), hereby adopt the following

resolutions:

### *Issuance of Warrant*

**WHEREAS**, the Board deems it to be in the best interests of the Company and its stockholders to issue to Newchip LLC, a warrant to purchase securities issued by the Company, in the form of Exhibit A attached to this Agreement.

**NOW, THEREFORE, BE IT RESOLVED**: That the form, terms and provisions of the Warrant are hereby approved, adopted and confirmed.

**RESOLVED FURTHER**: That the securities purchasable upon exercise of the Warrant (the "**Warrant Stock**") and any preferred or common stock issuable upon conversion thereof are hereby set aside and reserved for issuance.

**RESOLVED FURTHER**: That the Warrant Stock and any securities issuable upon conversion thereof shall be validly issued, fully paid and nonassessable when issued in accordance with the terms of the Warrant and the Company's Certificate of Incorporation, and the issuance of such securities is hereby approved.

**RESOLVED FURTHER:** That the valuation, valuation cap, and/or discount the Warrant Stock set forth is hereby approved and deemed to be fair and reasonable to the Company's stockholders.

**RESOLVED FURTHER:** That the appropriate officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to execute and deliver the Warrant to Newchip LLC or its assignees.

**RESOLVED FURTHER:** That the appropriate officers of the Company be, and each of them hereby is, authorized and directed, for and on behalf of the Company, to execute and submit any and all documents to comply with all applicable state and federal securities laws in connection with the issuance of the securities contemplated hereby.

### *Omnibus Resolutions*

**RESOLVED**: That the officers of the Company be, and each of them hereby is, authorized and empowered to take any and all such further action, to execute and deliver any and all such further agreements, instruments, documents and certificates and to pay such expenses, in the name and on behalf of the Company or such officer, as any such officer may deem necessary or advisable to effectuate the purposes and intent of the resolutions hereby adopted, the taking of such actions, the execution and delivery of such agreements, instruments, documents and certificates and the payment of such expenses by any such officer to be conclusive evidence of his or her authorization hereunder and the approval thereof.

**RESOLVED FURTHER**: That any and all actions taken by the officers of the Company to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified and confirmed.

This action by unanimous written consent shall be effective as of the date the Company receives the unanimous consent of the Company's directors, however, it acknowledges and effect and will be legally back-dated to the date of effective agreement of the original agreement if not attached originally at time of original membership agreement to Accelerator. This action by unanimous written consent may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action. Any copy, facsimile or other reliable reproduction of this action by written consent may be substituted or used in lieu of the original writing for any and all purposes for which

the original writing could be used. This action by unanimous written consent shall be filed with the minutes of the proceedings of the board of directors of the Company.

Signature: _____

Date: _____

| Program | Qty | Sale price | Product price | Line total | Tax | Percentage tax | Total (inc. tax) |
|---|---|---|---|---|---|---|---|
| INT - The Series A to Exit Program™ + 12 Months Membership SKU: 8746-1-3 | 1 | $12,000.00 | $12,000.00 | $12,000.00 | $0.00 | 0% | $12,000.00 |

| | |
|---|---|
| **Subtotal Discount inc.** | $12,000.00 |
| Discount | - $0.00 |
| **Total** | **$12,000.00** |

Accelerator

Ryan Rafols

Customer Signature