## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-10164-smr |
| ASTRALABS, INC., | § | |
| | § | Chapter 7 |
| Debtor. | § | |

**NOTICE OF ENTRY OF ORDER (I) APPROVING NOTICE, SALE, AND EXECUTORY CONTRACT PROCEDURES FOR SALE OF DESIGNATED SECURITIES WARRANTS, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; AND (II) SCHEDULING FINAL SALE HEARING**

**TO ALL PARTIES IN INTEREST, PLEASE TAKE NOTICE THAT:**

Pursuant to a hearing held on December [●], 2023, the United States Bankruptcy Court for the Western District of Texas has entered in the above-captioned, chapter 7 bankruptcy case ("Bankruptcy Case") an order (the "Sale Procedures Order") approving the *Motion (I) for Authority to Sell Designated Securities Warrants, Free and Clear of All Liens, Claims, and Encumbrances; (II) for Approval of Notice, Sale, and Executory Contract Procedures; and (III) to Set Final Hearing to Approve Sale and Good Faith Designation to Prevailing Purchaser(s)* [Docket No. ●] (the "Sale Motion"), filed by Randolph N. Osherow, not individually but in his capacity as the duly appointed chapter 7 trustee (in such capacity, the "Trustee"), for and on behalf of ASTRALABS, Inc., d/b/a "Newchip" (the "Debtor"), and its bankruptcy estate (the "Estate").

**PLEASE TAKE FURTHER NOTICE THAT:**

The Sale Procedures Order approves certain procedures (the "Sale Procedures"), attached hereto, pursuant to which the Trustee may sell (the "Sale") all of the Debtor's and Estate's interests in those certain securities warrants listed on **Exhibit "1"** to the Sale Procedures (the "Warrant Schedule"), subject to the Bankruptcy Court's final approval of the purchaser(s) and proposed Sale at the Final Sale Hearing.[1]

---

[1] Capitalized terms used and not otherwise defined herein have those same meanings as set forth in the Sale Procedures Order, and if none, then as set forth in the Sale Motion.

**PLEASE TAKE FURTHER NOTICE THAT:**

All interested bidders should carefully read the Sale Motion, the Sale Procedures, and the Sale Procedures Order.  If there are any inconsistencies between the Sale Procedures and the summary descriptions contained in this notice, the terms of the Sale Procedures shall control. Copies of the Sale Motion, Sale Procedures, and Sale Procedures Order are available upon written request made to the undersigned.

**PLEASE TAKE FURTHER NOTICE THAT:**

The Warrant Schedule constitutes the Trustee's and Estate's schedule of (putative) executory contracts that may be assumed by the Trustee and assigned to the purchaser(s) in connection with the Sale, together with the amount required to be paid, if any, to cure outstanding defaults under such contracts as a condition of assumption (each, a "Cure Amount").  Any objections to the Sale that are not based solely on the identity of the purchaser(s)/assignee(s), including but not limited to: (a) any proposed Cure Amount listed for any contracts in the Warrant Schedule, (b) the assumption or assignment of any contract by the Trustee on behalf of the Estate, or (c) any purported "right of first refusal" held by the issuer, must (i) be in writing, (ii) state the bases for objection, including any required cure amount (if applicable), and (iii) be filed and served on the Trustee **by no later than 5:00 p.m. (Central Time) on January 12, 2024**.

**PLEASE TAKE FURTHER NOTICE THAT:**

Any person or entity that is interested in submitting a bid and becoming a Qualified Bidder should contact the Trustee's Sale agent and investment banker ("Sale Agent"), as follows:

> Chad Harding
> Managing Partner
> PEAK Technology Partners, LLC
> 135 Main Street, Suite 1300
> San Francisco, California 94105
> E-mail: chad@peak-tech.com
> Tel: (801) 835-9000

The deadline to submit a Bid under the Sale Procedures, is **5:00 p.m. (Central Time) on March 19, 2024**.

**PLEASE TAKE FURTHER NOTICE THAT:**

The Final Sale Hearing shall be conducted on **April [8–12], 2024, at** [**##:## a.m./p.m.**] **(Central Time)**, live and **in-person**[2] before the Honorable Shad M. Robinson, United States Bankruptcy Judge, at the United States courthouse located at the Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Boulevard, Third Floor, Courtroom 1, Austin, Texas 78701.

Dated: December [●], 2023                           Respectfully submitted,

                                                   By:  */s/ Jay H. Ong*
                                                       Jay H. Ong
                                                       Texas Bar No. 24028756
                                                       Thanhan Nguyen
                                                       Texas Bar No. 24118479
                                                       MUNSCH HARDT KOPF & HARR, P.C.
                                                       1717 West 6th Street, Suite 250
                                                       Austin, Texas 78703
                                                       Telephone: (512) 391-6100
                                                       Facsimile: (512) 391-6149
                                                       Email:     jong@munsch.com
                                                                  anguyen@munsch.com

                                                       **Counsel for Randolph N. Osherow, Chapter 7 Trustee**

---

[2]     Information on attending the hearing remotely by WebEx or telephone can be found on the Court's website: https://www.txwb.uscourts.gov/honorable-shad-m-robinson-us-bankruptcy-judge.

# SALE PROCEDURES[1]

1.  <u>Sale Assets</u>.  All of the Debtor's and its bankruptcy estate's ("<u>Estate</u>") interests in and to those certain securities warrants listed on **Exhibit "1"** hereto and incorporated herein by reference for all purposes (each a "<u>Warrant</u>" and collectively, the "<u>Sale Assets</u>").

2.  <u>Executory Contracts</u>.  To the extent that any of the Sale Assets constitute executory contracts for purposes of the Bankruptcy Code,[2] the Trustee intends to assume same and assign them to the buyer(s) of the Sale Assets (collectively, the "<u>Purchaser</u>"), to the extent designated by the Purchaser, pursuant to 11 U.S.C. § 365.  The list of Sale Assets attached hereto comprises the list of executory contracts that may be assumed by the Estate and assigned to a Purchaser pursuant to the Sale.  Any and all such Warrants listed as Sale Assets shall be available for potential assumption by the Estate and assignment to the Purchaser, at its election, unless the Court sustains an objection thereto, and subject to the payment of any and all required obligations to cure existing defaults.  **There are no other executory contracts or unexpired leases potentially implicated by the Sale**.

    a.  **Exhibit "1"** hereto also lists any known cure amounts, if any, applicable to each such Warrant and has been served upon all non-debtor contract parties thereto.  For the avoidance of doubt, the Trustee believes and asserts that there is no cure amount applicable to any Warrant.  Any party objecting to the assumption or assignment of a Warrant as an executory contract, other than an objection based solely on the identity of the Purchaser (*i.e.*, the proposed assignee), must file and serve upon the Trustee a written objection stating the bases for its objection and any required cure amount **by no later than 5:00 p.m. (Central Time) on January 12, 2024** (the "<u>Cure Objection Deadline</u>").

    b.  In the event a timely objection is filed to the assumption and/or assignment of a Warrant as an executory contract, other than an objection based solely on the identity of the Purchaser (*i.e.*, the proposed assignee), a hearing shall be held to consider and resolve such objection(s), before the United States Bankruptcy Court, live and **in-person**[3] before the Honorable Shad M. Robinson, United States Bankruptcy Judge, at the United States courthouse located at the **Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Boulevard, Third Floor, Courtroom 1, Austin, Texas 78701, on January [22–26], 2024, at [##:## a.m. / p.m.] (Central Time)** (the "<u>Executory Contract Hearing</u>").

    c.  It shall be entirely the obligation of the Purchaser to pay or otherwise resolve any and all such cure amounts, solely to the extent allowed by the Bankruptcy Court, as a

---

[1]  Capitalized terms used and not otherwise defined herein have those same meanings as set forth in the Sale Procedures Order, and if none, then as set forth in the Sale Motion.

[2]  Title 11, United States Code, §§ 101 *et seq*., (as amended, the "<u>Bankruptcy Code</u>").

[3]  Information on attending the hearing remotely by WebEx or telephone can be found on the Court's website: https://www.txwb.uscourts.gov/honorable-shad-m-robinson-us-bankruptcy-judge.

c. It shall be entirely the obligation of the Purchaser to pay or otherwise resolve any and all such cure amounts, solely to the extent allowed by the Bankruptcy Court, as a condition of receiving assignment of any such contracts, without any adverse impact on its obligations to close its Successful Bid or Back Up Bid (as such terms are defined herein), as the case may be, without any reduction of the purchase price or any contribution from the Trustee or Estate, and no matter how such requested assumption and assignment is resolved, whatsoever.

d. <u>Rights of First Refusal</u>.  To the extent a Warrant included as a Sale Asset incorporates a purported "right of first refusal" held by the issuer, such as but not limited to any asserted right to match and supersede any Successful Bid, Back Up Bid, or Sale to the Purchaser, no such rights of first refusal shall be exercisable or enforceable in connection with these Bid Procedures or the Sale; *provided, however*, that any assignment of any Warrant by the Estate pursuant to the Sale shall expressly be *cum onere*, together with, and including, any and all related provisions, rights, and obligations, including any right of first refusal, but solely to the extent valid and enforceable under applicable law.

3. <u>Bid Deadline</u>: **5:00 p.m. (Central Time), on March 19, 2024**, except as may otherwise be agreed to by the Trustee, including through his Sale Agent, in the Trustee's sole and exclusive discretion.

4. <u>Bidder Qualifications</u>.  By no later than the Bid Deadline, all interested bidders must qualify according to these Sale Procedures ("<u>Qualified Bidders</u>"), through and with the Sale Agent, and as determined by the Trustee, through his Sale Agent, in his sole discretion. In order to qualify as a Qualified Bidder, the putative bidder must, by no later than the Bid Deadline, provide to the Sale Agent: (1) an executed Non-Disclosure Agreement in the format attached hereto as **Exhibit "2"** and incorporated herein by reference for all purposes, as a condition of receiving due diligence access; and (2) an initial $10,000.00 earnest money deposit ("<u>Deposit</u>") by check or wire, in immediately available cash.  After receiving, reviewing, and evaluating the foregoing from a potential bidder, or upon written request, the Sale Agent will use its commercially reasonable efforts to promptly confirm to the bidder its status as a Qualified Bidder or outstanding items required to be completed or corrected in order for the bidder to qualify as a Qualified Bidder.

5. <u>Qualified Bids</u>.  Subject to the procedures set forth herein, Qualified Bidders may bid on all Warrants in the aggregate, any Warrant individually, or any combination of Warrants. Qualified Bidders may make multiple, alternate Qualified Bids.  To be a Qualified Bid, a bid must be in writing, delivered to the Sale Agent by no later than the Bid Deadline, and:

(i) be in the form of the Asset Purchase Agreement approved by the Bankruptcy Court and available upon request from the Sale Agent or Trustee's counsel ("<u>APA</u>"), a true and correct copy of which is attached hereto as **Exhibit "3"**, and include a redline showing all changes made to the form of APA under the bid;

(ii) expressly identify the Sale Asset Warrant(s) that the Qualified Bidder seeks to purchase and have assigned to the Purchaser;

(iii)    be entirely irrevocable and unconditional with respect to financing or any other approval, authorization, or contingency, save for Bankruptcy Court authorization;

(iv)    include the Qualified Bidder's commitment and agreement, if approved as Successful Bidder or Back Up Bidder (as such terms are defined herein), to close its approved bid by no later than 5:00 p.m. (Central Time) on the first business date that is thirty (30) days following entry of the Final Sale Order;[4]

(v)    increase the Qualified Bidder's Deposit to the amount that is at least 10% of the Qualified Bidder's aggregate bid amount;[5] and

(vi)    provide to the Sale Agent satisfactory written information demonstrating the Qualified Bidder's financial capability to close the transaction proposed under its bid, which satisfactory evidence may be comprised of (a) recent sworn financial statements of the Qualified Bidder and/or its direct or indirect equity interest holder(s), (b) confirmation of available funds on deposit, or (c) such other evidence as may be reasonably satisfactory as determined by the Trustee, including through his Sale Agent, in the Trustee's sole discretion.

6.    <u>Due Diligence; "as is / where is"</u>.  Due to the particular circumstances of this Estate, the Sale shall be "as is / where is" with the Purchaser taking all Sale Assets subject to any and all existing defenses, faults, and defects, ***other than*** asserted cure amounts required under 11 U.S.C. § 365, and without: (i) any representation or warranty from the Trustee or Estate (which is, and shall be, expressly disclaimed by the Trustee and Estate in the APA) as to (A) the validity, effectiveness, or legal enforceability of any Warrant, (B) the remaining exercise period (if any) and/or exercise price under any Warrant, (C) the current or potential future value of any Warrant or of any underlying securities of the issuer of any Warrant for which such Warrant is exercisable, (D) the condition of any Warrant, or (E) the current or future potential financial condition and/or business prospects of any issuer of any Warrant; or (ii) any right to redress or reduction whether on account of any exceptions or matters discovered in the course of due diligence or otherwise.  The Trustee and Sale Agent shall reasonably cooperate in providing to Qualified Bidders available due diligence disclosures of information in the Trustee's and Estate's actual possession, including but not limited to data room access; *provided, however*, that the Trustee makes no assurance of the availability or accuracy of any particular due diligence disclosures nor shall any interested bidder shall be entitled to any such assurance.

In particular, as provided in the required form of APA: (i) the Purchaser will be required to make customary and standard securities laws representations and warranties, including without limitation that (A) it is a sophisticated and knowledgeable investor, (B) it is an

---

[4]    A true and correct copy of the proposed Final Sale Order is attached hereto as **Exhibit "4"** and incorporated herein by reference for all purposes.

[5]    Where the Qualified Bidder's original Deposit already equals or exceeds 10% of its bid, no increase shall be required in order to render its bid a Qualified Bid, but nor shall any downward adjustment be permitted (other than potential refunding as provided in these Sale Procedures).

"accredited investor" (as that term is defined in Regulation D promulgated by the Securities and Exchange Commission), (C) it is able to bear the economic risk of an investment in the Warrant(s) being acquired by it, and (D) it is acquiring Warrant(s) (and any underlying securities) for its own account for investment and not with the view toward resale or redistribution; and (ii) the Trustee is and shall be under no obligation to make disclosures regarding any Warrant(s) or any Warrant issuer(s) under applicable non-bankruptcy law, including, without limitation, under any applicable state and/or federal securities laws, but rather, each and every Qualified Bidder, and the Purchaser, is required to rely exclusively on its own consultants, advisors, counsel, employees, agents, principals, and/or information, studies, investigations, and/or inspections with respect to any Warrant, its condition, value, and potential.

7.   <u>Determination of Highest and Best Qualified Bid(s)</u>.  In consultation with the Sale Agent, the Trustee has determined in his reasonable business judgment that a public auction procedure is neither practicable nor likely to lead to the highest and best aggregate, net Sale results for the Estate.  Accordingly, **no auction shall be conducted following the expiration of the Bid Deadline**.  Rather, bidders are encouraged to submit their highest and best Qualified Bids as soon as reasonably possible, which will maximize the Sale Agent's opportunity to review and evaluate bids and inform Qualified Bidders of bid defects to the extent practicable and as provided above.  Bidders should also submit their highest and best Qualified Bids as soon as reasonably possible in order to maximize the Sale Agent's opportunities to confer with the Qualified Bidder, in the Sale Agent's discretion, as to the Qualified Bidder's Qualified Bid and the Sale Agent's current prognosis as to the Qualified Bid's likelihood of being selected as, or as among, the highest and best Qualified Bid(s) received by the Estate.  Notwithstanding the foregoing, the Trustee, including through his Sale Agent, makes no assurance or commitment that the Sale Agent will confer with or provide any particular information to a Qualified Bidder as to the Qualified Bid's likelihood of being selected as, or as among, the highest and best Qualified Bid(s) received by the Estate, and *provided, however,* that the Trustee and Sale Agent shall not unduly discriminate against any particular bidder.

a.   Following the Bid Deadline, the Trustee shall, in consultation with the Sale Agent and in the Trustee's sole discretion, determine: (i) the Qualified Bid or combination of Qualified Bids that constitutes the highest and best Qualified Bid(s) received (collectively, the "<u>Successful Bid</u>"); and (ii) the Qualified Bid or combination of Qualified Bids that constitutes the next highest and best Qualified Bid(s) received (collectively, the "<u>Back Up Bid</u>").

b.   By no later than March 25, 2024, the Trustee, shall notify the Qualified Bidder(s) who made the Successful Bid (collectively, the "<u>Successful Bidder</u>") as well as the Qualified Bidder(s) making the Back Up Bid (collectively, the "<u>Back Up Bidder</u>"), and file notice of same for the Court's approval at the Final Sale Hearing.

c.   Any objection to the Sale or to the assignment of a Warrant based on the identity of the purchaser must be filed and served upon the Trustee **by no later than 5:00 p.m. (Central Time) on April 1, 2024**.

4

8.    <u>Final Sale Hearing</u>.  A hearing to finally approve and authorize the Sale with the Successful Bidder and/or Back Up Bidder, as applicable, shall be held before the United States Bankruptcy Court, live and **in-person**[6] before the Honorable Shad M. Robinson, United States Bankruptcy Judge, at the United States courthouse located at the **Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Boulevard, Third Floor, Courtroom 1, Austin, Texas 78701, on April [8–12], 2024, at [__ a.m. / p.m.] (Central Time)**.

