**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| In re:<br><br>ASTRALABS, INC.,<br>d/b/a Newchip,<br><br>*Debtor*. | §<br>§<br>§<br>§ Case No. 23-10164-SMR<br>§<br>§ Chapter 7<br>§<br>§<br>§ |

**OBJECTION AND RESERVATION OF RIGHTS OF COLLECTIVECRUNCH OY TO THE CHAPTER 7 TRUSTEE'S NOTICE OF ENTRY OF ORDER (I) APPROVING NOTICE, SALE, AND EXECUTORY CONTRACT PROCEDURES FOR SALE OF DESIGNATED SECURITIES WARRANTS, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; AND (II) SCHEDULING FINAL SALE HEARING**

CollectiveCrunch Oy ("CollectiveCrunch"), a creditor and contract counterparty in the above-captioned chapter 7 bankruptcy case (the "Bankruptcy Case"), through their undersigned counsel, files this objection and reservation of rights (the "Objection") regarding the *Notice of Entry of Order (I) Approving Notice, Sale, and Executory Contract Procedures for Sale of Designated Securities Warrants, Free and Clear of All Liens, Claims, and Encumbrances; and (II) Scheduling Final Sale Hearing* (the "Sale Notice") [Docket No. 360] filed by Randolph N. Osherow, the chapter 7 trustee (the "Trustee") of the estate of the above-captioned debtor, ASTRALABS, Inc., d/b/a Newchip (the "Debtor"), and respectfully states as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Western District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**RELEVANT BACKGROUND**

  A. **The Bankruptcy Case**

  3. On March 17, 2023 (the "Petition Date"), the Debtor commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 11, subchapter V, of title 11 of the United States Code (the "Bankruptcy Code").

  4. On May 12, 2023, the Court entered the *Order Converting Case to Chapter 7* (the "Conversion Order") [Docket No. 89] converting the Bankruptcy Case to one under chapter 7, and appointed the Trustee.

  5. On November 20, 2023, the Trustee filed the *Trustee's Motion (I) for Authority to Sell Designated Securities Warrants, Free and Clear of All Liens, Claims, and Encumbrances; (II) for Approval of Notice, Sale, and Executory Contract Procedures; and (III) to Set Final Hearing to Approve Sale and Good Faith Designation to Prevailing Purchaser(s)* (the "Sale Motion") [Docket No. 351].

  6. On December 18, 2023, the Court held a hearing on the Sale Motion, and on December 19, 2023, the Court entered the *Order (I) Authorizing Sale of Designated Securities Warrants, Free and Clear of All Liens, Claims, and Encumbrances; (II) Approving Notice, Sale, and Executory Contract Procedures; and (III) Setting Final Hearing to Approve Sale and Good Faith Designation to Prevailing Purchaser(s)* (the "Sale Order") [Docket No. 359] approving the Sale Motion.

7. The Sale Notice provides that the Trustee may assume and assign the Warrant (as defined herein) to a purchaser under the Sale Procedures[1] and lists the proposed Cure Amount as $0.00.

**B.      The Newchip Accelerator Agreement**

8. CollectiveCrunch is a Finland-based creator of an AI-powered platform that enables sustainable forestry.

9. The Debtor and CollectiveCrunch are parties to that certain Newchip Accelerator Master Membership Agreement dated as of January 23, 2023 (the "Accelerator Agreement"). A true copy of the Accelerator Agreement is attached hereto as Exhibit A.

10. Pursuant to the Accelerator Agreement, the Debtor was required to provide certain services (the "Accelerator Program Services") to CollectiveCrunch under a twelve-month long membership, including a six-month long Accelerator Program[2], which were to include without limitation:

> (i) participation with CEO peers in Mastermind sessions; (ii) opportunities to benefit from strategic introductions and mentorship from experienced entrepreneurs, investors, and industry experts; (iii) access to free and discounted product services from third-party partners; (iv) access to Accelerator community, events, course content, and webinars; (v) access to mentor and advisor platform; [and] (vi) certification as an Accelerator Program graduate upon fulfillment of Graduation Requirements[.]

11. Section 6 of the Accelerator Agreement also sets forth certain "Accelerator Guarantees" that CollectiveCrunch would receive provided that it met certain Guarantee Conditions, or be entitled to a refund. Those Accelerator Guarantees included (i) at least 20

---

[1] As that term is defined in the Sale Order.

[2] Capitalized terms not otherwise defined here have the meaning ascribed to them in the Accelerator Agreement.

3

Potential Investor Meetings, (ii) at least one Investment Proposal or Term Sheet, or (iii) any offer of a merger, acquisition, or consolidation of CollectiveCrunch.

12. CollectiveCrunch's membership fee for the Accelerator Program was $8,000. CollectiveCrunch paid a $2,500 Resource Fee on or around February 26, 2023.

13. The Accelerator Agreement also included, as Exhibit A thereto and in consideration for CollectiveCrunch's participation in the Accelerator Program and receipt of the Accelerator Program Services and Accelerator Guarantees, a Warrant (the "Warrant").