9.    <u>Closing</u>.  If any Successful Bidder does not close the Sale **by no later than 5:00 p.m. (Central Time) on the first business date that is thirty (30) days following entry of the Final Sale Order**, the Trustee shall retain such Successful Bidder's Deposit, entirely and as damages for the benefit of the Estate and for all purposes, and the Trustee may, in his sole discretion, notify the Back Up Bidder and proceed to close the Back Up Bid with the Back Up Bidder, as Purchaser.

   a.   In such event, if any Back Up Bidder does not close the Sale **by no later than 5:00 p.m. (Central Time) on the first business date that is fifteen (15) days following the Trustee's notice to the Back Up Bidder**, the Trustee shall retain such Back Up Bidder's Deposit, entirely and as damages, for the benefit of the Estate and for all purposes.

   b.   In the event there are multiple Qualified Bidders / proposed Purchasers whose Qualified Bids have been aggregated or combined under, and as, the Successful Bid or the Back Up Bid, and fewer than all of the Qualified Bidders / proposed Purchasers under such Successful Bid or Back Up Bid, as applicable, fail to close the Sale as required under these Sale Procedures, the Trustee, in his sole discretion, may nevertheless determine to proceed with closing the Sale, or the remainder of the Sale, with the remaining, non-defaulting Successful Bidders or Back Up Bidder(s), in the Trustee's sole discretion.

10.   <u>Deposits</u>.  The Deposit amount applicable to a prevailing bid shall be credited towards the applicable purchase price obligations of the Successful Bidder (or Back Up Bidder, as applicable) at closing.  The Deposit of each Qualified Bidder that is not selected as a Successful Bidder or Back Up Bidder shall be refunded by the Trustee within three (3) business days following the completion of the Final Sale Hearing; *provided, however*, that the Deposit of the Back Up Bidder shall be returned within three (3) business days following the closing of the Sale to the Successful Bidder.  Notwithstanding the foregoing, in the event that any Successful Bidder or Back Up Bidder fails to timely close the Sale as required under these Sale Procedures, other than for a reason determined by the Court to be entirely beyond the bidder's control, then such Successful Bidder or Back Up Bidder's Deposit, as applicable, shall automatically be entirely forfeited and retained by the Trustee for the benefit of the Estate, as damages.

---

[6]   Information on attending the hearing remotely by WebEx or telephone can be found on the Court's website: https://www.txwb.uscourts.gov/honorable-shad-m-robinson-us-bankruptcy-judge.

a. In the event there are multiple Qualified Bidders / proposed Purchasers whose bids have been aggregated or combined under the Successful Bid or Back Up Bid, only the defaulting Successful Bidder(s) or Back Up Bidder(s), as applicable, shall forfeit its (or their) Deposit(s).

b. Any Successful Bidder or Back Up Bidder who is not afforded the opportunity to close the Sale due to the default of another Successful Bidder or Back Up Bidder, as applicable, shall receive a refund of its Deposit where the Court determines that the failure to close was entirely beyond its reasonable control. In the event a Successful Bidder or Back Up Bidder defaults on its obligations to timely close the Sale as required under these Bid Procedures, any Deposit of a non-defaulting Successful Bidder and/or Back Up Bidder shall be refunded within three (3) business days of the earlier of: (i) the closing of the Sale, if agreed by the Trustee; and (ii) the Court's determination that the failure to close was entirely beyond the bidder's reasonable control.

11. <u>Modifications to the Bid Procedures</u>. The Trustee reserves all rights to modify these procedures in his reasonable business judgment in any manner that will best promote the goals of the bidding process and maximize the net value of the Sale Assets, including but not limited to, imposing additional customary terms and conditions on the Sale of the Sale Assets, including, without limitation: (i) adjourning, amending, or extending these Bid Procedures and/or the Sale schedule, any deadline, setting, or time period set forth in these procedures, or by adjourning and continuing the Final Sale Hearing in open court without further notice; (ii) reopening the Bid Deadline to consider additional bidding; and (iii) terminating the Sale process and/or rejecting any or all bids.

12. <u>Contacts</u>.

a. <u>Sale Agent</u>. Chad Harding, PEAK Technology Partners, LLC, 135 Main Street, Suite 1300, San Francisco, California 94105, E-mail: chad@peak-tech.com; Telephone: (801) 835-9000.

b. <u>Trustee's Counsel</u>. Thanhan Nguyen, Munsch Hardt Kopf & Harr, P.C., 1717 West 6th Street, Suite 250, Austin, Texas 78703, E-mail: anguyen@munsch.com; Telephone: (512) 391-6100.