14. CollectiveCrunch duly performed its obligations under the Accelerator Agreement as they became due and in satisfaction of the Guarantee Conditions until the Debtor ceased providing the Accelerator Program Services on or about April 2023.

15. CollectiveCrunch never received any of the Accelerator Guarantees set forth in Section 6 of the Accelerator Agreement.

**OBJECTION**

16. First and foremost, CollectiveCrunch objects to the proposed assumption and assignment of the Warrant because the Trustee cannot assume and assign the Warrant without also assuming and assigning the Accelerator Agreement.

17. As expressly acknowledged therein, the Warrant was issued by CollectiveCrunch as consideration to the Debtor in exchange for participation in the Accelerator Program and receipt of the Accelerator Program Services and Accelerator Guarantees. Moreover, the Accelerator Agreement expressly states that it "includes the Accelerator Warrant agreement as attached[.]" *See* Exhibit A. The Warrant is part and parcel of the Accelerator Agreement and cannot be separately assigned. *See Huron Consulting Services, LLC v. Physiotherapy Holdings, Inc. (In re*

4

*Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision that permitted debtor to assume one agreement, and not the related agreements; holding that all agreements must be assumed or rejected together); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

18. Accordingly, the Warrant cannot be assumed and assigned without the Accelerator Agreement also being assumed and assigned. *See Quantum Diversified Holdings, Inc. v. Wienheimer (In re Escarent Entities, L.P.)*, 423 F. App'x 462, 466 (5th Cir. 2011) ("[I]t is well-settled that an executory contract cannot be assumed in part and rejected in part.") (*citing Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996)); *In re Aneco Elec. Constr.*, 326 B.R. at 202; *see also In re University Medical Center*, 973 F.2d 1065, 1075 (3d Cir. 1992), *reh'g en banc denied*, 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992) (stating "(a)ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *AGV Productions, Inc. v. Metro GoldwynMayer, Inc.*, 115 F. Supp.2d 378, 391 (S.D.N.Y. 2000) (citing cases); *In re Morande Enters.*, 335 B.R. 188, 192 (Bankr. M.D. Fla. 2005) (citation omitted) (stating that the "law is clear that an executory contract may not be assumed in part and rejected in part"); *In re TSW Stores of Nanuet, Inc.*, 34

B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "[i]t is settled law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*'"); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contract requires an all-or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part").

19. Additionally, it is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("Thus, the often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement."); *see also Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *In re Univ. Med. Ctr.*, 973 F.2d at 1075, superseded by statute on other grounds; *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."); *Lightfoot v. Borkon (In re Lightfoot)*, 399 B.R. 141, 149 (Bankr. E.D. Pa. 2008) (stating "[a]ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *In re Morande Enters.*, 335 B.R. at 192; *In re TSW Stores of Nanuet*, 34 B.R. at 304; *In re Metro Transp.*, 87 B.R. at 342.

20. Accordingly, any purchaser under the Sale Procedures cannot receive the benefits of the Accelerator Agreement, *i.e.*, the Warrant, without remaining liable for the obligations under the Accelerator Agreement.

21. Furthermore, the Sale Notice incorrectly lists the Cure Amount with respect to the Warrant as $0.00. As discussed above, the Warrant is part and parcel of the Accelerator Agreement and cannot be assumed without the many defaults under the Accelerator Agreement being cured. Unless the purchaser under the Sale Procedures also intends to assume the Accelerator Agreement and resume the services obligated to be provided thereunder or issue a refund to CollectiveCrunch, the Warrant cannot be assumed and assigned.

22. Given that there is no proposed sale of all of the Debtor's assets as a going concern and the Accelerator Agreement is notably absent from the list of proposed executory contracts to be assumed and assigned by the Trustee, the Warrant cannot be assumed as proposed by the Trustee.

23. Accordingly, CollectiveCrunch objects to the proposed assumption and assignment of the Warrant by the Trustee for all of the foregoing reasons.

## RESERVATION OF RIGHTS

24. CollectiveCrunch hereby expressly reserves the right to assert a claim for rejection damages upon the Trustee's rejection of the Accelerator Agreement, and further reserves the right to make any further objections to the proposed assumption of the Warrant.

## CONCLUSION

**WHEREFORE**, CollectiveCrunch respectfully requests that Court (i) sustain its objection to the proposed assumption and assignment of the Warrant (ii) strike the Warrant from the list of

executory contracts to be assumed and assigned in connection with the Sale, and (iii) grant such other relief is just and proper under the circumstances.

Respectfully submitted,

Dated: January 16, 2024

/s/ Lindsey L. Robin
Lindsey L. Robin
Texas State Bar No. 24091422
REED SMITH LLP
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
Email: lrobin@reedsmith.com

*Co-Counsel for Collective Crunch Oy.*

Keri L. Costello, Esq. (*pro hac vice* pending)
SULLIVAN & WORCESTER LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 660-3000
Facsimile: (212) 660 3001
Email: kcostello@sullivanlaw.com

*Attorneys for CollectiveCrunch Oy.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing document was served via the Court's Electronic Case Filing (ECF) System on all parties registered to receive ECF notice.

/s/ Lindsey L. Robin
Lindsey L. Robin

8