**<u>Exhibit "1"</u>**

**Sale Assets / Executory Contract Schedule**

**Exhibit 1**

Sale Assets / Executory Contract Schedule

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 1 | 1 Clique Systems<br>Ayman Badawi<br>Boutique Villa #in5, Knowledge Village<br>Dubai, United Arab Emirates | | ayman@1cliquesystems.com | February 6, 2021 | $0.00 |
| 2 | 11422049 Canada Inc. d/b/a Cxsphere<br>25 Watline Ave<br>Mississauga ON L4Z 2Z1, Canada | | sudipta@cxsphere.com | June 30, 2021 | $0.00 |
| 3 | 11Sight<br>Aleks Gollu<br>2363 Carquinez Ave #301<br>El Cerrito, CA 94530 | 11Sight<br>1927 Cedar St<br>Berkeley, CA 94709 | farokh@11sight.com;<br>eren@11sight.com | January 21, 2021 | $0.00 |
| 4 | 21strategies GmbH<br>Yvonne Hofstetter<br>Marchenbacher Str. 12<br>85406 Zolling, Germany | 21strategies GmbH<br>Lilienthalstraße 27<br>85399 Hallbergmoos, Germany | yhofstetter@21strategies.com;<br>yvonne.hofstetter@21strategies.com;<br>yvonne@hedge21.com | January 25, 2021 | $0.00 |
| 5 | 6Degrees LTD<br>Miri Berger<br>Dvora HaNevi'a 119<br>Tel Aviv, 6944039, Israel | 6Degrees LTD<br>Building 2, Dvora HaNevi'a<br>Tel Aviv, 6972619, Israel | mb@6degrees.tech | December 11, 2020 | $0.00 |
| 6 | 8 Myles d/b/a Myles Comfort Food<br>1369 New York Ave NE<br>Washington, DC 20002 | 8 Myles d/b/a Myles Comfort Food<br>1751 Pinnacle Dr<br>McLean, VA 22102 | myles@8myles.com | May 14, 2021 | $0.00 |
| 7 | Accelery, LLC<br>Lenwood Ross<br>64 Cobane Terrace<br>West Orange, NJ 07052 | Accelery, LLC<br>551 Valley Rd<br>Montclair, NJ 07043 | lross@accelery.com | October 31, 2020 | $0.00 |
| 8 | ACE Green Recycling<br>Nishchay Chadha<br>10 Woodleigh Cl<br>Singapore 357905 | ACE Green Recycling<br>1 Magazine Rd<br>Central Mall<br>Singapore 059567 | nishchay.chadha@acerecycling.net | October 27, 2020 | $0.00 |
| 9 | Adelante Shoe Co.<br>Peter Sacco<br>1770 Massachusetts Ave<br>Cambridge, MA 02140 | | peter@adelanteshoes.com | November 4, 2020 | $0.00 |
| 10 | Aeromechs srl<br>Beniamino Guida<br>Via Parente, 10<br>80131 Aversa CE, Italy | | beniamino.guida@aeromechs.eu | January 21, 2021 | $0.00 |
| 11 | Aerostrovilos energy Pvt. Ltd<br>Rohit Grover<br>IIT Madras Research Park<br>Chennai, Tamil Nadu 600113, India | Aerostrovilos energy Pvt. Ltd<br>TRI3D, 3rd Floor, D block Phase II<br>IIT Madras Research Park<br>Chennai, Tamil Nadu 600113, India | rohit@aerostrovilos.com | January 26, 2021 | $0.00 |
| 12 | Affective Markets<br>Dan Gang<br>Derech Hayam 13/13<br>Ganne Tiqwa, 55900, Israel | Affective Markets<br>1628 Bowling Ln<br>San Jose, CA 95118 | dan@affectivemarkets.com;<br>dan.gang@affectivemarkets.com | November 30, 2020 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 13 | Afocusedpath<br>PO Box 3736<br>Memphis, TN 38173 | Afocusedpath<br>99 North Main St<br>Memphis, TN 38103 | rdeberry@afocusedpath.com | July 8, 2021 | $0.00 |
| 14 | AgShift<br>Miku Jha<br>1762 Technology Dr Ste 211<br>San Jose, CA 95110 | AgShift<br>650 Town Centre Dr<br>Costa Mesa, CA 95110 | naveen@coinage.sg | October 30, 2020 | $0.00 |
| 15 | AiDLT Global LTD d/b/a BlockBank<br>Madison Building Midtown<br>Queesnway, GX111AA, Gibraltar | AiDLT Global LTD d/b/a BlockBank<br>J. Savickio g. 4-7<br>03108 Vilnius, Lithuania | maksim@blockbank.ai | February 21, 2023 | $0.00 |
| 16 | Aikido Finance d/b/a STRATxAI<br>Shane Monks O'Byrne<br>Windy Ridge, Quarry Road Rathmichael<br>Dublin, D18 E8C6, Ireland | Aikido Finance d/b/a STRATxAI<br>Rathkip, Ballina<br>Mayo, F26 KX86, Ireland | paul@aikido.finance;<br>shane@aikido.finance | January 21, 2021 | $0.00 |
| 17 | Align Money Inc d/b/a Digital Align<br>Rajesh Patil<br>44533 Japala Pl<br>Fremont, CA 94539 | | rajesh@digitalalign.com | November 30, 2020 | $0.00 |
| 18 | Alippo<br>Ayushi Sinha<br>F-1001, Block 13<br>Suncity, Gold Strike, Bellandur 560102<br>Karnataka, India | Alippo<br>Embassy TechVillage, Block L<br>Dr Puneeth Rajkumar Rd<br>Bengaluru, Karnataka 560103, India | ayushi@alippo.com | November 30, 2020 | $0.00 |
| 19 | Allwell Greens<br>Judy Cari<br>26 Broadway, 8th Floor<br>New York, NY 10004 | Allwell Greens<br>3511 Greenpoint Ave<br>New York, NY, 11101 | john.cari@allwellgreens.com | October 27, 2020 | $0.00 |
| 20 | Altis<br>727 NE 3rd Ave<br>Ft Lauderdale, FL 33304 | Altis<br>1401 E Broward Blvd<br>Fort Lauderdale, FL 33301 | jeff@altisai.com;<br>constantine@altisai.com | July 22, 2021 | $0.00 |
| 21 | Amitruck Ltd<br>Mark Mwangi<br>7th Floor, Karlson Towers<br>22 Crescent Rd<br>Nairobi, 00100, Kenya | Amitruck Ltd<br>1st Floor, The Address<br>Muthangari Drive<br>P.O BOX 1320-00606<br>Nairobi, 00100, Kenya | mark@amitruck.com | November 30, 2020 | $0.00 |
| 22 | Amplio.ai<br>43877 Paramount Pl<br>Chantilly, VA 20152 | | trung@amplio.ai | December 9, 2021 | $0.00 |
| 23 | Ancana Living<br>Andres Barrios<br>Acueducto Río Hondo 110-piso 2<br>Miguel Hidalgo, 11000 Ciudad de México, CDMX, | Ancana Living<br>C. Montes Urales 415<br>Miguel Hidalgo, 11000 Ciudad de México, CDMX,<br>Mexico | andres@ancana.co | January 21, 2021 | $0.00 |
| 24 | Aphelion Aerospace<br>5815 W 6th Ave Unit 2D<br>Lakewood, CO 80214 | | mayala@aphelionaerospace.com;<br>miguel.ayala@aphelionaerospace.com | June 2, 2022 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 25 | App4Legal<br>Feras El Hajjar<br>Dubai World Central<br>Dubai, Dubai, United Arab Emirates | App4Legal<br>954 Lexington Ave<br>New York, NY 10021 | connect@app4legal.com;<br>felhajjar@app4legal.com | November 30, 2020 | $0.00 |
| 26 | Applied Autonomy<br>Olav Madland<br>Kirkegata 4<br>3616 Kongsberg, Norway | Applied Autonomy<br>Kongsberg Technology Park<br>Kirkegårdsveien 45<br>3616 Kongsberg, Norway | olav.madland@appliedautonomy.no | October 27, 2020 | $0.00 |
| 27 | Apres Beverages LLC d/b/a Cask & Kettle<br>62 E Michigan Ave<br>Battle Creek, MI 49017-4006 | | lucinda@caskandkettleusa.com;<br>william@caskandkettleusa.com | February 11, 2021 | $0.00 |
| 28 | AquaLith Advanced Materials Inc.<br>4467 Technology Dr<br>College Park, MD 20742 | | gregory@aqualith.net | March 15, 2022 | $0.00 |
| 29 | Arya Health Records<br>2305 King Edward Ave W<br>Vancouver BC V6L 1T3, Canada | Arya Health Records<br>200 Granville St<br>Vancouver, BC V6C 1S4, Canada | rvandegriend@aryaehr.com | September 7, 2022 | $0.00 |
| 30 | ASETS-LUX S.a.r.l<br>18 Om Flouer<br>5681 Dalheim, Luxembourg | ASETS-LUX S.a.r.l<br>6A Av. des Hauts-Fourneaux<br>4362 Esch-Belval Esch-sur-Alzette, Luxembourg | ashwini.oke@asetslux.com | March 31, 2021 | $0.00 |
| 31 | AstroReality<br>160 E Tasman Dr<br>San Jose, CA 95134 | AstroReality<br>10121 Miller Ave<br>Cupertino, CA 95014 | joanne@astroreality.com | March 29, 2021 | $0.00 |
| 32 | Audalize Ptd Ltd<br>Ross Woodhams<br>Unit5 / 10 Canning Highway<br>South Perth, Western Australia 6151, Australia | Audalize Pty Ltd<br>12 Graylands Rd<br>Claremont WA 6010, Australia | ross.woodhams@audalize.com.au;<br>ross.woodhams@audalize.co | January 21, 2021 | $0.00 |
| 33 | B89<br>Mauricio Alban-Salas<br>AVD LA PAZ, 528<br>LIMA, Lima, 15000, Peru | | amparo@b89.io;<br>mauricio@b89.io | October 27, 2020 | $0.00 |
| 34 | BallBox<br>Alexander Hejazi<br>1777 Chestnut Pl<br>Denver, CO 80202 | BallBox<br>220 E Illinios St<br>Chicago, IL 60611 | alex@playballbox.com | October 27, 2020 | $0.00 |
| 35 | Bayise Tutor, Inc.<br>38 7th St<br>Rochester, NY 14609 | Bayise Tutor, Inc.<br>519 Central Park<br>Rochester, NY 14609 | contact@bayisetutor.com | July 8, 2021 | $0.00 |
| 36 | Bear's Fruit Kombucha<br>Amy Driscoll<br>67 35th Street<br>Brooklyn, NY 11232 | | amy@bearsfruit.com | November 30, 2020 | $0.00 |
| 37 | BeepQuest<br>Bernardo Mohnblatt<br>Jalapa 17, 5th Floor<br>Roma Nte., Cuauhtémoc<br>06700 Ciudad de México, CDMX, Mexico | | leon@beepquest.com;<br>berny@beepquest.com | November 3, 2020 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 38 | BeeReaders Inc<br>Ruben Arias<br>8121 Bee Cave Rd<br>Austin, TX 78746 | BeeReaders Inc<br>115 Wild Basin Rd S<br>Austin, TX 78746 | ruben.arias@beereaders.com | November 30, 2020 | $0.00 |
| 39 | Benevolently<br>Carson Kelly<br>877 Cedar St Ste 150<br>Santa Cruz, CA 95060 | | carson@carsonkelly.com | October 27, 2020 | $0.00 |
| 40 | BeniPlus Inc.<br>Stephen DeKuyper<br>67 Yonge St #1101<br>Toronto, ON M5E 1J8, Canada | | sbeckett@beniplus.ca | January 21, 2021 | $0.00 |
| 41 | Bestest, LLC<br>Kelly Helmuth<br>5350 Via del Sole<br>Williamsville, NY 14221 | Bestest, LLC<br>400 R St<br>Sacramento, CA 95814 | khelmuth@mybestestapp.com | November 30, 2020 | $0.00 |
| 42 | BetaRisk<br>Ronald Chirochangu<br>16 Austin Ave<br>Bromley BR2 8AJ, United Kingdom | BetaRisk<br>131 Finsbury Pavement<br>London EC2A 1NT, UK | ronald.chirochangu@betarisk.com | November 14, 2020 | $0.00 |
| 43 | Biocanic, Inc.<br>Jeremy Malecha<br>4976 Foothill Blvd<br>San Diego, CA 92109 | | jeremy@biocanic.com | November 30, 2020 | $0.00 |
| 44 | BISEP INC.<br>David D'Angelo<br>4551 Zimmerman Ave #13<br>Niagara Falls, ON L2E 3M5, Canada | | dan@bisep.org | November 30, 2020 | $0.00 |
| 45 | bitewell<br>728 W Jackson Blvd<br>Chicago, IL 60661 | bitewell<br>3660 Blake St<br>Denver, CO 80205 | chris@bitewell.com;<br>sam@bitewell.com | July 31, 2021 | $0.00 |
| 46 | BlockQuake<br>Antonio Brasse<br>110 Wall Street<br>New York, NY 10005 | | antonio.brasse@blockquake.com;<br>samuel.brasse@blockquake.com | December 10, 2020 | $0.00 |
| 47 | BloomCatch Inc.<br>Raymond Magee<br>5806 Deer Pond Rd<br>Centreville, VA 20120 | BloomCatch Inc.<br>PO Box 230292<br>Centreville, VA 20120 | raymond.magee@bloomcatch.com | October 27, 2020 | $0.00 |
| 48 | Bloomfield Robotics<br>Mark DeSantis<br>2026 E Carson Street<br>Pittsburgh, PA 15203 | Bloomfield Robotics<br>3485 Butler St<br>Pittsburgh, PA 15201 | mark@bloomfield.ai;<br>tim@bloomfield.ai | January 21, 2021 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 49 | BlueSemi R&D<br>T-Hub foundation Catalyst<br>hyderabad 500032, Andhra Pradesh, India | BlueSemi R&D<br>T-Hub Phase 2<br>20, Inorbit Mall Rd<br>Vittal Rao Nagar, Madhapur<br>Hyderabad, Telangana 500081, India | sunil@bluesemi.io;<br>sunil.maddikatla@bluesemiconductors.com | August 2, 2021 | $0.00 |
| 50 | Bluespace<br>John Chidiac<br>c/o WeWork<br>27 East 28th Street<br>New York, NY 10016 | | christine@bluespace.ai | November 30, 2020 | $0.00 |
| 51 | Bonding Health<br>7 Hanger Rd<br>Sun Valley, ID 83340 | Bonding Health<br>44 Montgomery St<br>San Francisco, CA 94104 | lara@bondinghealth.com;<br>pen@bondinghealth.com | July 1, 2021 | $0.00 |
| 52 | Brave UP!<br>220 E 23rd St Ste 400<br>New York, NY 10010 | Brave UP!<br>Guardia Vieja 181<br>7510186 Providencia, Región Metropolitana, Chile | felipe.zanoni@braveup.cl | July 22, 2021 | $0.00 |
| 53 | Butler Corporation SPA d/b/a CleanLight<br>Jordan Butler<br>Galvarino 9440-A<br>Quilicura, Región Metropolitana<br>Santiago, Chile | Butler Corporation SPA d/b/a CleanLight<br>Enrique Foster Sur 39, Oficina 701<br>7550203 Las Condes, Región Metropolitana, Chile | jordan@cleanlight.cl | October 27, 2020 | $0.00 |
| 54 | BytaGig LLC<br>John Jackson<br>PO BOX 265<br>Estacada, OR 97023 | | jjackson@bytagig.com | November 30, 2020 | $0.00 |
| 55 | Callido Learning Private Limited<br>Elegant House, Raghuvanshi Mills Compound<br>Mumbai 400013, Maharashtra, India | Callido Learning Private Limited<br>Ground Floor, Raghuvanshi Mills, Senpati Bapat Marg,<br>Mumbai, Maharashtra, 400013, India | sriram@callidolearning.com | December 7, 2021 | $0.00 |
| 56 | Capsul Inc.<br>Tina Cheng<br>840 Apollo St. #100<br>El Segundo, CA 90245 | Capsul Inc.<br>46 Peninsula Center<br>Rolling Hills Estates, CA 90274 | tina@capsuljewelry.com | October 31, 2020 | $0.00 |
| 57 | Care.Life, Inc.<br>1955 Ironton Blvd<br>Provo, UT 84020 | Care.Life, Inc.<br>3000 S Sierra Vis Wy<br>Provo, UT 84606 | etorres@care.life | April 5, 2021 | $0.00 |
| 58 | CARL, INC<br>17 John St, Sixth Floor<br>New York, NY 10038 | CARL, INC<br>17 John St, Sixth Floor<br>New York, NY 10038 | gunnar@investwithcarl.com | June 2, 2022 | $0.00 |
| 59 | CatalystXL, Inc. d/b/a Cardware<br>Dugan Schwalm<br>707 N Wells St<br>Chicago, IL 60654 | CatalystXL, Inc. d/b/a Cardware<br>6001 Cass Ave<br>Detroit, MI 48202 | mark@catalystxl.com | January 21, 2021 | $0.00 |
| 60 | Cenports Commerce Inc.<br>Derrick Chen<br>2530 Berryessa Rd #332<br>San Jose, CA 95132-2903 | Cenports Commerce Inc.<br>1742 Sabre St<br>Hayward, CA 94545 | derrick@cenports.com;<br>hillary@cenports.com;<br>lily@cenports.com | November 30, 2020 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 61 | Centbee<br>16 Baker Street<br>Rosebank, Johannesburg<br>Gauteng, 2196, South Africa | Centbee<br>Fire Station Building, 10th floor<br>16 Baker St<br>Rosebank, Johannesburg, 2196, South Africa | angus@centbee.com;<br>lorien@centbee.com | November 25, 2022 | $0.00 |
| 62 | Chainstarters Cloud Inc<br>Mike Berson<br>777 NW 19th Ave<br>Portland, OR 97209 | | mike@chainstarters.com | December 2, 2020 | $0.00 |
| 63 | CHARGE+ZONE<br>401 Banison Complex<br>Old Padra Rd, Haribhakti Extension<br>Paris Nagar, Diwalipura<br>Vadodara, Gujarat 390007, India | | kartikey.hariyani@chargezone.com | December 16, 2021 | $0.00 |
| 64 | Chilling, Inc.<br>5000 Centregreen Way, Ste 500<br>Cary, NC 27560 | Chilling, Inc.<br>8 The Green<br>Dover, DE, 19901 | christopher@gitlab.com | September 16, 2021 | $0.00 |
| 65 | Chop Barbershop Franchise Inc.<br>Sarah Bolinder<br>7737 Preservation Rd<br>Tallahassee, FL 32312 | Chop Barbershop Franchise Inc.<br>3845 Killearn Ct<br>Tallahassee, FL 32309 | steve@chopbarbershop.com | October 27, 2020 | $0.00 |
| 66 | Circle (Electronics (B2C))<br>Zakariya Niazi<br>260 E Main St<br>Rochester, NY 14604 | | zak@circleoptics.com;<br>zniazi@circleoptics.com | January 21, 2021 | $0.00 |
| 67 | ClasShare<br>2714 Rosedale Ave<br>Raleigh, NC 27607 | | wei@classhare.com | February 12, 2021 | $0.00 |
| 68 | CleanPlan<br>Suite 9/758, Blackburn Road<br>Clayton VIC 3168, Australia | CleanPlan<br>105 Ricketts Rd<br>Mount Waverley VIC 3149, Australia | stuart@cleanplan.com | July 2, 2021 | $0.00 |
| 69 | ClearForce, Inc.<br>8000 Towers Crescent Dr Ste 1525<br>Vienna, VA 22182 | | tmiller@clearforce.com | February 22, 2021 | $0.00 |
| 70 | Clearview Care Inc d/b/a Clearview Home Care<br>Rizwan Habib<br>6615 Sterling Dr<br>Sandy Springs, Georgia, 30328 | Clearview Care Inc d/b/a Clearview Home Care<br>7000 Central Parkway<br>Atlanta, GA, 30328 | rizwan@clearviewhomecare.com | October 27, 2020 | $0.00 |
| 71 | CloudTown Brands<br>Carrer de Joan d'Àustria 86<br>08018 Barcelona, Spain | | miguel@cloudtownbrands.com | February 3, 2023 | $0.00 |
| 72 | CloutHub, Inc.<br>8583 Irvine Center Drive #445<br>Irvine, CA 92618 | | jlemme@clouthub.com | November 12, 2021 | $0.00 |
| 73 | Cmax System inc.<br>Nicolas Garcia Mayor<br>2200 Pennsylvania Ave NW<br>Washington, DC 20037 | Cmax System inc.<br>1101 Pennsylvania Ave NW<br>Washington, DC 20004 | nicolas@cmaxsystem.com | November 30, 2020 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 74 | CodeBoxx Technology Corporation<br>Nicolas Genest<br>1 Harbor Dr Ste 300<br>Sausalito, CA 94965 | | nicolas.genest@codeboxx.biz | November 30, 2020 | $0.00 |
| 75 | CollectiveCrunch<br>Keilaranta 6<br>02150 Espoo, Finland | | cd@collectivecrunch.com;<br>jsonninen@collectivecrunch.com;<br>rs@collectivecrunch.com | January 23, 2023 | $0.00 |
| 76 | College Aid Pro<br>Joseph Messinger<br>6037 Frantz Rd Ste 104<br>Dublin, OH 43017 | College Aid Pro<br>10 Federal St<br>Salem, MA 01970 | joem@collegeaidpro.com | November 30, 2020 | $0.00 |
| 77 | ConnectSx<br>Chris Riedel<br>9301 W 191st St<br>Mokena, IL 60448 | | chris@connectsx.com | November 30, 2020 | $0.00 |
| 78 | Constructo, Inc.<br>Yuri Galeev<br>6414 Samar Dr<br>San Jose, CA 95119 | Constructo, Inc.<br>910 Campisi Way<br>Campbell, CA 95008 | yuri@constructo.online | November 30, 2020 | $0.00 |
| 79 | ControlPoint Inc<br>88 S 4th St<br>Campbell, CA 95008 | | paula@controlpointdx.com | January 24, 2022 | $0.00 |
| 80 | CountN Inc<br>Matthew Yuan<br>399 Boylston St, FL 6<br>Boston, MA 02116 | | matthew.yuan@countnapp.com | October 29, 2020 | $0.00 |
| 81 | Credder Inc.<br>106 EDITH ST UNIT A<br>Petaluma, CA 94952 | Credder Inc.<br>One Sansome St<br>San Francisco, CA 94104 | austin@credder.com;<br>chase@credder.com | February 25, 2021 | $0.00 |
| 82 | CreditStretcher A/S d/b/a Fellow Pay<br>Jacob Vorsø Pedersen<br>Copenhagen Fintech Lab<br>Applebys Plads 7<br>1411 Copenhagen, Denmark | CreditStretcher A/S d/b/a Fellow Pay<br>Applebys Pl. 7<br>1411 København, Denmark | ds@fellowpay.com | November 30, 2020 | $0.00 |
| 83 | Crowded Technologies Inc.<br>1330 Avenue of the Americas<br>New York, NY 10019 | | daniel@bankingcrowded.com;<br>john@crowded.me;<br>liam@crowded.co | November 25, 2021 | $0.00 |
| 84 | Cruz Street<br>Jesse Cruz<br>3055 Cardinal Dr Ste 301<br>Vero Beach, FL 32963 | Cruz Street<br>P.O. Box 690037<br>Vero Beach, FL 32969-0037 | jesse@cruzstreet.com | November 6, 2020 | $0.00 |
| 85 | CubeCab<br>Adrian Tymes<br>2375 Adele Ave.<br>Mountain View, CA 94043 | | atymes@cubecab.com | November 30, 2020 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 86 | DBYDX Technologies Private Limited d/b/a Chatgen.ai Time Square Building Andheri East MUMBAI 400069, Maharashtra, India | DBYDX Technologies Private Limited d/b/a Chatgen.ai A/308, 3rd Floor, Neptune Magnet Mall, Mumbai, Maharashtra, 400042, India | suvindh@chatgen.ai | March 30, 2021 | $0.00 |
| 87 | Deinland Solar Development GmbH Neuer Wall 80 20354 Hamburg, Germany | | hanno@deinland.solar; hs@deinland.solar | November 15, 2022 | $0.00 |
| 88 | DELMIC BV Sander den Hoedt Kanaalweg 4 2628 EB Delft, Netherlands | | hoedt@delmic.com | October 27, 2020 | $0.00 |
| 89 | Diamante Blockchain Holdings Inc 15621 W 87th St Pkwy Lenexa, KS 66219 | Diamante Blockchain Holdings Inc Str. le Grazie, 15 37134 Verona VR, Italy | valentina.garonzi@diamante.tech | February 17, 2023 | $0.00 |
| 90 | DOMICILIALO (Tadosi) CARLOS SUREDA C/ San Millán 12 26142 Villamediana de Iregua La Rioja, Spain | DOMICILIALO (Tadosi) C. de Arturo Soria, 31, Portal B 28027 Madrid, Spain | carlos@domicilialo.es | October 27, 2020 | $0.00 |
| 91 | Domotics RE-Technologies, LLC 23 Catoonah Street Ridgefield, CT 06877 | | jasonl@domoticsre.com; joshl@domoticsre.com; michael@domoticsre.com | February 28, 2023 | $0.00 |
| 92 | Dope Dog Erin Mastopietro 7192 Formosa Fusion Ct Los Angeles, CA 90046 | Dope Dog 7111 Santa Monica Blvd West Hollywood, CA 90046 | michael@dope.dog; erin@dope.dog | November 30, 2020 | $0.00 |
| 93 | Dr. B Dental Solutions 1521 Alton Rd, 329 Miami, FL 33139 | Dr. B Dental Solutions 407 Lincoln Rd Miami, FL 33139 | drb@drbdentalsolutions.com; jpberland@drbdentalsolutions.com | September 12, 2022 | $0.00 |
| 94 | Dream Harvest Ltd Justin French 86 Gloucester Road Brighton, East Sussex BN1 4AP, United Kingdom | | justinfrench@dreamharvest.co.uk | November 30, 2020 | $0.00 |
| 95 | Earth Cubs Limited 92 Penwortham Road London, SW16 6RJ, United Kingdom | | jon@earthcubs.com; toby@earthcubs.com | November 26, 2021 | $0.00 |
| 96 | Easy Eat Pte Ltd Wassem Mohammad 38th Floor, Mercu 2, No.3 Jalan Bangsar, Kampung Haji Abdullah Hukum Kuala Lumpur, 59200, Malaysia | Easy Eat Pte Ltd 160 Robinson Rd Singapore 068914 | wassem@easyeat.ai | November 30, 2020 | $0.00 |
| 97 | Easy Eat Pte. Ltd. 160 Robinson Road #23-08 SBF Center 068914, Singapore | | wassem@easyeat.ai | March 28, 2023 | $0.00 |
| 98 | Edsoma Inc. 2021 Eagles Ridge Dr Brock, TX 76087 | Edsoma Inc. 7500 W Interstate 20 Weatherford, TX 76088-8201 | bluechip@edsoma.com; kyle@edsoma.com | February 3, 2022 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 99 | EirSystems Inc<br>Ryan Seaberg<br>844 East 4th St 2nd Floor<br>Chattanooga, TN 37403 | EirSystems Inc<br>100 W Martin Luther King Blvd<br>Chattanooga, TN 37402 | rseaberg@eirsystems.net;<br>tseaberg@eirsystems.net | November 30, 2020 | $0.00 |
| 100 | Elevateapp, llc d/b/a Reju<br>1401 New York Ave NE Apt 377<br>Washington, DC 20002 | | awarrick@getelevateapp.com | July 8, 2021 | $0.00 |
| 101 | Elifinty<br>Maysam Rizvi<br>152-160 City Road<br>London, EC1V 2NX, United Kingdom | Elifinty<br>124 City Rd<br>London EC1V 2NX, UK | maysam@elifinty.com;<br>maysam.rizvi@elifinty.com | December 7, 2020 | $0.00 |
| 102 | E-liza Dolls<br>605 Ohlone Ave Apt 636<br>Albany, CA 94706 | | eliza@elizadolls.com | November 8, 2022 | $0.00 |
| 103 | Ember Fund<br>12130 Millennium Dr<br>Los Angeles, CA 90094 | | alex@emberfund.io;<br>guillaume@emberfund.io;<br>hayden@emberfund.io;<br>mario@emberfund.io | November 6, 2021 | $0.00 |
| 104 | emoquo<br>1 Rectory Cottages<br>East End, East Woodhay<br>Newbury, RG20 0AJ, United Kingdom | emoquo<br>The Studio<br>1 Rectory Cottages<br>East End, East Woodhay, Newbury RG20 0AJ, UK | jim.bailey@emoquo.com;<br>tim.aston@emoquo.com | February 16, 2022 | $0.00 |
| 105 | Equa<br>Shawn Owen<br>3601 W 97th Ave<br>Westminster, CO 80031 | Equa<br>1499 W 120th Ave<br>Westminster, CO 80234 | josh.jacobson@equa.global;<br>sten@equa.global | November 30, 2020 | $0.00 |
| 106 | Esca Technologies Ltd<br>26 Killucan Manor Cres<br>Rathwire Upper, Killucan<br>Co. Westmeath, N91 NY77, Ireland | Esca Technologies Ltd<br>Harcourt Rd<br>Saint Kevin's, Dublin D02 HW77, Ireland | hello@esca.finance | March 16, 2022 | $0.00 |
| 107 | Ethale Publishing Lda<br>Via Romana 21<br>06012, Citta di Castello, PERUGIA, Italy | Ethale Publishing Lda<br>AV. Vladimir Lenine nr, Maputo, 2195, Mozambique | info@ethalebooks.com | April 9, 2021 | $0.00 |
| 108 | eTip.io<br>595 Pacific Ave<br>San Francisco, CA 94133 | | nicolas@etip.io;<br>robert@etip.io | October 26, 2021 | $0.00 |
| 109 | ETLrobot<br>14203 Minuteman Drive<br>Draper, UT 84020 | ETLrobot<br>1782 Tuscalee Way<br>Draper, UT 84020 | gickling@etlrobot.com;<br>steve@etlrobot.com | May 27, 2021 | $0.00 |
| 110 | Eventboost<br>Corso S. Gottardo 14<br>6830 Chiasso, Switzerland | | aferne@eventboost.com;<br>fbondi@eventboost.com | February 18, 2022 | $0.00 |
| 111 | Evitado Technologies<br>Harburger Schloßstraße 6-12<br>21079 Hamburg, Germany | | alex.kasinec@evitado.io | June 9, 2022 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 112 | EvoAId Kft.<br>Árpádföldi út 90-1162<br>Budapest, 1162 Hungary | | gergo.nagy@evoaid.com | June 23, 2022 | $0.00 |
| 113 | ExeBoard<br>Andres Rodriguez<br>Via 4, 1-00 zona 4<br>Campus Tec 1, Of. 607<br>Guatemala, Guatemala, 01004, Guatemala | | andres@exeboard.com | November 30, 2020 | $0.00 |
| 114 | EXOS Aerospace Systems & Technologies, Inc.<br>John Quinn<br>299 FM 1903<br>Greenville, TX 75402 | | dmitchell@exosaero.com | November 30, 2020 | $0.00 |
| 115 | Exo-Space, Inc.<br>484 E California Blvd<br>Pasadena, CA 91106 | | carol.craig@sidusspace.com | July 25, 2022 | $0.00 |
| 116 | Eze Technologies Inc<br>4943 McConnell Ave Ste W<br>Los Angeles, CA 90066 | | david@ezewholesale.com;<br>josh@ezewholesale.com | July 5, 2022 | $0.00 |
| 117 | Fabalish<br>Paul Majcherczyk<br>186 Maple Ave<br>Wallington, NJ 07057 | | jessica@fabalish.com;<br>paul@fabalish.com | November 30, 2020 | $0.00 |
| 118 | Fairspectrum Oy<br>Itäinen Pitkäkatu 4<br>20520 Turku, Finland | Fairspectrum Oy<br>Saukonpaadenranta 4 B 30<br>00180 Helsinki, Finland | heikki.kokkinen@fairspectrum.com | May 17, 2021 | $0.00 |
| 119 | FanFood<br>Carson Goodale<br>116 W Hubbard St Ste 38<br>Chicago, IL 60654 | FanFood<br>540 N Dearborn St<br>Chicago, IL 60620 | carson@fanfoodapp.com | November 30, 2020 | $0.00 |
| 120 | Filmplace HQ Pte Ltd<br>Lincoln Lin<br>6 Raffles Blvd<br>Marina Square, 039594, Singapore | Filmplace HQ Pte Ltd<br>2 Orchard Link<br>Singapore 237978 | lincoln.lin@filmplace.co | November 30, 2020 | $0.00 |
| 121 | FIN Compliance<br>Cory Roberson<br>2950 Buskirk Ave Ste #300<br>Vallejo, CA 94591 | FIN Compliance<br>2950 Buskirk Ave<br>Walnut Creek, CA 94597 | cory@fincompliance.io | November 30, 2020 | $0.00 |
| 122 | Firehawk Aerospace<br>949 First St SE<br>Washington, DC 20003 | Firehawk Aerospace<br>4550 Excel Pkwy<br>Addison, TX 75001 | will@firehawkaerospace.com | February 15, 2021 | $0.00 |
| 123 | FirstMate Services<br>221 Claude St<br>Annapolis, MD 21401 | FirstMate Services<br>209 West St<br>Annapolis, MD 21401 | jhemingway@firstmateservices.com | May 15, 2021 | $0.00 |
| 124 | Fit Mix<br>Kevin Mathis<br>224 Valle Alto Dr. NE<br>Rio Rancho, NM 87124 | Fit Mix<br>1380 Rio Rancho Blvd<br>Rio Rancho, NM, 87124 | kmathis@fitmixonline.com | November 30, 2020 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 125 | Flickstree Productions Pvt Ltd<br>Saurabh Singh<br>A 814-16 Kailas Business Park<br>Jogeshwari - Vikhroli Link Rd<br>Hiranandani Gardens<br>Vikhroli West, Mumbai, Maharashtra 400079, India | | nagender.sangra@flickstree.com;<br>saurabh@flickstree.com | December 28, 2022 | $0.00 |
| 126 | FLITE Material Sciences US Inc.<br>6 Liberty Square #524<br>Boston, MA 02143 | FLITE Material Sciences US Inc.<br>7460 Av. Glenwood<br>Montréal, QC H3R 2T1, Canada | dan.cohen@flite.tech | October 10, 2022 | $0.00 |
| 127 | FLYX Entertainment Inc.<br>25 Hazelwood Ave<br>Livingston, NJ 07039 | | shashank@flyx.me | June 30, 2021 | $0.00 |
| 128 | Framey<br>2nd Floor<br>156 Wellington St<br>Central, Hong Kong | | robert@framey.io | November 30, 2020 | $0.00 |
| 129 | FreightPal Inc.<br>Chris Dominguez<br>3940 Laurel Canton Blvd Ste #1195<br>Studio City, CA 91604 | FreightPal Inc.<br>2656 Skywin Way<br>Los Angeles, CA 90046 | chris@freightpal.com | January 21, 2021 | $0.00 |
| 130 | FuelingAround<br>503 Crystal Green Mews<br>Okotoks AB T1S 2K6, Canada | FuelingAround<br>2 Winters Way<br>Okotoks, AB T1S 1W9, Canada | trent@fuelingaround.com | March 31, 2021 | $0.00 |
| 131 | Fullcast.io<br>16710 NE 79th Pl, Ste 202<br>Redmond, WA 98052 | | dharmesh@fullcast.io | February 9, 2021 | $0.00 |
| 132 | FULLYOPS - PROCESS DIGITALISATION, LDA<br>Rua Santos Pousada<br>4000-534 Porto, Portugal | FULLYOPS - PROCESS DIGITALISATION, LDA<br>Rua de Santos Pousada 441<br>4000-487 Porto, Portugal | catia.goncalves@fullyops.com;<br>pedro.morgado@fullyops.com;<br>ricardo.borga@fullyops.com;<br>ricardo.oliveira@fullyops.com | July 7, 2022 | $0.00 |
| 133 | Fundamentally Games<br>Ella Romanos<br>3rd Floor, 86-90 Paul St<br>London EC2A 4NE, UK | | ella@fundamentally.games;<br>oscar@fundamentally.games | November 4, 2020 | $0.00 |
| 134 | Fusion Engineering<br>Kluyverweg 1<br>2629 HS Delft, Netherlands | | rcrone@fusion.engineering;<br>robert@fusion.engineering | July 9, 2021 | $0.00 |
| 135 | Helena Edtech Private Limited (EduFund)<br>517 Irving Ave<br>Endicott, NY 13760 | Helena Edtech Private Limited (EduFund)<br>30, Omkar House, Near Swastik Char Rasta, Ahmedabad, Gujarat, 380009, India | eela@edufund.in | December 16, 2021 | $0.00 |
| 136 | HEXANIKA<br>Yogesh Pandit<br>40 DuClair Ct<br>Little Rock, AR 72224 | HEXANIKA<br>419 Main St<br>Little Rock, AR 72114 | yogesh.pandit@hexanika.com;<br>ypandit@hexanika.com | November 30, 2020 | $0.00 |
| 137 | HUSH International INC d/b/a ANNEX<br>56 Whitman Dr<br>Brooklyn, NY 11234 | | concierge@itsannex.com | April 5, 2022 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 138 | IMGX INC d/b/a ImagineX<br>301 Congress Ave Ste 2200<br>Austin, TX 78701 | | mvaron@imagine-x.co | May 13, 2022 | $0.00 |
| 139 | IoTExpress Technologies Pvt Limited d/b/a Bytebeam<br>WeWork<br>Prestige Atlanta<br>80 Feet Rd<br>Koramangala, Bengaluru, Karnataka 560034, India | | gautam@bytebeam.io;<br>raviteja@bytebeam.io | September 26, 2021 | $0.00 |
| 140 | Krazzy Fin Pvt Ltd d/b/a BULLSPREE<br>527, Krazzy Fin Pvt Ltd.<br>Shivalik Satyamev<br>Sardar Patel Ring Rd, Junction, Ambli - Bopal Rd,<br>Ahmedabad, Gujarat 380058, India | | dharmil@bullspree.com | April 28, 2022 | $0.00 |
| 141 | Mitienda Labs<br>1732 1st Ave #28507<br>New York, NY 10128 | Mitienda Labs<br>Avenida Eloy Alfaro & De los Juncos<br>Quito 170144, Ecuador | admin@mitiendalabs.com;<br>sebastian.valdivieso@mitiendalabs.com | April 27, 2021 | $0.00 |
| 142 | MyCancerDB LLC d/b/a ennov1<br>Bruce Quackenbush<br>77 Havemeyer Ln Unit 67<br>Stamford, CT 06902 | | apopp@mycancerdb.com | November 30, 2020 | $0.00 |
| 143 | P2P Technology Hub SRL (Feexers)<br>Eusediu Margasoiu<br>str. Leonida nr. 19<br>Bucharest, București, 020555, Romania | P2P Technology Hub SRL (Feexers)<br>Strada Nouă<br>Cornu de Jos 107175, Romania | eusediu.margasoiu@feexers.com | November 28, 2020 | $0.00 |
| 144 | Pick and Think SAPI de CV d/b/a Aiween<br>C. Montes Urales 745<br>Lomas - Virreyes, Lomas de Chapultepec, Miguel Hidalgo<br>11000 Ciudad de México, CDMX, Mexico | Pick and Think SAPI de CV d/b/a Aiween<br>Av. Santa Fe 94-Torre A Piso 8 of 1<br>Santa Fe, Zedec Sta Fé, Álvaro Obregón<br>01376 Ciudad de México, CDMX, Mexico | cecilia@aiween.com;<br>lunaballato@gmail.com | April 2, 2021 | $0.00 |
| 145 | QuickSafety<br>Kurt Alexander<br>375 Wickham Terrace<br>Spring Hill QLD 4000, Australia | QuickSafety<br>52 University Dr<br>Sunshine Coast, Queensland, 4556, Australia | k.alexander@quicksafety.com.au | October 27, 2020 | $0.00 |
| 146 | Random Monkey, INC d/b/a Datasketch<br>1166 Birchwood Rd<br>Weston, FL 33327 | Random Monkey, INC d/b/a Datasketch<br>Calle 71<br>Bogotá, Colombia | jpmarindiaz@datasketch.co | August 26, 2021 | $0.00 |
| 147 | Restworld<br>I3P - Incubatore del Politecnico<br>Corso Castelfidardo, 30/a<br>10129 Torino TO, Italy | | luca@restworld.it | May 4, 2021 | $0.00 |
| 148 | SNFood & Beverage LLC d/b/a Carbliss<br>N5298 Kyle Court<br>Plymouth, WI 53073 | | akroener@drinkcarbliss.com;<br>amanda@drinkcarbliss.com | March 16, 2021 | $0.00 |
| 149 | Sokoni Online Ltd d/b/a AfricaSokoni<br>Pili Trade Centre Building<br>Nairobi, Nairobi County, 00276, Kenya | Sokoni Online Ltd d/b/a AfricaSokoni<br>Pili Trade Centre, 2nd Floor SGR road off Mombasa Road,<br>Nairobi, 00519, Kenya | efatty@africasokoni.co.ke | April 18, 2022 | $0.00 |

| # | Warrant Counterparty | Alternate Mailing Address | E-mail | Contract Date | Cure Amount |
|---|---|---|---|---|---|
| 150 | Stargate Tech Pvt. Ltd. d/b/a BoStreet<br>D1615, Divyasree 77 Place<br>Bangalore 560037, Karnataka, India | | kunal@stargate-inc.com | August 26, 2021 | $0.00 |
| 151 | Syaiful Lokan d/b/a ICANDO<br>Jl. Gading Lavender No 6<br>Jakarta Utara, DKI Jakarta, 14250, Indonesia | Syaiful Lokan d/b/a ICANDO<br>Kirana Two Office Tower Lt. 10-A<br>North Jakarta, 14250, Indonesia | liphin@icando.co.id;<br>syaiful@icando.co.id | October 29, 2021 | $0.00 |
| 152 | Tecnologias y Servicios Tiemporeal S.L. d/b/a<br>AgroPestAlert<br>Polígono Mocholí<br>Pl. Cein, 5 | Tecnologias y Servicios Tiemporeal S.L. d/b/a<br>AgroPestAlert<br>Ciudad Agroalimentaria de Tudela<br>Serna, C. D, 31500 Tudela, Navarra, Spain | louis.holder@agropestalert.com | February 26, 2021 | $0.00 |
| 153 | The Eventors Inc<br>1617 Cosmo St<br>Los Angeles, CA 90028 | | oshri@eventors.com | June 29, 2021 | $0.00 |
| 154 | Tidy Technologies Inc. d/b/a Cleanster.com<br>Derrick Agyiri<br>16192 Coastal Hwy<br>Lewes, DE 19958 | Tidy Technologies Inc. d/b/a Cleanster.com<br>2021 Guadalupe St<br>Austin, TX 78705 | gloria@cleanster.com | January 21, 2021 | $0.00 |
| 155 | UAB Keliu sistemos (Cargo Stream)<br>Skirmantas Rimkus<br>Gedimino pr. 33<br>01104 Vilnius, Lithuania | | sarunas@cargostream.co | January 29, 2021 | $0.00 |
| 156 | Viell,Inc d/b/a Fanluv<br>312 Arizona Ave<br>Santa Monica, CA 90401 | | ertunc@viell.co | February 11, 2021 | $0.00 |
| 157 | Vliso Inc. d/b/a Chow420<br>200 N 16th St #1405<br>Philadelphia, PA 19102 | Vliso Inc. d/b/a Chow420<br>1000 8th Ave<br>New York, NY 10019 | david@chow420.com | February 24, 2022 | $0.00 |
| 158 | Wifly<br>C. del Dr. Esquerdo, 183<br>28007 Madrid, Spain | Wifly<br>C. del Príncipe de Vergara, 57<br>28006 Madrid, Spain | jaime.sacristan@wiflymobility.com | November 4, 2021 | $0.00 |

**Exhibit "2"**

**Form of Non-Disclosure Agreement**



**PEAK Technology Partners, LLC**
135 Main St Suite 1300
San Francisco, CA 94105

<u>**MUTUAL NON-DISCLOSURE AGREEMENT**</u>

This Mutual Non-Disclosure Agreement ("*Agreement*"), dated as of _____ is made by and between PEAK Technology Partners, LLC ("*PEAK*") and _____ (the "*Company*"). PEAK and the Company would like to protect the confidentiality of, maintain their respective rights in, and prevent the unauthorized use and disclosure of their valuable confidential information. Accordingly, PEAK and the Company hereby agree as follows:

**1. CONFIDENTIAL INFORMATION**. As used in this Agreement, "Confidential Information" means all nonpublic information disclosed by one party or its agents ("*Disclosing Party*") to the other party or its agents ("*Receiving Party*") that is designated as confidential or that, given the nature of the information or the circumstances surrounding its disclosure, reasonably should be considered as confidential. Confidential Information includes, without limitation (i) nonpublic information relating to the Disclosing Party's technology, customers, business plans, promotional and marketing activities, finances and other business affairs, and (ii) third-party information that the Disclosing Party is obligated to keep confidential.

**2. EXCLUSIONS**. Confidential Information does not include any information that (i) is or becomes publicly available without breach of this Agreement, (ii) can be shown by documentation to have been known to the Receiving Party at the time of its receipt from the Disclosing Party, (iii) is received from a third party who, to the knowledge of the Receiving Party, did not acquire or disclose such information by a wrongful or tortious act, or (iv) can be shown by documentation to have been independently developed by the Receiving Party without reference to any Confidential Information.

**3. USE OF CONFIDENTIAL INFORMATION**. The Receiving Party may use Confidential Information only in pursuance of its business relationship with the Disclosing Party. Except as expressly provided in this Agreement, the Receiving Party shall not disclose Confidential Information to anyone without the Disclosing Party's prior written consent. The Receiving Party shall take all reasonable measures to prevent disclosure, dissemination or unauthorized use of Confidential Information, including, at a minimum, those measures it takes to protect its own confidential information of a similar nature. The Receiving Party shall not export any Confidential Information in any manner contrary to the export regulations of the United States.

**4. RECEIVING PARTY PERSONNEL**. The Receiving Party shall restrict the possession, knowledge and use of Confidential Information to its employees, contractors, professional advisors, and entities controlled by it (collectively, "*Personnel*") who have a need to know Confidential Information in connection with the parties' business relationship, and such Personnel shall be bound by and subject to the terms of this Agreement as if they were a party hereto.

**5. DISCLOSURES TO GOVERNMENT ENTITIES**. The Receiving Party may disclose Confidential Information as required to comply with binding orders of governmental entities that have jurisdiction over it, provided that the Receiving Party (i) gives the Disclosing Party reasonable notice (to the extent permitted by law) to allow the Disclosing Party to seek a protective order or other appropriate remedy, (ii) discloses only such information as is required by the governmental entity, and (iii) uses commercially reasonable efforts to obtain confidential treatment for any Confidential Information so disclosed.

**6. OWNERSHIP OF CONFIDENTIAL INFORMATION**. All Confidential Information shall remain the exclusive property of the Disclosing Party. The Disclosing Party's disclosure of Confidential Information shall not constitute an express or implied grant to the Receiving Party of any rights to or under the Disclosing Party's patents, copyrights, trade secrets, trademarks or other intellectual property rights.

**7. NOTICE OF UNAUTHORIZED USE**. The Receiving Party shall notify the Disclosing Party immediately upon discovery of any unauthorized use or disclosure of Confidential Information or any other breach of this Agreement by the Receiving Party. The Receiving Party shall cooperate with the Disclosing Party in every reasonable way to help the Disclosing Party regain possession of such Confidential Information and prevent its further unauthorized use.



**8. RETURN OF CONFIDENTIAL INFORMATION**. The Receiving Party shall return or destroy all tangible materials embodying Confidential Information (in any form and including, without limitation, all summaries, copies and excerpts of Confidential Information) promptly following the Disclosing Party's written request. Upon the Disclosing Party's request, the Receiving Party shall provide written certification of its compliance with this Section.

**9. INJUNCTIVE RELIEF**. The Receiving Party acknowledges that disclosure or use of Confidential Information in violation of this Agreement could cause irreparable harm to the Disclosing Party for which monetary damages may be difficult to ascertain or an inadequate remedy. The Receiving Party therefore agrees that the Disclosing Party shall have the right, in addition to its other rights and remedies, to seek injunctive relief for any violation of this Agreement.

**10. SCOPE; TERMINATION**. This Agreement is intended to cover the Confidential Information disclosed by each party both prior and subsequent to the date hereof. This Agreement automatically shall terminate upon the completion or termination of the parties' business relationship; provided, however, that each party's obligations with respect to the other party's Confidential Information shall survive for a period of two (2) years following receipt of such Confidential Information.

**11. INDEPENDENT DEVELOPMENT**. The Disclosing Party acknowledges that the Receiving Party may currently or in the future be developing information internally, or receiving information from other parties, that is similar to the Confidential Information. Accordingly, nothing in this Agreement shall be construed as a representation or agreement that the Receiving Party shall not develop, or have developed for it, products, concepts, systems or techniques that are similar to or compete with the products, concepts, systems or techniques contemplated by or embodied in the Confidential Information, provided that the Receiving Party does not violate any of its obligations under this Agreement in connection with such development.

**12. MISCELLANEOUS**
**12.1**      This Agreement shall not create a joint venture, partnership or other formal business relationship or entity of any kind, or an obligation to form any such relationship or entity. Each party shall act as an independent contractor and not as an agent of the other party for any purpose, and neither shall have the authority to bind the other.

**12.2**      This Agreement constitutes the entire agreement between the parties relating to the matters discussed herein and may be amended or modified only with the mutual written consent of the parties. Each party's obligations hereunder are in addition to, and not exclusive of, any and all of its other obligations and duties to the other party, whether express, implied, in fact or in law. Subject to the limitations set forth in this Agreement, this Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns.

**12.3**      Any failure by either party to enforce the other party's strict performance of any provision of this Agreement shall not constitute a waiver of its right to substantially enforce such provision or any other provision of this Agreement.

**12.4**      If a provision of this Agreement is held invalid under any applicable law, such invalidity shall not affect any other provision of this Agreement that can be given effect without the invalid provision. Further, any such invalid or unenforceable provision or portion thereof shall be deemed, without further action on the part of the parties hereto, modified, amended or limited to the extent necessary to render the same valid and enforceable.

**12.5**      This Agreement shall be governed by the internal laws of the State of Delaware, without reference to its choice of law rules. This Agreement may be executed by facsimile and in counterpart copies.

The parties have executed this Agreement as of the date first written above.

[Signatures on Following Page]

**PEAK TECHNOLOGY PARTNERS, LLC**

By:_____

Printed Name: Chad Harding

Title: Managing Partner

Date:_____

Address: 135 Main St Suite 1300
          San Francisco, CA 94105

Company:_____

By:_____

Printed Name:_____

Title:_____

Date:_____

Address:_____

_____

_____

**Exhibit "3"**

**Form of Asset Purchase Agreement**

**DRAFT 11/17/2023**

ASSET PURCHASE AGREEMENT

Between

ASTRALABS, Inc., d/b/a "Newchip"

as the Seller,

and

[PURCHASER],

as the Purchaser

Dated as of _____, 2024

**TABLE OF CONTENTS**

ARTICLE 1.  DEFINITIONS..................................................................................................... 2
    1.1    Definitions ............................................................................................................... 2

ARTICLE 2.  PURCHASE AND SALE OF DESIGNATED SECURITIES WARRANTS ...................... 4
    2.1    Purchase of the Designated Securities Warrants.................................................. 4
    2.2    Assumed Liabilities ................................................................................................ 4
    2.3    Cure Amounts ........................................................................................................ 4
    2.4    No Assignment of Membership Agreements......................................................... 4

ARTICLE 3.  CONSIDERATION ............................................................................................... 4
    3.1    Consideration ......................................................................................................... 4
    3.2    Deposit ................................................................................................................... 5

ARTICLE 4.  CLOSING ........................................................................................................... 5
    4.1    Closing ................................................................................................................... 5
    4.2    The Seller's Deliveries........................................................................................... 5
    4.3    The Purchaser's Deliveries .................................................................................... 6
    4.4    Transaction Taxes .................................................................................................. 6

ARTICLE 5.  REPRESENTATIONS AND WARRANTIES OF THE SELLER ................................. 6
    5.1    Organization ........................................................................................................... 6
    5.2    Authorization ......................................................................................................... 6
    5.3    Governmental Authority Authorizations and Other Consents ............................. 7
    5.4    Financial Advisors ................................................................................................. 7

ARTICLE 6.  REPRESENTATIONS AND WARRANTIES OF THE PURCHASER............................ 7
    6.1    Organization ........................................................................................................... 7
    6.2    Authorization ......................................................................................................... 7
    6.3    Noncontravention................................................................................................... 7
    6.4    Solvency; Availability of Funds ............................................................................ 8
    6.5    Securities Laws Representations............................................................................ 8

ARTICLE 7.  PRE-CLOSING COVENANTS............................................................................... 9
    7.1    Consummation of Transaction .............................................................................. 9

ARTICLE 8.  POST-CLOSING COVENANTS ............................................................................ 9
    8.1    Further Assurances ................................................................................................ 9

ARTICLE 9.  CONDITIONS ..................................................................................................... 10
    9.1    Conditions to Each Party's Obligations................................................................ 10
    9.2    Conditions to Obligations of the Seller ................................................................ 10
    9.3    Conditions to Obligations of the Purchaser .......................................................... 10

ARTICLE 10.  NO SURVIVAL; "AS IS/WHERE IS" SALE....................................................... 11
    10.1    No Survival of Representations and Warranties ................................................... 11
    10.2    Disclaimer ............................................................................................................. 11

10.3 "AS IS/WHERE IS" SALE ................................................................................... 12

ARTICLE 11. TERMINATION ...................................................................................... 12
11.1 Termination of Agreement ........................................................................... 12
11.2 Effect of Termination .................................................................................. 13

ARTICLE 12. MISCELLANEOUS PROVISIONS ......................................................... 13
12.1 Expenses ..................................................................................................... 13
12.2 Public Announcements ................................................................................ 13
12.3 Amendment; Waiver .................................................................................... 13
12.4 Notices ........................................................................................................ 13
12.5 Succession and Assignment ........................................................................ 14
12.6 Governing Law ............................................................................................ 14
12.7 Consent to Jurisdiction ............................................................................... 14
12.8 WAIVER OF JURY TRIAL ........................................................................ 15
12.9 Entire Agreement ........................................................................................ 15
12.10 Severability ................................................................................................. 15
12.11 No Third Party Beneficiaries ...................................................................... 15
12.12 Exhibits, Appendices and Schedules .......................................................... 15
12.13 Counterparts ................................................................................................ 16

<u>APPENDICES</u>

Appendix I .......................................................... Designated Securities Warrants

<u>EXHIBITS</u>

Exhibit A ............................................................................ Sale Approval Order
Exhibit B ............................................. Assignment and Assumption Agreement

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT, dated as of _____, 2024, is made by and between (i) ASTRALABS, Inc., d/b/a "Newchip" (the "**Seller**"), as seller, and (ii) _____ (the "**Purchaser**"), as purchaser.

### P R E A M B L E

WHEREAS, the Seller, in connection with operating an incubator for its customers (which included start-up and early stage companies) ("**Members**"), entered into membership and/or services agreements with the Members (the "**Membership Agreements**") pursuant to which, among other things, the Seller agreed to provide access to such Members to the Seller's services and resources, including its accelerator program;

WHEREAS, the Seller, in connection with entering into Membership Agreements with Members (and/or similar or related agreements with other customers), has acquired a portfolio of warrants (the "**Warrants**") issued to the Seller by certain of such Members (and/or other Persons) that grant rights to the Seller to acquire securities from such Members (and/or Persons) under such Warrants;

WHEREAS, on March 17, 2023 (the "**Petition Date**"), the Seller filed a voluntary petition for relief under Chapter 11, Subchapter V, of title 11 of the United States Code, §§ 101, *et seq*. (as amended, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "**Bankruptcy Court**"), and which case has been  assigned Case No. 23-10164 (the "**Bankruptcy Case**");

WHEREAS, on May 12, 2023, the Bankruptcy Court entered its Order [Docket No. 89] converting the Bankruptcy Case to one under Chapter 7 of the Bankruptcy Code, and on May 12, 2023, the Bankruptcy Court appointed Randolph N. Osherow as the Chapter 7 trustee (the "**Trustee**") to oversee the administration and management of the Seller's bankruptcy estate arising under section 541 of the Bankruptcy Code (the "**Estate**"), its assets, and financial affairs;

WHEREAS, the Trustee has determined that a reasonably prompt disposition of the Warrants held by the Seller that are listed or described on Appendix I attached hereto (collectively, the "**Designated Securities Warrants**") is necessary in order to preserve any value inherent in the Warrants for the benefit of the Seller's Estate and its creditors and stakeholders;

WHEREAS, on September 6, 2023, the Bankruptcy Court entered an order authorizing the Trustee to retain PEAK Technology Partners, LLC (the "**Sale Agent**") to act as the Seller's agent in connection with its marketing and sale of the Estate's assets, including Warrants;

WHEREAS, Purchaser desires to acquire the Designated Securities Warrants;

WHEREAS, upon the terms and subject to the conditions set forth herein and pursuant to Sections 363 and 365 of the Bankruptcy Code, the Seller desires to sell, transfer, convey, assign, and deliver to the Purchaser, and the Purchaser desires to purchase and accept from the Seller, the Designated Securities Warrants as contemplated herein; and

WHEREAS, the parties desire to consummate the Proposed Transactions (as defined below) pursuant to this Asset Purchase Agreement, together with the appendices, exhibits, and schedules attached hereto (collectively, this "**Agreement**"), as promptly as practicable after the Bankruptcy Court enters an order approving the Proposed Transactions.

NOW, THEREFORE, in consideration of the foregoing and of the representations, warranties, covenants, and agreements made herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## ARTICLE 1.  DEFINITIONS

1.1      <u>Definitions</u>.  The following words and terms as used in this Agreement shall have the following meanings:

"**<u>Action</u>**" means any demand, claim, action, suit or proceeding, arbitral action, inquiry, criminal prosecution, or investigation by or before any Governmental Authority.

"**<u>Affiliate</u>**" (and, with a correlative meaning, "*affiliated*") means, with respect to any Person, any other Person that directly, or through one or more intermediaries, controls or is controlled by or is under common control with such Person, including any Subsidiary of such Person, and further encompasses the definition of "Affiliate" set forth in section 101(2) of the Bankruptcy Code.  As used in this definition, "*control*" (and, with correlative meanings, "*controlled by*" and "*under common control with*") means possession, directly or indirectly, of power to direct or cause the direction of management or policies (whether through ownership of securities or other ownership interests, by contract or otherwise).

"**<u>Agreement</u>**" has the meaning specified in the Preamble.

"**<u>Assignment and Assumption Agreement</u>**" has the meaning specified in Section 4.2(b).

"**<u>Assumed Liabilities</u>**" has the meaning specified in Section 2.2.

"**<u>Bankruptcy Case</u>**" has the meaning specified in the Preamble.

"**<u>Bankruptcy Code</u>**" has the meaning specified in the Preamble.

"**<u>Bankruptcy Court</u>**" has the meaning specified in the Preamble.

"**<u>Bid Procedures</u>**" means those certain bid procedures relating to the sale of certain Warrants that were approved by the Bankruptcy Court pursuant to the Trustee's Motion (I) for Authority to Sell Designated Securities Warrants, Free and Clear of All Liens, Claims, and Encumbrances; (II) for Approval of Notice, Sale, and Executory Contract Procedures; and (III) to Set Final Hearing to Approve Sale and Good Faith Designation to Prevailing Purchaser(s).

"**<u>Business Day</u>**" means a day other than a Saturday, Sunday, or other day on which the Federal Reserve Bank of New York is closed for business.

"**<u>Closing</u>**" and "**<u>Closing Date</u>**" have the meanings specified in Section 4.1.

"**<u>Closing Deadlines</u>**" has the meanings specified in Section 4.1.

"**<u>Cure Amounts</u>**" means all amounts necessary to cure all defaults, if any, under the Designated Securities Warrants and to pay all actual or pecuniary losses that have resulted from such defaults under the Designated Securities Warrants, as determined by the Bankruptcy Court.

"**<u>Deposit</u>**" has the meaning specified in Section 3.2.

2

"**Designated Securities Warrants**" has the meaning specified in the Preamble.

"**Effective Time**" has the meaning specified in Section 4.1.

"**Estate**" has the meaning specified in the Preamble.

"**Final Order**" means an order which has not been reversed or vacated and not stayed or subject to a stay, and as to which no motion to vacate, reconsider, alter, or amend shall be pending.

"**Governmental Authority**" means any government, governmental entity, department, commission, board, agency, or instrumentality, or any court, tribunal, or judicial body, in each case whether federal, state, commonwealth, county, provincial, local, or foreign.

"**Governmental Order**" means any Law, order, judgment, injunction, decree, stipulation, or determination issued, promulgated, or entered by or with any Governmental Authority of competent jurisdiction.

"**Law**" means any law, ordinance, regulation, rule, code, or rule of common law, or otherwise of any Governmental Authority.

"**Lien**" means any security interest, pledge, mortgage, lien, charge, hypothecation, adverse claim of ownership or use, restriction on transfer (such as a right of first refusal or other similar right), defect of title, or other encumbrance of any kind or character.

"**Members**" has the meaning specified in the Preamble.

"**Membership Agreements**" has the meaning specified in the Preamble.

"**Other Transaction Documents**" has the meaning specified in Section 5.2.

"**Permitted Encumbrances**" means any rights of first refusal, rights of first offer, or similar rights or restrictions on transfer that may be set forth in a Warrant for the benefit of the issuer of the Warrant, including any right that allows the issuer of a Warrant to match and/or supersede the Purchaser's bid to acquire the Designated Securities Warranties for the Purchase Price set forth herein.

"**Person**" means an individual, firm, partnership, limited liability company, association, unincorporated organization, trust, corporation, or any other entity, including a Governmental Authority.

"**Petition Date**" has the meaning specified in the Preamble.

"**Proposed Transactions**" means all of the transactions contemplated hereby, including the transfer, sale, conveyance, assignment, and delivery by the Seller to the Purchaser, and the acquisition by the Purchaser from the Seller, of the Designated Securities Warrants as contemplated herein and the performance by the parties of their respective covenants and obligations hereunder.

"**Purchase Price**" has the meaning specified in Section 3.1.

"**Purchaser**" has the meaning specified in the introductory paragraph to this Agreement.

"**Sale Agent**" has the meaning specified in the Preamble.

"**Sale Approval Order**" means an order of the Bankruptcy Court approving this Agreement and the Proposed Transactions in the form of **Exhibit A**.

3

"**Securities Act**" means the Securities Act of 1933, as amended.

"**Seller**" has the meaning specified in the introductory paragraph to this Agreement.

"**Tax**" or "**Taxes**" means any federal, commonwealth, state, county, provincial, local, or foreign income, gross receipts, sales, use, ad valorem, employment, severance, transfer, gains, profits, excise, franchise, personal and real property, capital stock, premium, minimum and alternative minimum, or other taxes, fees, levies, licenses, duties, assessments, or charges of any kind or nature whatsoever imposed by any Governmental Authority (whether payable directly or by withholding and including any tax liability incurred or borne as a transferee or successor or by contract, or otherwise), together with any interest, surcharges, penalty (civil or criminal), or additional amounts imposed by, any Governmental Authority with respect thereto.

"**Termination Date**" has the meaning specified in Section 11.1(c).

"**Transaction Taxes**" has the meaning specified in Section 4.4.

"**Trustee**" has the meaning specified in the Preamble.

"**Warrants**" has the meaning specified in the Preamble.

## ARTICLE 2.   PURCHASE AND SALE OF DESIGNATED SECURITIES WARRANTS

2.1     Purchase of the Designated Securities Warrants.   Upon the terms and subject to the conditions of this Agreement, at and as of the Effective Time, the Seller shall sell, transfer, convey, assign, and deliver to the Purchaser, and the Purchaser shall purchase and accept from the Seller, all right, title, and interest of the Seller (if any) in and to the Designated Securities Warrants.

2.2     Assumed Liabilities.   At and as of the Effective Time, the Purchaser shall assume any and all of the Liabilities of the Seller, if any (collectively, the "**Assumed Liabilities**"), accruing or due to be performed from and after the Effective Time pursuant to or in respect of all Designated Securities Warrants, if any, and, to the extent the Bankruptcy Court authorizes assumption and assignment of such Designated Securities Warrants.

2.3     Cure Amounts.   The Purchaser shall pay all Cure Amounts (if any) in respect of the Designated Securities Warrants at or prior to the Closing. Nothing in this Agreement or any Other Transaction Document, nor the consummation of the Proposed Transactions, shall be construed as an attempt or agreement to assign any Designated Securities Warrant unless and until the Purchaser shall have paid the Cure Amounts (if any) with respect to such Designated Securities Warrant.  The Purchase Price shall not be reduced by any Cure Amounts paid by the Purchaser, and the Purchaser shall not be entitled to any contribution from the Trustee or the Seller to reimburse the Purchaser for any such Cure Amounts.

2.4     No Assignment of Membership Agreements.   The parties hereto agree that the Seller is not transferring to the Purchaser, and the Purchaser is not acquiring, any Membership Agreements.

## ARTICLE 3.   CONSIDERATION

3.1     Consideration.   The purchase price payable by the Purchaser to the Seller in consideration of the sale, transfer, conveyance, assignment, and delivery of the Designated Securities Warrants to the Purchaser, and in reliance upon the representations, warranties, covenants, and agreements of the Seller set forth herein, is an amount equal to $_____.00 (the "**Purchase Price**"). The Purchase Price will not be reduced by any Cure Amounts (if any) paid by the Purchaser pursuant to Section 2.3.  As additional

consideration for the transfer of the Designated Securities Warrants to the Purchaser hereunder, the Purchaser shall assume the Assumed Liabilities pursuant to Section 2.2.

3.2     Deposit.  The Purchaser has complied, and shall comply, with all provisions of the Bid Procedures that require the Purchaser to make a deposit with the Sale Agent, including any provisions that may require the Purchaser to increase the amount of its initial deposit if the Sale Approval Order in the Bankruptcy Case designates the Purchaser as a Successful Bidder or a Back Up Bidder, as such terms are defined in the Bid Procedures (such amounts, the "**Deposit**").  The Sale Agent shall hold and disburse the Deposit pursuant to the terms and conditions of the Bid Procedures.  If the Closing occurs, then on the Closing Date, the Sale Agent shall deliver the Deposit to the Seller (and such Deposit will be credited against the Purchase Price).  If the Closing does not occur and this Agreement is terminated under Section 11.1, then the Deposit will either be returned by the Sale Agent to the Purchaser, or delivered by the Sale Agent to the Seller, in each case in accordance with the provisions of the Bid Procedures.

## ARTICLE 4.     CLOSING

4.1     Closing.  The consummation of the Proposed Transactions (the "**Closing**") shall take place on the first Business Day following the satisfaction or waiver of all conditions set forth in Article 9 (other than those conditions that by their terms are to be satisfied at the Closing) (the "**Closing Date**") commencing at 10:00 a.m. at the offices of Munsch Hardt Kopf & Harr, P.C., Hartland Plaza, 1717 West 6th Street, Suite 250, Austin, Texas 78703, and/or remotely by exchange of documents and signatures (or their electronic counterparts), or at such other time, place and date as may be mutually agreed upon by the Purchaser and the Seller.  The Closing will be effective as of 12:01 a.m. ("**Effective Time**") on the Closing Date.  Without limiting the foregoing, the Purchaser hereby agrees that (a) if the Purchaser is approved by the Bankruptcy Court as a Successful Bidder, then the Purchaser will proceed towards and will consummate the Closing no later than 5:00 p.m. (Central Time) on the first Business Day that is thirty (30) days following the entry of the Sale Approval Order, and (ii) if the Purchaser is approved by the Bankruptcy Court as a Back Up Bidder and the Trustee notifies the Purchaser in writing of his request to proceed with the Purchaser due to a failed Closing with a Successful Bidder, then the Purchaser will proceed towards and will consummate the Closing no later than 5:00 p.m. (Central Time) on the first Business Day that is fifteen (15) days following the Trustee's written notice to the Back Up Bidder (the deadlines referred to in this sentence being the "Closing Deadlines").

4.2     The Seller's Deliveries.

(a)     Delivery of Designated Securities Warrants.  At or prior to the Closing, the Seller shall deliver to the Purchaser the Designated Securities Warrants, free and clear of all Liens other than Permitted Encumbrances, with the Purchaser hereby agreeing that any assignment of the Designated Securities Warrants to the Purchaser pursuant to this Agreement shall expressly be *cum onere*, together with, and including, such Permitted Encumbrances and any and all related provisions, rights, and obligations, but solely to the extent valid and enforceable under applicable law.

(b)     Assignment and Assumption Agreement.  At or prior to the Closing, the Seller shall deliver to the Purchaser the Assignment and Assumption Agreement pertaining to the transfer of the Designated Securities Warrants by the Seller to the Purchaser, and the assumption of the Assumed Liabilities by the Purchaser duly executed by the Seller, substantially in the form of **Exhibit B** (the "**Assignment and Assumption Agreement**").

4.3 _The Purchaser's Deliveries_.  At or prior to the Closing, the Purchaser shall deliver to the Seller the following:

(a) _Purchase Price_.  By wire transfer of immediately available funds (pursuant to wire transfer instructions provided by the Trustee prior to Closing), an amount equal to the Purchase Price (less the Deposit);

(b) _Assignment and Assumption Agreement_.  The Assignment and Assumption Agreement duly executed by the Purchaser; and

(c) _Other Documents and Instruments_.  Such other endorsements, assignments, assumptions, instruments, and documents as may be reasonably requested by the Seller to consummate the Proposed Transactions, each in form and substance reasonably satisfactory to the Seller and its counsel.

4.4 _Transaction Taxes_.  Any Taxes that may be payable by reason of the sale of the Designated Securities Warrants under this Agreement (including any transfer, sales, use, value added, gross receipts, stamp, duty, stamp duty, documentary, registration, business and occupation, and other similar taxes) ("**Transaction Taxes**") shall be the responsibility and obligation of the Purchaser regardless of whether any Tax authority seeks to collect such Taxes from the Seller or the Purchaser.  Notwithstanding the foregoing, in no event shall any party to this Agreement be responsible for the Taxes based on net income, margin, or gain of the other party or parties that arises as a consequence of the consummation of the Proposed Transactions.

## ARTICLE 5.   REPRESENTATIONS AND WARRANTIES OF THE SELLER

As a material inducement to the Purchaser to enter into this Agreement and consummate the Proposed Transactions, the Seller hereby represents and warrants to the Purchaser that the statements contained in this Article 5 are true and correct on the date hereof and as of the Closing Date (and the Purchaser acknowledges that (i) the representations and warranties being made in this Article 5 are only being made by the Seller and not by the Trustee, and (ii) the Trustee is not making, and has not made any, representations or warranties to the Purchaser, whether under this Agreement or any other agreement).

5.1 _Organization_.  The Seller is duly organized, validly existing, and in good standing under the laws of its state of formation, except as affected by the pendency of the Bankruptcy Case.  The Seller has heretofore made available to the Purchaser true, correct, and complete copies of its organizational documents as are currently in effect.

5.2 _Authorization_.  Subject only to Bankruptcy Court approval pursuant to the Sale Approval Order, the Seller has full power and authority to execute and deliver this Agreement and each agreement, document, or instrument contemplated hereby (collectively, the "**Other Transaction Documents**") required to be delivered by it hereby or in connection herewith and to perform its obligations under this Agreement and the Other Transaction Documents required to be delivered by it hereby or in connection herewith and to consummate the Proposed Transactions.  The execution and delivery by the Seller of this Agreement and the Other Transaction Documents required to be delivered by Seller hereby or in connection herewith and the performance by the Seller of Seller's obligations hereunder and thereunder have been duly and validly authorized by all necessary action on the part of the Seller.  This Agreement and each of the Other Transaction Documents required to be delivered by the Seller hereby or in connection herewith have been, or when executed and delivered will have been, duly executed and delivered by the Seller and is, or once executed will be, the valid and binding agreement of the Seller, enforceable against it in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization,

moratorium, and other similar Laws relating to or affecting the enforceability of creditors' rights generally, general equitable principles (regardless of whether enforcement is sought in a proceeding at law or in equity) and the discretion of the courts in granting equitable remedies.

5.3     Governmental Authority Authorizations and Other Consents.  Subject only to Bankruptcy Court approval pursuant to the Sale Approval Order, (i) no consent, approval, order, or authorization of, or registration, declaration, or filing with, any Governmental Authority or other Person is required in connection with the execution and delivery of this Agreement by the Seller, and (ii) no consent, approval, order, authorization of, or registration, declaration, or filing with any Governmental Authority or other Person is required in connection with the performance of this Agreement or the execution, delivery, or performance by the Seller of the Other Transaction Documents required to be delivered by it hereby or in connection herewith or the consummation by the Seller of the Proposed Transactions and fulfillment of and compliance by the Seller with the terms and conditions of this Agreement and the Other Transaction Documents required to be delivered by them hereby or in connection herewith.

5.4     Financial Advisors.  The Purchaser is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Proposed Transactions based upon any arrangement made by or on behalf of Seller or the Trustee.

### ARTICLE 6.    REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

As a material inducement to the Seller to enter into this Agreement and consummate the Proposed Transactions, the Purchaser hereby represents and warrants to the Seller and the Trustee that the statements contained in this Article 6 are true and correct on the date hereof and as of the Closing Date.

6.1     Organization.  The Purchaser is a [ENTITY TYPE] duly organized, validly existing, and in good standing under the laws of the State of [STATE] and has all the requisite power and authority to own, operate, and lease its properties and to carry on its business as it is now being conducted.

6.2     Authorization.  The Purchaser has full power and authority to execute and deliver this Agreement and the Other Transaction Documents required to be delivered by it hereby or in connection herewith, to perform its obligations under this Agreement and the Other Transaction Documents required to be delivered by it hereby or in connection herewith, and to consummate the Proposed Transactions.  The execution and delivery by the Purchaser of this Agreement and the Other Transaction Documents required to be delivered by it hereby or in connection herewith and the performance by the Purchaser of its obligations hereunder and thereunder have been or will be duly and validly authorized by all necessary action on the part of the Purchaser.  This Agreement and each of the Other Transaction Documents required to be delivered by the Purchaser hereby or in connection herewith have been, or when executed and delivered will have been, duly executed and delivered by the Purchaser and is, or once executed will be, the valid and binding agreement of the Purchaser, enforceable against it in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar Laws relating to or affecting the enforceability of creditors' rights generally, general equitable principles (regardless of whether enforcement is sought in a proceeding at law or in equity), and the discretion of the courts in granting equitable remedies.

6.3     Noncontravention.  None of the execution and delivery by the Purchaser of this Agreement or any of the Other Transaction Documents required to be delivered by it hereby or in connection herewith, the performance by the Purchaser of its obligations hereunder or thereunder, nor the consummation by the Purchaser of the Proposed Transactions, will violate or conflict with, constitute a breach of or default under, result in the loss of any benefit under, or permit the acceleration or increase the amount or scope of any obligation under (i) the certificate of formation, operating agreement, or any other organizational document,

as the case may be, of the Purchaser, (ii) any contract or agreement to which the Purchaser is a party or by which the Purchaser (or any of its respective properties or assets) is subject or bound, (iii) any Governmental Order to which the Purchaser is party or by which the Purchaser or any of its properties or assets or any of the Designated Securities Warrants is bound, or (iv) any Law applicable to the Purchaser or by which the Purchaser or any of its properties or assets are bound.

6.4     Solvency; Availability of Funds.  As of the Closing and immediately after consummating the Proposed Transactions, the Purchaser will not be insolvent (either because its financial condition is such that the sum of its debts is greater than the fair value of its assets or because the present fair value of its assets will be less than the amount required to pay its probable liabilities on its debts as they become absolute and matured).  The Purchaser has or will have at the Closing sufficient funds to enable the Purchaser to pay the Purchase Price in full at the Closing and consummate the Proposed Transactions.  The Purchaser has or will have at Closing sufficient access to capital to satisfy the Assumed Liabilities.

6.5     Securities Laws Representations.

(a)     The Purchaser is familiar with the business and financial condition and operations of the Seller.  The Purchaser has had access to such information concerning the Seller and the Designated Securities Warrants as it deems necessary to enable it to make an informed investment decision concerning the purchase of the Designated Securities Warrants.  The Purchaser confirms that neither the Seller, the Trustee nor any of their Affiliates has (i) given any guarantee or representation as to the potential success, return, effect, or benefit (either legal, regulatory, tax, financial, accounting, or otherwise) of the purchase of the Designated Securities Warrants, or (ii) made any representation to the Purchaser regarding the legality of the purchase of the Designated Securities Warrants under applicable legal investment or similar laws or regulations. The Purchaser understands that no federal or state agency has passed upon the merits or risks of the purchase of the Designated Securities Warrants or made any finding or determination concerning the fairness or advisability of such purchase.

(b)     The Purchaser understands and accepts that the purchase of the Designated Securities Warrants involves various risks, and the Purchaser has such knowledge, skill, and experience in business, financial, and investment matters that the Purchaser is capable of evaluating the merits and risks of the purchase of the Designated Securities Warrants.  The Purchaser represents that it is able to bear any loss associated with the purchase of the Designated Securities Warrants.  With the assistance of the Purchaser's own professional advisors, to the extent that the Purchaser has deemed appropriate, the Purchaser has made its own legal, tax, accounting, and financial evaluation of the merits and risks of the purchase of the Designated Securities Warrants and the consequences of this Agreement. The Purchaser has considered the suitability of the Designated Securities Warrants as an investment in light of its own circumstances and financial condition and the Purchaser is able to bear the risks associated with the purchase of the Designated Securities Warrants and its authority to purchase the Designated Securities Warrants.

(c)     The Purchaser is an "accredited investor" as defined in Rule 501(a) under the Securities Act.  The Purchaser agrees to furnish any additional information requested by the Seller or any of its Affiliates to assure compliance with applicable U.S. federal and state securities laws in connection with the purchase and sale of the Designated Securities Warrants.  Any information that has been furnished or that will be furnished by the Purchaser to evidence its status as an accredited investor is accurate and complete and does not contain any misrepresentation or material omission.

(d)     The Purchaser is acquiring the Designated Securities Warrants solely for the Purchaser's own beneficial account, for investment purposes, and not with a view to, or for resale

in connection with, any distribution of the Designated Securities Warrants. The Purchaser understands that the Designated Securities Warrants have not been registered under the Securities Act or any state securities laws by reason of specific exemptions under the provisions thereof which depend in part upon the investment intent of the Purchaser and of the other representations made by the Purchaser in this Agreement. The Purchaser understands that the Seller is relying upon the representations and agreements contained in this Agreement (and any supplemental information) for the purpose of determining whether this transaction meets the requirements for such exemptions.

(e)      The Purchaser understands that the Designated Securities Warrants are "restricted securities" under applicable federal securities laws and that the Securities Act and the rules of the U.S. Securities and Exchange Commission provide in substance that the Purchaser may dispose of the Designated Securities Warrants only pursuant to an effective registration statement under the Securities Act or an exemption therefrom. The Purchaser acknowledges that (i) any subsequent transfer of the Designated Securities Warrants, (ii) any issuance of any securities by an issuer of a Designated Securities Warrant upon exercise of a Designated Securities Warrant, and (iii) any transfer of any such securities that may be issued upon exercise of a Designated Securities Warrant may, in each case, be subject to conditions and/or restrictions on transfer imposed by the issuer of such Designated Securities Warrant (including any conditions or restrictions on transfer that such issuer may determine are necessary to ensure that an applicable federal and/or state securities law is available for such exercise, issuance and/or transfer), and neither the Seller, the Trustee, nor any of their Affiliates is making any representation or warranty to the Purchaser as to whether such issuer will or will not impose or assert any such conditions and/or restrictions on transfer.

## ARTICLE 7.   PRE-CLOSING COVENANTS

7.1    Consummation of Transaction. Each of the Seller and the Purchaser shall use its best efforts to take, or cause to be taken, all actions, or do, or cause to be done, all things, necessary to consummate the Proposed Transactions as promptly as practicable, and neither the Seller nor the Purchaser shall take any action after the date hereof (other than any action required to be taken under this Agreement or to which the other shall have granted its consent) that could reasonably be expected to materially delay the consummation of the Proposed Transactions. The Purchaser shall promptly take all actions reasonably requested by the Seller to assist in obtaining the Bankruptcy Court's entry of the Sale Approval Order, such as furnishing affidavits or other documents or information for filing with the Bankruptcy Court and making the Purchaser's employees and representatives available to testify before the Bankruptcy Court.

## ARTICLE 8.   POST-CLOSING COVENANTS

8.1    Further Assurances. At any time and from time to time from and after the Closing, the Seller, while the Bankruptcy Case remains pending, and the Purchaser shall, at the request the other party, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such instruments and other documents and perform or cause to be performed such acts and provide such information, as may reasonably be requested by such other party to evidence or effectuate the transactions contemplated hereunder.

9

## ARTICLE 9.  CONDITIONS

9.1     <u>Conditions to Each Party's Obligations</u>.  The respective obligations of each party to consummate the Proposed Transactions shall be subject to the condition that, at the Closing Date:

(a)     <u>No Stay or Injunction</u>.  There shall be no Governmental Order, or Action pending by or before any Governmental Authority to obtain a Governmental Order, to the effect that the Proposed Transactions may not be consummated as herein provided or otherwise seeking to prohibit or restrict the consummation of the Proposed Transactions; and

(b)     <u>No Threat of Injunction</u>.  No written notice shall have been received from any Governmental Authority indicating an intent to restrain, prevent, materially delay, or restructure the Proposed Transactions.

9.2     <u>Conditions to Obligations of the Seller</u>.  The obligations of the Seller to consummate the Proposed Transactions shall be subject to the fulfillment on or prior to the Closing Date of each of the following conditions (unless waived in writing by the Seller in its absolute and sole discretion):

(a)     <u>Sale Approval Order</u>.  The Sale Approval Order shall have been entered in the Bankruptcy Case.

(b)     <u>Closing Deliveries</u>.  The Purchaser shall have tendered or delivered to the Seller the items listed in Section 4.3.

(c)     <u>Representations and Warranties of the Purchaser</u>.  Each of the representations and warranties of the Purchaser set forth in Article 6 shall be true and correct in all respects as of the date of this Agreement and shall be true and correct in all respects at and as of the Closing Date with the same force and effect as though newly made as of that date.

(d)     <u>Covenants of the Purchaser</u>.  The Purchaser shall have performed in all material respects all of its obligations under this Agreement, including payment of Cure Amounts (if any), that, by the terms of such obligations, are to be performed on or before the Closing Date.

(e)     <u>Officer's Certificate</u>.  The Seller shall have received a certificate duly executed by a senior officer of the Purchaser, in a form reasonably satisfactory to the Seller, to the effect that each of the conditions specified in Sections 9.2(c) and 9.2(d) have been satisfied.

9.3     <u>Conditions to Obligations of the Purchaser</u>.  The obligations of the Purchaser to consummate the Proposed Transactions shall be subject to the fulfillment on or prior to the Closing Date of each of the following conditions (unless waived in writing by the Purchaser in its absolute and sole discretion):

(a)     <u>Consents and Approvals</u>.  The Seller shall have obtained any consents and/or approvals that are required from any Persons (other than the Bankruptcy Court), if any, and shall have provided evidence of the same to Purchaser.

(b)     <u>Sale Approval Order</u>.  On or prior to the Closing Date, the Sale Approval Order shall (i) have been entered in the Bankruptcy Case and become a Final Order; and (ii) have remained in full force and effect and shall not have been stayed, vacated, modified, or supplemented in any material respect without the Purchaser's prior written consent.

(c)     Closing Deliveries.  On or prior to the Closing Date, the Seller shall have delivered to the Purchaser the items set forth in Section 4.2.

### ARTICLE 10.   NO SURVIVAL; "AS IS/WHERE IS" SALE

10.1   No Survival of Representations and Warranties.  None of the representations, warranties, covenants, or other agreements of the parties made herein or in any Other Transaction Document, nor any rights arising out of any breach of such representations, warranties, covenants, or other agreements, shall survive the Closing except for those covenants and agreements contained herein (including without limitation Sections 10.2 and 10.3 hereof) and therein which, by their terms, contemplate performance in whole or in part after the Closing, which shall survive in accordance with their terms.   In addition, Purchaser agrees that it shall not have any right to redress or reduction of the Purchase Price, whether on account of any exceptions or matters discovered in the course of due diligence or otherwise.

10.2   Disclaimer.

(a)     The Purchaser understands, acknowledges, and agrees that the Seller is not making, and hereby expressly disclaims, any representation, warranty, and/or guaranty related to:

(i)     the validity, effectiveness, or legal enforceability of any Designated Securities Warrant;

(ii)     the remaining exercise period (if any) and/or exercise price under any Designated Securities Warrant;

(iii)     the current or potential future value of any Designated Securities Warrant or of any underlying securities of the issuer of any Designated Securities Warrant for which such Designated Securities Warrant is exercisable;

(iv)     the condition of any Designated Securities Warrant; or

(v)     the current or future potential financial condition and/or business prospects of any issuer of any Designated Securities Warrant.

(b)     The Purchaser understands and confirms that it is not relying on any communication (written or oral) of the Seller, the Trustee, or any of their Affiliates as investment advice or as a recommendation to purchase the Designated Securities Warrants. It is understood that information and explanations related to the terms and conditions of the Designated Securities Warrants provided by the Seller, the Trustee, or any of their Affiliates will not be considered investment advice or a recommendation to purchase the Designated Securities Warrants, and that neither the Seller, the Trustee, nor any of their Affiliates is acting or has acted as an advisor to the Purchaser in deciding to purchase the Designated Securities Warrants. ,The Purchaser acknowledges that neither the Seller, the Trustee, nor any of their Affiliates has made any representation regarding the proper characterization of the Designated Securities Warrants for purposes of determining the Purchaser's authority to purchase the Designated Securities Warrants.

(c)     The Purchaser further acknowledges that neither the Seller, the Trustee, nor any of their Affiliates is under any obligation to make disclosures regarding any Designated Securities Warrants under applicable non-bankruptcy law, including without limitation

11

under any applicable state and/or federal securities laws. In deciding to purchase the Designated Securities Warrants, the Purchaser is not relying on the advice or recommendations of the Seller, the Trustee, or any of their Affiliates, and the Purchaser has made its own independent decision that the purchase of the Designated Securities Warrants is suitable and appropriate for the Purchaser and, in so doing, the Purchaser is required to rely (and is relying) exclusively on its own consultants, advisors, counsel, employees, agents, principals, and/or information, studies, investigations, and/or inspections with respect to any Designated Securities Warrant, its condition, value, and potential.

(d)     The Purchaser acknowledges that neither the Seller, the Trustee nor any of their Affiliates or any other Person offered to sell the Designated Securities Warrants to it by means of any form of general solicitation or advertising, including but not limited to: (i) any advertisement, article, notice, or other communication published in any newspaper, magazine or similar media or broadcast over television or radio; or (ii) any seminar or meeting whose attendees were invited by any general solicitation or general advertising.

10.3    "AS IS/WHERE IS" SALE. EXCEPT AS EXPRESSLY SET FORTH IN ARTICLE 5, (I) THERE ARE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESSED OR IMPLIED, WITH RESPECT TO THE DESIGNATED SECURITIES WARRANTS OR THE ASSUMED LIABILITIES, AND (II) THE PURCHASER ACKNOWLEDGES THAT THE DESIGNATED SECURITIES WARRANTS ARE BEING SOLD, TRANSFERRED, CONVEYED, ASSIGNED, AND DELIVERED TO, AND PURCHASED AND ACCEPTED BY, THE PURCHASER ON AN "AS IS/WHERE IS" BASIS.

## ARTICLE 11.   TERMINATION

11.1    Termination of Agreement. This Agreement may be terminated and the transactions contemplated hereby may be abandoned at any time prior to the Closing:

(a)     by the mutual written consent of the Purchaser and the Seller;

(b)     by either the Seller or the Purchaser if the Purchaser is not approved as the Successful Bidder or a Back Up Bidder in the Sale Approval Order;

(c)     if the Purchaser is approved as the Successful Bidder or a Back Up Bidder in the Sale Approval Order, then by either the Seller or the Purchaser upon written notice to the other, if the Proposed Transactions have not been consummated by the applicable Closing Deadline for the Purchaser ("**Termination Date**"), provided, however, that, if the failure to consummate the Proposed Transactions is due to material breach by the party attempting to terminate this Agreement, such party shall have no right to do so;

(d)     by either the Seller or the Purchaser, upon written notice to the other, if a Governmental Authority issues a Final Order prohibiting the Proposed Transactions; or

(e)     by the Seller, upon written notice to the Purchaser, if there shall be a material breach by the Purchaser of any representation, warranty, covenant, or agreement contained in this Agreement which would reasonably be expected to result in a failure of a condition set forth in Sections 9.2(c) or 9.2(d) to be satisfied, which breach has not been cured by the earlier of (i) 10 days after the giving of written notice by the Seller to the Purchaser of such breach and (ii) the Termination Date.

11.2 <u>Effect of Termination</u>.  Upon the termination of this Agreement pursuant to Section 11.1, this Agreement (except this Section 11.2, Section 3.2 and Article 12) shall become void and have no further effect and there shall be no liability hereunder on the part of the Seller or the Purchaser with respect to this Agreement except in connection with its obligations set forth in such Sections and Articles.

## ARTICLE 12.   MISCELLANEOUS PROVISIONS

12.1 <u>Expenses</u>.  Each party hereto will bear its own expenses in connection with the Proposed Transactions.

12.2 <u>Public Announcements</u>.  Other than statements made in the Bankruptcy Court (or in pleadings filed therein), the Purchaser and the Seller shall consult with each other before issuing any press releases or making any public statement or other public communication with respect to this Agreement or the Proposed Transactions.  The Purchaser and the Seller shall not issue any such press release or make any such public statement or public communication without the prior written consent of the other party, which shall not be unreasonably withheld or delayed.

12.3 <u>Amendment; Waiver</u>.  None of this Agreement or the Other Transaction Documents may be amended, modified, or supplemented except by a written instrument signed by all parties hereto or thereto as the case may be.  No waiver of any of the terms or provisions of this Agreement or any Other Transaction Document shall be effective unless set forth in a written instrument signed by the party granting such waiver.  No waiver of any of the terms or provisions of this Agreement or any Other Transaction Document shall be deemed to be or shall constitute a waiver of any other term or provision hereof or thereof (whether or not similar), nor shall such waiver constitute a continuing waiver.  No failure of a party hereto to insist upon strict compliance by the other party hereto with any covenant or agreement contained in this Agreement shall operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

12.4 <u>Notices</u>.

(a) All notices, requests, demands, or other communications required or permitted under this Agreement shall be in writing and mailed or delivered by facsimile transmission, hand or courier service:

|  |  |
|---|---|
| If to the Seller, to: | c/o Randolph N. Osherow, Chapter 7 Trustee |
|  | 342 West Woodlawn, Suite 100 |
|  | San Antonio, Texas 78212 |
|  | Tel:           (210) 738-3001 |
|  | Email:         rosherow@hotmail.com |

With a copy, which shall not constitute notice, to:

Munsch Hardt Kopf & Harr, P.C.
1717 West 6th Street, Suite 250
Austin, Texas 78703
Attention:     Jay H. Ong
Tel:           (512) 391-6124
Email:         jong@munsch.com

If to the Purchaser, to: [          ]

With a copy, which shall not constitute notice, to:

[          ]

(b) All notices and other communications required or permitted under this Agreement that are addressed as provided in this Section 12.4, (i) if delivered personally (with written confirmation of receipt) or by confirmed facsimile transmission, shall be effective upon delivery, and (ii) if delivered (A) by certified or registered mail with postage prepaid, shall be effective five (5) Business Days or (B) by an internationally recognized overnight express mail service such as Federal Express, UPS, or DHL Worldwide, with courier fees paid by the sender, shall be effective two (2) Business Days following the date when mailed or couriered, as the case may be. Either party hereto may from time to time change its address for the purposes of notices to such party by a similar notice specifying a new address, but no such change shall be deemed to have been given until it is actually received by the party sought to be charged with its contents.

12.5    <u>Succession and Assignment</u>.  This Agreement and all of the terms and provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  None of the parties hereto may assign this Agreement or any of its rights, interest, or obligations hereunder without the prior written approval of the other.  Upon any such permitted assignment, the references in this Agreement to the Seller or the Purchaser, as applicable, shall also apply to any such assignee unless the context otherwise requires.  Any assignments made in contravention of the terms of this Section 12.5 shall be void *ab initio*.

12.6    <u>Governing Law</u>.  This Agreement, the Other Transaction Documents, and the legal relations between the parties hereto shall be governed and interpreted in accordance with the laws of the State of Texas without regard to principles of conflicts of law, except to the extent that United States bankruptcy law is applicable.

12.7    <u>Consent to Jurisdiction</u>.

(a)    Until the entry of an order either closing or dismissing the Bankruptcy Case, each party hereto hereby: (i) irrevocably elects as the sole judicial forum for the adjudication of any matter arising under or in connection with this Agreement or any Other Transaction Document, and consents to the exclusive jurisdiction of, the Bankruptcy Court; (ii) expressly waives any defense or objection to jurisdiction or venue based on the doctrine of *forum non conveniens*; and (iii) stipulates that the Bankruptcy Court shall have *in personam* jurisdiction over such party.

(b)    After the entry of an order either closing or dismissing the Bankruptcy Case, each party hereto hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts in Travis County, Texas (the "**Travis County Courts**") in any action arising out of or relating to this Agreement or any Other Transaction Document, and each such party hereto hereby irrevocably agrees that all claims in respect of any such action shall be heard and determined in the Travis County Courts.  Each party hereto, to the extent permitted by applicable Law, hereby expressly waives any defense or objection to jurisdiction or venue based on the doctrine of *forum non conveniens* and stipulates that the Travis County Courts shall have *in personam* jurisdiction and venue over such party for the purpose of litigating any dispute or controversy between the parties arising out of or relating to this Agreement or any Other Transaction Document.  In the event that either party hereto shall commence or maintain any action arising out of or relating to this Agreement or any Other Transaction Document in a forum other than the Travis County Courts,

14

the other party hereto shall be entitled to request the dismissal or stay of such action, and each party hereto stipulates for itself that such action shall be dismissed or stayed. To the extent that either party hereto has or hereafter may acquire any immunity from the jurisdiction of the Travis County Courts or form any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, or otherwise) with respect to itself or its property, each such party hereby irrevocably waives such immunity.

12.8    WAIVER OF JURY TRIAL. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER TRANSACTION DOCUMENTS. EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT, OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER TRANSACTION DOCUMENTS, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 12.8.

12.9    Entire Agreement. This Agreement, the Non-Disclosure Agreement dated as of _____, 2024, between Seller and Purchaser and the Other Transaction Documents, each of which are incorporated herein, embody the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersede all prior agreements, commitments, arrangements, negotiations, or understandings, whether oral or written, between the parties hereto, their respective Affiliates or any representatives of any of them with respect thereto. There are no agreements, covenants, or understandings with respect to the subject matter of this Agreement or the Other Transaction Documents other than those expressly set forth or referred to herein or therein, or in an order of the Bankruptcy Court and no representations or warranties of any kind or nature, whatsoever, express or implied, have been made or shall be deemed to have been made by the parties hereto except those expressly made in this Agreement and the Other Transaction Documents.

12.10   Severability. Whenever possible, each provision or portion of any provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable Law, but if any provision or portion of any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect under any applicable Law in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect the validity, legality, or enforceability of any other provision or portion of any provision in such jurisdiction, and this Agreement shall be reformed, construed, and enforced in such jurisdiction in such manner as will effect as nearly as lawfully possible the purposes and intent of such invalid, illegal, or unenforceable provision. To the extent permitted by Law, the parties hereto waive any provision of Law that renders any such provision prohibited or unenforceable in any respect. Notwithstanding anything to the contrary set forth herein, the provisions hereof for entry of the Sale Approval Order are not severable and may not be reformed.

12.11   No Third Party Beneficiaries. Except as and to the extent otherwise provided herein, nothing in this Agreement is intended, nor shall anything herein be construed, to confer any rights, legal or equitable, in any Person other than the parties hereto and their respective successors and permitted assigns.

12.12   Exhibits, Appendices and Schedules. All Appendices, Exhibits, and Schedules hereto, or other documents expressly referenced in and incorporated into this Agreement, are hereby incorporated into this Agreement and are hereby made a part hereof as it set out in full in this Agreement.

12.13   <u>Counterparts</u>.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument.  Any counterpart may be executed by facsimile signature and such facsimile signature shall be deemed an original.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed, as of the date first above written.

**THE SELLER:**

**ASTRALABS, Inc., d/b/a "Newchip**

By: _____

       Name:     Randolph N. Osherow

       Title:      Trustee

**THE PURCHASER:**

_____

By: _____

       Name: _____

       Title: _____

## APPENDIX I

**Designated Securities Warrants**

| Warrant Date | Warrant Issuer |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**<u>EXHIBIT A</u>**

**Sale Approval Order**

[to be attached]

## EXHIBIT B

### Assignment and Assumption Agreement

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is made to be effective as of [_____] (the "**Effective Date**"), by and between (i) ASTRALABS, Inc., dba "Newchip" ("**Seller**"), and (ii) [_____] ("**Purchaser**"). This Agreement is executed pursuant to the terms of that certain Asset Purchase Agreement, dated as of [_____], by and among Seller and Purchaser (the "**Purchase Agreement**").

In consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Purchaser agree as follows:

1. <u>Capitalized Terms</u>. Any capitalized term not defined in this Agreement shall have the meaning assigned to such term in the Purchase Agreement.

2. <u>Assignment of Designated Securities Warrants</u>. Seller hereby sells, assigns, grants, conveys, and transfers to Purchaser all of Seller's right, title, and interest, if any, in and to the Designated Securities Warrants listed on <u>Appendix 1</u> hereto. Purchaser hereby accepts such assignment and transfer of the Designated Securities Warrants.

3. <u>Assumption of Assumed Liabilities</u>. Upon the terms and subject to the conditions of the Purchase Agreement, Seller hereby assigns to Purchaser, and Purchaser hereby assumes from Seller and shall thereafter be responsible for the payment, performance, or discharge of the Assumed Liabilities (if any). For the avoidance of doubt, as of the Effective Date, Purchaser shall be responsible for the payment, performance, or discharge of the Assumed Liabilities regardless of when such Assumed Liabilities arose.

4. <u>Purchase Agreement</u>. Notwithstanding any other provisions of this Agreement to the contrary, nothing contained in this Agreement shall in any way supersede, replace, restate, amend, expand, or otherwise modify in any way any provision or limitation of the Purchase Agreement or any rights, obligations, representations, warranties, or remedies of the parties under the Purchase Agreement. This Agreement is being delivered pursuant to the Purchase Agreement to effect the transfer of the Designated Securities Warrants and the Assumed Liabilities pursuant to the Purchase Agreement, and it is subject to all of the terms, conditions, and limitations set forth in the Purchase Agreement.

5. <u>Governing Law</u>. This Agreement shall be governed and interpreted in accordance with the laws of the State of Texas without regard to principles of conflicts of law, except to the extent that United States bankruptcy law is applicable.

6. <u>Further Assurances</u>. Each of the parties hereto shall, and shall cause their respective Affiliates to, execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

7. <u>No Third-Party Beneficiaries</u>. The sole purpose hereof is to transfer and convey to Purchaser the Designated Securities Warrants and the Assumed Liabilities and to evidence the assumption by Purchaser of the Assumed Liabilities and not to create third-party beneficiary rights.

8. <u>Counterparts</u>. This Agreement may be executed (including by facsimile or other electronic transmission) in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

9. <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

The undersigned have caused this Agreement to be executed as of the Effective Date.

**SELLER**:

ASTRALABS, INC., d/b/a "NEWCHIP"

By:_____
Name: Randolph N. Osherow
Title: Trustee

**PURCHASER**:

[_____]

By:_____
Name:
Title:

[Signature Page to Assignment and Assumption Agreement]

## Appendix 1 to Assignment and Assumption Agreement

### Designated Securities Warrants

| Warrant Date | Warrant Issuer |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**Exhibit "4"**

**Proposed Final Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-10164-smr** |
| **ASTRALABS, INC.,** | § | |
| | § | **Chapter 7** |
| Debtor. | § | |

**ORDER GRANTING TRUSTEE'S MOTION FOR**
**AUTHORITY TO SELL DESIGNATED SECURITIES WARRANTS,**
**FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES,**
**AND PROVIDING RELIEF PURSUANT TO 11 U.S.C. § 363(b), (f), AND (m)**

CAME ON FOR CONSIDERATION the *Motion (I) for Authority to Sell Designated Securities Warrants, Free and Clear of All Liens, Claims, and Encumbrances; (II) for Approval of Notice, Sale, and Executory Contract Procedures; and (III) to Set Final Hearing to Approve Sale and Good Faith Designation to Prevailing Purchaser(s)* [Docket No. **[●]**] (the "Sale Motion"),[1] filed by Randolph N. Osherow, not individually but in his capacity as the duly appointed chapter 7 trustee (the "Trustee") for and on behalf of ASTRALABS, Inc., d/b/a "Newchip" (the "Debtor") and its bankruptcy estate arising under 11 U.S.C. § 541 ("Estate").

---

[1]  Capitalized terms used herein, not otherwise defined, shall be given the meaning ascribed in the Sale Motion.

After reviewing and considering the Sale Motion, the evidence, representations of counsel, argument presented at a hearing before the Court (the "Final Sale Hearing"), and the entire record before it; and this Court having found that the relief requested in the Sale Motion is in the best interests of the Debtor, the Estate, its creditors and stakeholders, and all other parties-in-interest; and this Court having determined that the legal and factual bases set forth in the Sale Motion and considered at the Final Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing, the Court further finds and concludes as follows[2]:

A.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the standing Western District of Texas Order of Reference of Bankruptcy Cases and Proceedings.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and a matter that arises exclusively under the provisions of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") and as to which the Court accordingly has the power consistent with the United States Constitution to enter a final order.  The Trustee has expressly consented to such a final disposition by this Court.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  On March 17, 2023 (the "Petition Date"), the Debtor commenced the above-captioned and numbered case (the "Bankruptcy Case") by filing a voluntary petition for relief under chapter 11, subchapter V, of the Bankruptcy Code, thereby creating the Debtor's Estate.

C.  On May 12, 2023 (the "Conversion Date"), the Court entered its *Order Converting Case to Chapter 7* [Docket No. 89], converting the Bankruptcy Case to chapter 7, discharging the subchapter V trustee, and appointing the Trustee as the interim trustee to oversee the

---

[2]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

administration, operation, and management of the Debtor's Estate and its business.  On August 22, 2023, the United States Trustee filed its *Report of a Disputed Election of Trustee Pursuant to Federal Rule of Bankruptcy Procedure 2003* [Docket No. 265] (the "UST's Report"), and no motion for the resolution of the dispute was filed within 14 days of the report.  The Trustee, accordingly, continues to serve as Chapter 7 Trustee.  *See* Fed. R. Bankr. P. 2003(d)(2).  No official committee has been appointed in the Bankruptcy Case.

D.      Among the assets of the Debtor's bankruptcy Estate, the Debtor owns a portfolio of certain warrant securities issued to the Debtor generally by former customers (collectively, the "Warrants"), which appear to comprise the Debtor's primary assets.  Although the forms of the Warrants evolved over time and therefore are not identical, the Warrants generally expire after certain periods (*e.g.*, twenty-four months after the effective date), subject to certain provisions for periodic disclosure obligations and potential extension.

E.      As of the Petition Date, the U.S. Small Business Administration ("SBA"), holds a claim in the amount of $519,401.25, secured by perfected liens and security interests in a substantially all of the Debtor's personal property ("SBA Claim").  *See* Proof of Claim dated July 12, 2023, and assigned Claim No. 228-1 in the official Claims Register maintained by the Clerk of the Court for the Bankruptcy Case.  The SBA Claim accrues annual interest at a rate of 3.75% per year. *Id*. at 2.

F.      On July 11, 2023, this Court entered its Order [Docket No. 172] extending the deadline for the Trustee to seek to assume or reject executory contracts as provided in section 365 of the Bankruptcy Code through October 11, 2023 (the "Assumption / Rejection Deadline").  On October 10, 2023, this Court entered its Order [Docket No. 336] further extending the Assumption / Rejection Deadline to January 15, 2024, without prejudice to other and further

requests. On [●], the Court entered its Order [Docket No. [●]], further extending the Assumption / Rejection Deadline to [●], 2024, without prejudice to other and further requests.

G.      On September 6, 2023, the Court entered its Order [Docket No. 296] authorizing the Trustee to retain PEAK Technology Partners, LLC (the "Sale Agent")—a licensed, technology-focused investment banker and securities broker specializing in sell-side transactions—to act as the Estate's agent in connection with its marketing and sale of its assets, including Warrants.

H.      As set forth in the Sale Motion, the Trustee and the Sale Agent identified certain Warrants for sale (collectively, the "Sale Assets") pursuant to the Sale Motion (the proposed "Sale"), which Sale Assets are listed on **Exhibit "1"** attached to the Sale Procedures (defined below).

I.      On December [●], 2023, this Court held an initial hearing to consider the Sale Motion, pursuant to which the Court entered an order [Docket No. [●]] that, *inter alia*: (i) approved certain procedures to govern the marketing and Sale of the Sale Assets (the "Sale Procedures"), including but not limited to procedures governing the assumption and assignment of the Sale Assets to the Purchaser to the extent they constitute executory contracts within the meaning of section 365 of the Bankruptcy Code; and (ii) scheduled the Final Sale Hearing to consider the Court's approval of the Sale to the Qualified Bidder(s) making the highest and best Qualified Bid or combination of Qualified Bids (collectively, the "Successful Bid") for the Sale Assets (collectively, the "Successful Bidder"), as well as to the Qualified Bidder(s) making the next best and highest offer (collectively, the "Back Up Bid") for the Sale Assets (collectively, "Back Up Bidder").

J.       On December [●], 2023, the Court-approved *Notice of Entry of Order (I) Approving Notice, Sale, and Executory Contract Procedures for Sale of Designated Securities Warrants, Free and Clear of All Liens, Claims, and Encumbrances; and (II) Scheduling Final Sale Hearing*, including the Sale Procedures, was served on all parties entitled to or requesting notice in the Bankruptcy Case, as well as on known interested bidders.  *See* Docket No. [●].

K.       Pursuant to the Sale Procedures and following the Bid Deadline set forth therein, on March [●], 2024, the Trustee filed his notice identifying the Successful Bidder, Successful Bid, Back Up Bidder, and Back Up Bid (hereinafter, "Purchaser" refers to Successful Bidder or Back Up Bidder, as applicable, and Purchase Price refers to the foregoing highest bid amount by the Successful Bidder or Back Up Bidder, as applicable; whichever the Trustee closes the Sale with), determined by the Trustee in consultation with the Sale Agent, in the Trustee's reasonable business judgment and sole discretion, as follows:

| Successful Bidder | Purchase Price | Sale Assets |
|---|---|---|
| Back Up Bidder | Purchase Price | Sale Assets |

*See* Docket No. [●].

L.       As demonstrated by testimony and other evidence proffered or adduced at the Final Sale Hearing and the representations of counsel made on the record at the Final Sale Hearing, the Trustee and his professionals have received no other higher or better offers.  The Sale process undertaken by the Trustee and his professionals with respect to the Sale Assets has been adequate and appropriate under the particular circumstances, and the Purchase Price represents the highest and best proposal received by the Trustee, thereby maximizing the value of the Sale Assets for the Debtor's Estate.  Furthermore, the Purchase Price is fair and adequate and constitutes reasonably

equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States or any of its jurisdictions or subdivision.

  M. The Purchase Price was negotiated by the Trustee and the Purchaser without collusion, in good faith, and at arm's length. Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Price to be avoided under section 363(n) of the Bankruptcy Code. Neither the Purchaser, nor any of its affiliates or representatives, is an "insider" of the Debtor as such term is defined in section 101(31) of the Bankruptcy Code.

  N. The Purchaser, to the extent it timely and fully closes and performs the Sale and APA, is hereby deemed to be a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, shall be entitled to all of the protections afforded thereby.

  O. The assumption and assignment to the Purchaser of the relevant Sale Assets, to the extent they constitute executory contracts designated by the Purchaser, is a sound and reasonable exercise of the Trustee's business judgment and complies with Bankruptcy Code section 365.

  P. Further, given that the Purchaser is acquiring the assets free and clear of all liens, claims, and encumbrances pursuant to section 363(f), the Purchaser is not and cannot be a successor-in-interest to the Debtor as to any other creditor or other parties-in-interest as to such liens, claims, and encumbrances.

  Q. As further set forth herein, the Trustee may sell the Sale Assets free and clear of any and all liens, claims, and encumbrances, pursuant to 11 U.S.C. § 363(f), because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. In particular, subject to the provisions of this order (the "Final Sale Order") set forth below, the SBA has consented to the entry and implementation of this Final Sale Order and to the Sale of the Sale Assets to the Purchaser.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The relief requested in the Sale Motion is GRANTED as set forth herein.

2.      All objections to the entry of this Final Sale Order or to the relief granted herein, whether filed, stated on the record before the Court, or otherwise, which have not been withdrawn, waived, or settled, and all reservations of rights included therein, are denied and overruled on the merits.  All objections to the entry of this Final Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3.      The proposed Sale to the Purchaser is hereby approved for the purchase and sale of the Sale Assets, free and clear of any and all liens, claims, and encumbrances, in exchange for the Purchase Price and as otherwise further set forth in the APA submitted by the Purchaser with its Qualified Bid and as may be reasonably modified by the Trustee's consent.

4.      Pursuant to section 363 of the Bankruptcy Code, the Trustee is authorized and directed to take any and all actions necessary to consummate the Sale of the Sale Assets pursuant to and in accordance with the terms and conditions of this Final Sale Order and the Sale Motion.

5.      At the closing, the Trustee is authorized in the Trustee's discretion, but not required, to pay the SBA Claim to the SBA, in the amount of $519,401.25, plus a per diem of $53.36 calculated from and after the Petition Date to the date of payment of the SBA.  In the event that the Trustee does not pay the SBA Claim at the closing of the Sale: (i) the SBA's liens and security interests securing the repayment of the SBA Claim shall automatically transfer to the proceeds of Sale received by the Trustee with the same validity, priority, and extent as existed against the Sale Assets prior to the entry of this Final Sale Order; (ii) the SBA Claim shall continue to accrue interest until paid; and (iii) the Trustee shall reserve and not expend Sale proceeds in an amount sufficient to pay in full the SBA Claim plus accrued interest, unless and until subsequently ordered otherwise by this Court upon prior notice to the SBA.

6.     The Trustee is hereby authorized to pay his Sale Agent its Court-ordered commission from the proceeds of Sale and at the closing of the Sale; *provided, however,* that, as set forth in the Court's retention Order at Docket No. 296, the Sale Agent remains subject to final allowance, reconsideration, and approval by this Court of any and all reasonable and actual out-of-pocket expenses paid or payable to the Sale Agent, pursuant to an application by or for such final allowance and payment of same.  All disbursements of Sale proceeds, including at the closing of the Sale, are hereby deemed to be made by and through the Trustee.

7.     If any Successful Bidder does not close the Sale by no later than 5:00 p.m. (prevailing Central Time) on **May [●], 2024, which is the first business date that is thirty (30) days following entry of this Final Sale Order**, the Trustee may, in his sole discretion, notify the Back Up Bidder and proceed to close the Back Up Bid with the Back Up Bidder, as Purchaser, in which event:

a.     The Trustee shall retain such Successful Bidder's Deposit, entirely and as damages for the benefit of the Estate and for all purposes; and

b.     If any Back Up Bidder does not close the Sale **by no later than 5:00 p.m. (Central Time) on the first business date that is fifteen (15) days following the Trustee's notice to the Back Up Bidder**, the Trustee shall retain such Back Up Bidder's Deposit, entirely and as damages, for the benefit of the Estate and for all purposes.

c.     Notwithstanding any other provision of this Paragraph 7, in the event there are multiple Qualified Bidders / proposed Purchasers whose Qualified Bids have been aggregated or combined under, and as, the Successful Bid or the Back Up Bid, and fewer than all of the Qualified Bidders / proposed Purchasers under such Successful Bid or Back Up Bid, as applicable, fail to close the Sale as required under these

8

Sale Procedures, only the defaulting Successful Bidder and/or Back Up Bidder, as applicable, shall forfeit its Deposit, and the Trustee, in his sole discretion, may nevertheless determine to proceed with closing the Sale, or the remainder of the Sale, with the remaining, non-defaulting Successful Bidders or Back Up Bidder(s), in the Trustee's sole discretion. Any Successful Bidder or Back Up Bidder who is not afforded the opportunity to close the Sale due to the default of another Successful Bidder or Back Up Bidder, as applicable, shall receive a refund of its Deposit where the Court determines that the failure to close was entirely beyond its reasonable control. In the event a Successful Bidder or Back Up Bidder defaults on its obligations to timely close the Sale as required under these Bid Procedures, any Deposit of a non-defaulting Successful Bidder and/or Back Up Bidder shall be refunded within three (3) business days of the earlier of: (i) the closing of the Sale, if agreed by the Trustee; and (ii) the Court's determination that the failure to close was entirely beyond the bidder's reasonable control.

8.      Following closing, the Trustee shall file with the Court and provide to the UST the statement of Sale proceeds required by Federal Rule of Bankruptcy Procedure 6004(f).

9.      This Final Sale Order is binding upon all creditors of, and equity holders in, the Debtor and any and all other parties-in-interest.

10.      Upon the closing and funding, the Sale Assets shall be transferred to Purchaser free and clear of any and all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(f).

11.      Following the closing, the Trustee and Purchaser are authorized to file appropriate termination statements, instruments of satisfaction, or releases of all liens and to take reasonable actions to perform and implement the Purchaser's APA with the Debtor.

9

12. The Trustee is authorized to assume and assign to Purchaser the Sale Asset Warrants to the extent such contracts constitute executory contracts designated under the APA to be assumed and assigned to Purchaser, which designation may be modified pursuant to the terms of the APA (the "Assigned Contracts"), pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, and effective as of the closing; *provided, however,* that: (i) the Assigned Contracts shall be assumed by Purchaser free and clear of all interests of any kind or nature whatsoever; (ii) the Trustee shall be permitted to execute and deliver to Purchaser all such documents and instruments as Purchaser deems necessary to assign and transfer the Assigned Contracts to Purchaser; (iii) the Assigned Contracts shall remain in full force and effect for the benefit of Purchaser, notwithstanding any provision to the contrary and including, but not limited to, any provisions described in sections 365(b)(2), (e)(1), and (f) that prohibit, restrict, or condition such assignment or transfer; and (iv) the Purchaser assumes each and every Assigned Contract subject to any and all provisions set forth therein, including without limitation, any provision providing for a "right of first refusal" held by the issuer, any and all related rights and obligations, but solely to the extent valid and enforceable under applicable law. No cure obligations apply to the Estate's assumption and assignment to the Purchase of the Assigned Contracts.

13. This Court retains jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of this Final Sale Order.

14. Notwithstanding Bankruptcy Rule 6004(h), this Final Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, such that, in the absence of any person or entity obtaining a stay pending appeal, the Trustee is free to close upon the Sale to the Purchaser.

# # #

<u>Order submitted by</u>:

By: */s/ Jay H. Ong*

Jay H. Ong
Texas Bar No. 24028756
Thanhan Nguyen
Texas Bar No. 24118479
MUNSCH HARDT KOPF & HARR, P.C.
1717 West 6th Street, Suite 250
Austin, Texas 78703
Telephone: (512) 391-6100
Facsimile: (512) 391-6149

*Counsel for Randolph N. Osherow,*
*Chapter 7 Trustee*